# CONSULTANCY AGREEMENT

This Agreement is made as of the 25th day of February two thousand four.

between

1. **ALSTOM Power Inc.,** a company established under the laws of USA and having its registered office situated at 3919 Esses Lane – Suite 208 – HOUSTON Texas – USA,

   hereinafter called **"the COMPANY"**

and

2. ███████████████████████████████████████

   hereinafter called the **CONSULTANT**,

hereinafter referred to individually as a "Party" and collectively as the "Parties".

WHEREBY IT IS AGREED as follows :

## ARTICLE 1 - SCOPE OF THE AGREEMENT

This Agreement relates to the provision by the **CONSULTANT** of consultancy services and assistance to the Company in connection with the **COMPANY**'s tender for the **supply of 2 x 100 MW CFB to PLN** (hereinafter called "the Customer") for **the Tarahan project in Indonesia** (hereinafter called "the Project") and with the performance of the Contract in the event of it being awarded to the **Unit**.

2PRI 12

Initials :

Page 1 / 8

### ARTICLE 2 – APPOINTMENT and EXCLUSIVITY

The **COMPANY** hereby appoints the **CONSULTANT** to provide the Services as its non-exclusive Consultant, and the **CONSULTANT** hereby agrees to provide the Services, subject to and in accordance with the terms and conditions of this Agreement.

This Agreement is limited to the Project, and the **CONSULTANT** shall perform the Services described exclusively for the **COMPANY**. The **CONSULTANT** shall not, either directly or indirectly, advise, assist or provide information on the Project to any other company or organisation.

### ARTICLE 3 – SERVICES TO BE RENDERED BY THE CONSULTANT

The services to be performed by the **CONSULTANT** herein shall include, but are not limited to, the following :

(a) providing advice of a general or particular nature concerning the development and implementation of the Project;

(b) establishing contacts and arranging appointments and co-ordinating customer visits on behalf of the **COMPANY** and making contacts at all necessary levels;

(c) assisting in obtaining any consents, authorisations or approvals in the Project country;

(d) supporting the **COMPANY** in preparation of the Bid and related correspondence and documentation necessary or convenient for the proper promotion of the interests of the **COMPANY** for the Project in particular in financial, commercial and legal matters, including development of a strategy designed to maximise the **Unit**'s prospect of being awarded the Contract (Ref. Article 4);

(e) assisting the **COMPANY** in the negotiation of the Contract and of contracts to be concluded with subcontractors of the **COMPANY**;

(f) providing any other assistance in its field of expertise which the **COMPANY** might reasonably require and which is necessary or desirable with a view to implementing the Project expeditiously;

### ARTICLE 4 – OBLIGATIONS OF THE CONSULTANT

As specified in article 3, the **CONSULTANT** shall provide the **COMPANY** with a maximum of information and commercial advice to help it obtain the order(s) for the Project ("the Contract") on terms acceptable to the **COMPANY**. The **CONSULTANT** undertakes to provide its services in strict compliance with all laws and regulations applicable to all activities relating to this Agreement.

4.1 : (a) The **CONSULTANT** shall at all times be and act as an independent contractor. This Agreement shall not be described by the parties or construed to establish any different relationship, including without limitation that of employer and employee, partnership, joint venture, or agency of any kind.

(b) The **CONSULTANT** shall have no right or authority to act or make any promise, warranty, guarantee, or representation, incur any liability, commence legal proceedings, execute any contract, hold itself out to have the right to accept any official or formal notices from anyone, or otherwise assume any obligation or responsibility in the name of or on behalf of the **COMPANY** unless specifically authorised in writing by an authorised officer of the **COMPANY**.

(c) The **COMPANY** shall have no legal obligations towards the **CONSULTANT**, and the **CONSULTANT** shall have no legal obligations towards the **COMPANY**, other than those specifically stated in this Agreement.

4.2 : The rights and obligations of the **CONSULTANT** arising out of this Agreement may not be transferred or assigned to any third party in whole or in part without the prior written consent of the **COMPANY**.

4.3 : The **CONSULTANT** shall treat as confidential all information provided by the **COMPANY** and shall not copy or disclose such information without the prior written consent of the **COMPANY** either during the continuance of this Agreement or for a period of five (5) years after its expiry or termination.

## ARTICLE 5 - RIGHTS AND OBLIGATIONS OF THE COMPANY

5.1 : The **COMPANY** shall have the right, at its sole discretion and at any time, to decide whether or not to submit a tender and to withdraw its tender, as well as to accept or refuse the Contract. A decision not to submit or to withdraw a tender, or to decline to accept the Contract shall not entitle the **CONSULTANT** to any remuneration under the terms of Article 6 below, nor to any compensation whatsoever.

5.2 : The **COMPANY** alone shall have the right to establish the prices and conditions of its tender and the Contract.

5.3 : The **COMPANY** shall provide free of charge to the **CONSULTANT** such information concerning the business and products of the **COMPANY** as it considers necessary to enable the **CONSULTANT** to carry out its functions hereunder.

5.4 : This Agreement shall only apply to direct sales of equipment and services made by the **COMPANY and its Indonesian affliliate PT Alstom Power Energy Systems** to the Customer for the purposes of the Project pursuant to the Contract. Should the Contract be awarded to a competitor which in turn subcontracts part of the Project to any subsidiary or affiliate company of the **ALSTOM** Group, no fee or other form of compensation shall be payable to the **CONSULTANT** in relation to this Agreement, except as may otherwise be specifically agreed between the **CONSULTANT** and the concerned party(ies).

## ARTICLE 6 - REMUNERATION AND COMPENSATION

6.1 : In consideration of the Services provided by the **CONSULTANT** being of causal assistance for the conclusion of the Contract between the **Unit** and the Customer and subject to the Contract coming into force within the period of validity of the Agreement, the **COMPANY** shall pay the **CONSULTANT** 1% (one percent) of the **COMPANY** Contract price after deduction of all taxes and duties, if any. This remuneration will cover any and all expenses which may be incurred by the **CONSULTANT** in the discharge of its duties under this Agreement.

6.2 : (a) This remuneration will be due and paid by **COMPANY** to the **CONSULTANT** in the currency of the Contract, provided, however, that in the event the currency of the Contract is US dollars, the **COMPANY** reserves the right to make the payment to the **CONSULTANT** in another currency using the exchange rate ruling at the date of payment. Payment will only be made directly to a bank account specified by the **CONSULTANT** that is held in the name of the **CONSULTANT**. In effecting payment to specified bank account, the **COMPANY** shall be deemed to have fully discharged its payments obligation here above.

(b) Payment will be made 60 days after receipt and acceptance of invoices only which itemise details of work done, as per the draft invoice (Annexe A attached).

The terms of payment will be the following :

- 30% (thirty percent) of the remuneration after coming into force of the Contract and receipt by the **COMPANY** of the down payment,

- 30% (thirty percent) 6 months after coming into force of the Contract and receipt by the **COMPANY** of the down payment,

- 30% (thirty percent) 12 months after coming into force of the Contract and receipt by the **COMPANY** of the down payment,

- 10% (ten percent) after receipt of the payment corresponding to the PAC of the Unit 2.

Should the Contract not come into force within the validity period of the Agreement, the **CONSULTANT** shall not be entitled to receive any remuneration whatsoever.

6.3 : The Parties agree that the rate specified in Article 6.1 above by which such remuneration is to be calculated shall be subject to review and adjustment by an amount to be agreed where it is necessary for the **COMPANY** to revise its prices in order to secure a Contract for the Project.

6.4 : The **COMPANY** reserves the right to withhold payment of a portion of the remuneration pro rata to the value of any outstanding bond or guarantee established by the **COMPANY** under the Contract until such time as the bond or guarantee concerned is released and returned in full.

6.5 : The **COMPANY** reserves the right to withhold payment of a portion of the remuneration due on receipt of the Taking Over certificate and/or Final Acceptance certificate :

a) if the Taking Over and/or Final Acceptance has been unduly delayed by the Customer, and/or

b) pro rata to the amount of any damages deducted by the Customer from payments due to the **COMPANY**.

In either case the amount withheld shall cease to be due to the **CONSULTANT**.

## ARTICLE 7 – NO UNLAWFUL PAYMENTS

7.1 : The **CONSULTANT** shall not, directly or indirectly have as a partner or owner, or retain or employ to perform services on behalf of the **COMPANY** under this Agreement, any public or other government officials, political party officials, or candidates for public or political party office, members of public assemblies, officials of international organisations, and judges and officials of international courts.

7.2 : The **CONSULTANT** hereby warrants and represents that in performing this Agreement, the **CONSULTANT** shall comply and cause its employees and representatives to comply with all applicable laws, rules, regulations and policies, and shall indemnify and save the **COMPANY** harmless against any legal claims for the **CONSULTANT**'s failure to do so.

2PRI 15

7.3 : The **CONSULTANT** acknowledges that the **COMPANY** has entered into this Agreement with the **CONSULTANT** in material reliance on the following representations and warranties made by the **CONSULTANT**:

(i) neither receipt of any amount due and payable under this Agreement, performance of the Services for which such amounts are payable, nor the relationship created by or pursuant to the Agreement, are in any respect in violation of the laws, rules, orders, policies or regulations of any country, and

(ii) in connection with performance of such services, the **CONSULTANT** will not use a means of commerce or communication to or within the United States, directly or indirectly, to offer, pay, promise or authorise the payment of any money, gift, or other thing of value to any person who is an official, agent, employee or representative of any government or instrumentality thereof, to any political party or official thereof or to any candidate for political or political party office, or to any other person, while knowing or having reason to believe that all or any portion of such money, gift or thing of value will be offered, given, or promised, directly or indirectly, to any such official, agent, employee or representative, political party, political party official, or candidate.

(iii) in connection with the performance of the services, the **CONSULTANT** will not promise, offer or give any payment or undue advantage, whether directly or indirectly, to any of the following persons :

- Public or government officials;
- Political party officials;
- Candidates for public or political party office;
- Members of public assemblies;
- Officials of international parliamentary assemblies;
- Judges and official of international courts in consideration for such person acting or refraining from acting in the exercise of his or her functions or duties.

7.4 : The **CONSULTANT** further represents and warrants

(i) that no part of the payment of any amounts due and payable under this Agreement will in any way be distributed to, or at the direction of the **COMPANY**, its affiliates, or any of the employees thereof,

(ii) that, in connection with this Agreement, no law or regulation of any country will be violated by the **CONSULTANT**.

## ARTICLE 8 – TAXES

8.1 : The **CONSULTANT**'s remuneration as provided in Article 6 shall be deemed to include all taxes and fees that might result from this Agreement and which shall be borne by the **CONSULTANT**.

8.2 : Should the **COMPANY** be required to pay any taxes, fines or related sums on behalf of the **CONSULTANT**, this latter shall reimburse the **COMPANY** for any payments so made. The provisions of this paragraph shall survive the expiration or termination of this Agreement.

2PRI 16

## ARTICLE 9 – VALIDITY OF THE AGREEMENT

**9.1 :** This Agreement shall be valid for a period of **18 (eighteen) months** from the date of its signature by the Parties. After this period expires its validity may be extended by mutual written agreement. If no Contract between the **COMPANY** and the Customer has come into force within the above validity period, the Agreement shall be deemed to be null and void and neither Party shall be entitled to any compensation whatsoever from the other Party.

**9.2 :** In the event of the Contract being placed with the **COMPANY** and coming into force within the above validity period, the Agreement shall be extended and shall remain in force until complete performance of the Contract, including to Articles 6.5, full and final settlement of all accounts and disputes if any between the **COMPANY** and the Customer and among the Parties.

## ARTICLE 10 – TERMINATION

**10.1 :** In the event of the cancellation of the Project or the award of the Contract to a third party, this Agreement will automatically terminate on the same date.

**10.2 :** In the event of the insolvency, bankruptcy or liquidation of either Party to this Agreement, or in the event of a breach by either Party of any of its obligations hereunder which is not remedied within thirty (30) days of written notice from the other Party, then this Agreement may be terminated forthwith by the other Party by the giving of written notice to that effect.

**10.3 : (a)** The **CONSULTANT** shall inform the **COMPANY**, in writing of any change in its ownership or management, any affiliation with any other individual or enterprise, any employment or other financial relationship with any official, representative, or agent of any government or governmental unit, judge, member of a national or international assembly, and any other substantial modification of its organisation.

   **(b)** The **COMPANY** shall be entitled, if it is deemed that such modifications are contrary to the general interest of the **COMPANY**, to terminate this Agreement forthwith by notice in writing to the **CONSULTANT** at its above-mentioned address.

**10.4 :** This Agreement shall be null and void and of no force and effect and neither party shall have any further obligation hereunder, including the obligation of any payment of compensation by the **COMPANY** to the **CONSULTANT**, if any official authority declares the Agreement invalid under local law, or prohibits the use of a representative by the **COMPANY**, or prohibits the use of the **CONSULTANT** by the **COMPANY** by reason or illegality, impropriety or on the basis of public policy, or if this Agreement, the relationship created hereby or the performance hereof is determined to be contrary either

   (a) to the laws, rules, regulations or enforceable policies of any country now or hereafter in effect; or

   (b) to the **CONSULTANT**'s representations set forth in this Agreement.

**10.5 :** In the event of the termination of this Agreement by any Party in any of the circumstances enumerated in this Article, or expiry under the terms of Article 9.1 above, no compensation whatsoever shall be payable by either party to the other.




2PRI 17

## ARTICLE 11 - SETTLEMENT OF DISPUTES

The Parties certify that they have the power to compromise and agree that all disputes arising out of or in connection with this Agreement (including its validity, meaning, effect or termination) which cannot be settled amicably shall ultimately be settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce, 38 Cours Albert 1er, 75008 PARIS (France), by three arbitrators appointed in accordance with the said rules which form an integral part of this Agreement and are well known to the Parties.

The arbitration shall take place in Geneva, Switzerland. The language of the proceedings shall be English and the arbitration award shall be final and binding on the Parties. The present Agreement shall be construed and governed according to Swiss Law (in particular the provisions of Article 412 of the Swiss Code of Obligations, concerning brokerage contracts).

## ARTICLE 12 - FINAL AGREEMENT

This Agreement supersedes and cancels any former agreement(s) between the Parties hereto relating to the appointment of the **CONSULTANT** with regard to the Project so far as applicable. Any agreement(s) between the Parties relating to other projects shall remain in force and shall be unaffected by this Agreement.

In witness whereof each of the Parties has caused this Agreement to be executed in two originals as a legally binding contract on the ..25th. day of ..February, 2004.



For and on behalf of
**ALSTOM Power Inc.**

