UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | Civil No. 3:12cr238 (JBA) |
| v. | |
| LAWRENCE HOSKINS | March 16, 2016 |

**RULING DENYING GOVERNMENT'S MOTION FOR RECONSIDERATION**

The Government moves [Doc. # 273] for reconsideration of this Court's Ruling [Doc. # 270] granting in part Defendant Lawrence Hoskins' Motion [Doc. # 254] to Dismiss Count One of the Third Superseding Indictment, and denying the Government's Motion in Limine [Doc. # 232] to preclude Defendant's "FCPA conspiracy prosecution from being de-linked from proof that he was an agent of a domestic concern." (Ruling on 2d Mot. to Dismiss at 1.)

In so ruling, the Court concluded that Mr. Hoskins could not be held criminally liable for conspiring to violate or aiding and abetting a violation of 15 U.S.C. § 78dd-2 (the first object of Count 1 and the statutory basis for Counts 2 through 7 of the Third Superseding Indictment) except while acting as an "agent" of a domestic concern in connection with the alleged unlawful bribery scheme, pursuant to the *Gebardi* principle. *See Gebardi v. United States*, 287 U.S. 112, 123 (1932). For the following reasons, the Government's motion for reconsideration is denied.

I.   **Background**

The factual context of this case is set forth in the Ruling [Doc. # 190] denying Defendant's First Motion to Dismiss the Indictment and is repeated here only as necessary for the legal analysis.

Briefly, Mr. Hoskins is alleged to have participated in a bribery scheme related to the "Tarahan Project" that spanned 2002 through 2009, and which aimed to secure for Alstom Power, Inc. ("Alstom Power U.S."), a company headquartered in Windsor, Connecticut, a $118 million project to build power stations for Indonesia's state-owned and state-controlled electricity company, Perusahaan Listrik Negara.

From October 2001 through August 2004, Mr. Hoskins was employed as a Senior Vice President for the Asia Region by Alstom UK and assigned to Alstom Resources Management S.A. in France where he is alleged to have "performed functions and support services for and on behalf of various other Alstom subsidiaries, including Alstom Power US." (3d Superseding Indictment [Doc. # 209] ¶ 3.) The Government alleges that Mr. Hoskins's "responsibilities at Alstom included oversight of the hiring of consultants in connection with Alstom's and Alstom's subsidiaries' efforts to obtain contracts with new customers and to retain contracts with existing customers in Asia, including the Tarahan Project" and "[t]hus HOSKINS was an agent of a 'domestic concern,' Alstom Power US, as that term is used in the [Foreign Corrupt Practices Act]." (*Id.* ¶ 13.) In his capacity as Senior Vice President for the Asia Region in Alstom's International Network, Mr. Hoskins is alleged to have approved selection of and authorized payments to "consultants" retained for the purpose of "pay[ing] bribes to Indonesian officials who had the ability to influence the award of the Tarahan Project contract." (*Id.* ¶¶ 3, 7–8.)

The Third Superseding Indictment altered the charging language of Count One, the FCPA conspiracy count, which originally charged Mr. Hoskins with "being a domestic concern and an employee and agent of [Alstom Power U.S.]" and replaced it with the allegation that Mr. Hoskins conspired by acting "together with" a domestic concern to violate 15 U.S.C. § 78dd-2 (prohibiting domestic concerns from using interstate commerce corruptly to promise, authorize, or give anything of value to a foreign official) and 15 U.S.C. § 78dd-3 (prohibiting any person from taking acts in furtherance of the corrupt scheme while in the United States). (*Compare* 2d Superseding Indictment ¶ 26(a) *with* 3d Superseding Indictment ¶ 26(a).)

While recognizing that "[t]heories of accomplice liability under the general conspiracy statute, 18 U.S.C. § 371, and aiding and abetting statute, 18 U.S.C. § 2, generally apply across the United States Code," (Ruling on 2d Mot. to Dismiss at 7), this Court previously concluded that a non-resident foreign national could not be subject to criminal liability under the FCPA pursuant to accomplice theories of liability or aiding and abetting violations of the FCPA where he is not acting as an agent of a domestic concern or does not act while physically present in the United States.

In so deciding, the Court relied on the *Gebardi* principle, or the notion that "the Executive [may not] . . . override the Congressional intent not to prosecute" a party by charging it with conspiring to violate a statute that it could not directly violate. *United States v. Castle*, 925 F.2d 831, 833 (5th Cir. 1991); *see also United States v. Bodmer*, 342 F. Supp. 2d 176, 181 n.6 (S.D.N.Y. 2004) ("In *Gebardi*, the Supreme Court held that where Congress passes a substantive criminal statute that excludes a certain class of individuals from liability, the Government cannot evade Congressional intent by charging those

3

individuals with conspiring to violate the same statute."). Based primarily on the text and structure of the FCPA, and considering its legislative history and other courts' interpretations of the statute, the Court found Congressional intent to exclude non-resident foreign nationals from liability under the FCPA so long as they did not act while in the territory of the United States (Section 78dd-3) and did not fall into an enumerated class of persons with threshold ties to a U.S. securities issuer (Section 78dd-1) or U.S. domestic concern (Section 78dd-2). (Ruling on 2d Mot. to Dismiss at 20.) It followed, then, that Mr. Hoskins could only be charged with conspiring to violate Section 78dd-2 of the FCPA (the underlying charge pertaining to Counts 2 through 7) if he was conspiring as an agent of a domestic concern. It is this application of the *Gebardi* principle that the Government asks the Court to reconsider.

II.   **Legal Standard**

Although "[n]either the Federal Rules of Criminal Procedure nor the Local Criminal Rules expressly provide for reconsiderations," such motions are permitted in criminal cases and governed by the same standard applicable to the equivalent civil filing. *United States v. Reyes*, No. 3:10-CR-120 (VLB), 2013 WL 1882305, at *1 (D. Conn. May 3, 2013); *see United States v. Yannotti*, 457 F. Supp. 2d 385, 388 (S.D.N.Y. 2006) (acknowledging that while the Federal Rules of Criminal Procedure do not expressly recognize motions for reconsideration, such motions "have traditionally been allowed within the Second Circuit").

Motions for reconsideration require the movant to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)(1). The standard for granting such motions is

strict as they are not to be used by parties to relitigate issues already decided. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Rather, "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478). In essence, reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255.

**III.    Discussion**

The Government contends that reconsideration is required here on two grounds: first, it asserts that the Court neglected to discuss "numerous statements in [the FCPA's] legislative history" in its original ruling; second, it claims that several additional cases to which it now draws the Court's attention support its reading of the statute. *See Shrader*, 70 F.3d at 257 ("Admittedly, a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided. But in light of CSXT's introduction of additional relevant case law and substantial legislative history, we cannot say that the district court's decision to reconsider its earlier ruling was an abuse of discretion."). Each ground will be addressed in turn.

A.  **The FCPA's Legislative History**

The Government maintains that the Court erroneously relied on a passage[1] from a April 6, 1977 markup session to reach the conclusion that while Congress may have contemplated theories of secondary liability in early stages of the FCPA's legislative history, "the enacted version specifically delineated the extent of individual liability by making it clear that' the delineated individuals were covered directly." (Ruling on 2d Mot. to Dismiss at 16 (internal quotation marks and alterations omitted).) The Government maintains that the Court's reliance on this markup session was incorrect because: (1) a House Report released five months after this markup session asserted that "[t]he concepts of aiding and abetting and joint participation would apply to a violation under this bill in the same manner in which those concepts have always applied in both SEC civil actions and implied private actions brought under the securities laws generally" (H.R. Rep. No. 95-640, Ex. 1 to Gov't's Mot. for Reconsideration at 8); (2) the final Conference Report made no reference to eliminating the concepts of aiding and abetting and conspiracy liability; and (3) in the final Senate Report, after the markup session, "the Senate made

---

[1] The passage reads as follows:
> I believe this amendment also reflects the Administration's position in recommending that individuals be covered. Indeed, I believe that the Committee last year intended to cover individuals; however, it wasn't specifically stated. They were intended to be covered as aiders, abettors and conspirators and so on and so forth, and this makes clear that they are covered directly and also it makes it clear that they are covered in their capacity in acting on behalf of the company. That is to say, if they are acting on their own, it isn't covered either to themselves nor what I believe would be attributed to the company in that circumstance.

(April 6, 1977 Markup Session, Senate Committee, Ex. 3 to Gov't's Mot. for Reconsideration at 12.)

6

clear the limits of FCPA jurisdiction, and by negative implication did not remove aiding and abetting liability." (Gov't's Mot. for Reconsideration at 4–6.)

The Government misperceives the Court's reliance on the markup session: language from the session was cited merely because it foreshadowed and aligned with "the enacted version" and not because the markup session alone supported the Court's analysis. (*See* Ruling on 2d Mot. to Dismiss at 16.) The Court's awareness that the House Report was issued five months after the markup session is demonstrated by its citation to each in its Ruling.[2] (*Id.*) Furthermore, the Court is not persuaded that reconsideration is warranted based on the Government's argument that the Senate Report "by negative implication did not remove aiding and abetting liability." (Gov't's Mot. for Reconsideration at 6.) In support of its position, the Government cites the following passage from the Report:

---

[2] Moreover, while the Government relies on the final Conference Report as evidence that Congress assumed aiding and abetting and conspiracy liability with respect to foreign nationals still applied to the FCPA when it was enacted, its reliance on this passage is perplexing. (*See* Gov't's Mot. for Reconsideration at 5–6.) The passage states that "individuals other than those specifically covered by the bill (e.g., officers, directors, employees, agents, or stockholders acting on behalf of an issuer or domestic concern) will be liable when they act in relation to the affairs of any foreign subsidiary of an issuer or domestic concern if they are citizens, nationals, or residents of the United States. (H.R. Rep. No. 95-831, Ex. 4 to Gov't's Mot. for Reconsideration at 14.)

Additionally, the Government points to the sentence succeeding the above passage, which states that "foreign nationals or residents *otherwise under the jurisdiction* of the United States would be covered by the bill in circumstances where an issuer or domestic concern engaged in conduct proscribed by the bill." (*Id. (emphasis added)*.) However, "[t]he 1998 amendments to the FCPA . . . removed the phrase 'otherwise subject to the jurisdiction of the United States' from the statute and therefore this phrase does not apply to Defendant." (Ruling on 2d Mot. to Dismiss at 15.)

7

> The committee has recognized that the bill would not reach all corrupt overseas payments. For example, the bill would not cover payments by foreign nationals acting solely on behalf of foreign subsidiaries where there is no nexus with U.S. interstate commerce or the use of U.S. mails and where the issuer, reporting company, or domestic concern has no knowledge of the payment.

(S. Rep. No. 95-114, Ex. 5 to Gov't's Mot. for Reconsideration at 11.) However, the succeeding passage focuses on ensuring that U.S. companies are unable to "'look the other way' in order to raise the defense that they were ignorant of bribes made by foreign subsidiaries" and is silent about aiding and abetting or conspiracy liability. (*Id.*) As it stands, the Court and the Government merely reach opposite conclusions with respect to whether theories of secondary liability as described in these reports survived over the course of the FCPA's legislative history.

Next, the Government contends that the Court's interpretation of the markup session is incorrect when understood in the context of surrounding passages. It suggests that a discussion following the disputed passage illustrates that "Congress was focused on making clear that lower level employees should also be held criminally liable, not just individuals with substantial authority," and that the passage had nothing to do with secondary liability. (Gov't's Mot. for Reconsideration at 3.)

It is true that a discussion among legislators concerning the implications of liability, particularly with respect to holding lower level employees responsible for actions their companies directed them to take, follows the disputed passage. (*See* April 6, 1977 Markup Session at 12–15.) But this does not mean that the Court's "interpretation" of the passage was "clear error" requiring reconsideration. The passage merely demonstrates Congressional recognition of specific issues related to holding employees of corporations

8

directly liable for actions taken on behalf of the corporation. (*See id.* at 13–14.) The Government adopts a contrary view as to the meaning of this passage, just as it did in its opposition to Mr. Hoskins's Second Motion to Dismiss the Indictment; however, a motion for reconsideration is not an opportunity to relitigate the merits of prior arguments and the Government has failed to show how the Court's interpretation was "clear error."

### B. The Organisation for Economic Co-operation and Development Convention

The 1998 amendments to the FCPA sought to bring the Act in conformity with the OECD convention, the primary purpose of which was to criminalize bribery of foreign officials by requiring signatory countries to the Convention to adopt laws that made it a criminal offense to engage in such conduct. (*See* Ruling on 2d Mot. to Dismiss at 19.). The FCPA amendments included Section 78dd-3, which held individuals and entities, regardless of nationality, liable under the FCPA if they took action "while in the territory" of the United States.

The Government again argues that the Court's interpretation of the following passage drawn from the Senate Committee Report for Section 78dd-3 is incorrect:

> Although this section limits jurisdiction over foreign nationals and companies to instances in which the foreign national or company takes some action while physically present within the territory of the United States, Congress does not thereby intend to place a similar limit on the exercise of U.S. criminal jurisdiction over foreign nationals and companies under any other statute or regulation

(S. Rep. No. 105-277, Ex. 9 to Gov't's Mot. for Reconsideration at 6.) In its Opposition Brief to Mr. Hoskins' Motion to Dismiss Count One of the Third Superseding Indictment, the Government maintained that when Congress stated that it did not intend

to limit the exercise of U.S. criminal jurisdiction with respect to "any other statute or regulation," it was expressly referring to aiding and abetting and conspiracy liability under 18 U.S.C. §§ 2 and 371, respectively. (*See* Gov't's Opp'n at 29). The Court rejected this interpretation, reasoning that "[t]he more logical conclusion given the context is that Congress was clarifying that while the newly-added 15 U.S.C. § 78dd-3 only provided for liability for foreign nationals for their acts within the territory of the United States, Congress did not intend to impose such a territorial limitation under 15 U.S.C. § 78dd-2 for foreign nationals who were agents, officers, directors, employees or stockholders of domestic concerns." (Ruling on 2d Mot. to Dismiss at 18 n. 11.)

The Government continues to disagree with this conclusion, but rather than provide new evidence or caselaw to support its position, it recycles its previously rejected argument, stating that "if Congress had meant 'any other statute or regulation' to refer only to the other provisions of the FCPA, it would have done so by using the same language it used to refer to those provisions throughout the legislative history." (*Compare* Gov't's Opp'n to Def.'s 2d Mot. to Dismiss [Doc. # 262] at 29 *with* Gov't's Mot. for Reconsideration at 8.) By the same token, Congress was also capable of referring explicitly to the statutes governing secondary liability but did not.

The Government maintains that this interpretation "turns the analysis on its head" since "Congress need not provide an express intent in the legislative history or statutory text to employ the normal principles of accomplice and conspiratorial liability. . . [because] they are presumed to apply in the absence of an express intent to the contrary." (Gov't's Reply [Doc. # 291] at 13.) However, the Court has never held that secondary liability is inapplicable to the FCPA. The question is: *to whom* can secondary

10

liability be applied given the text and structure of the FCPA? Thus, the issue here is a narrower one, namely, whether such secondary liability applies to categories of persons excluded by the express language of the underlying substantive offense in light the *Gebardi* principle. Notwithstanding the Government's persistent claims to the contrary, the Court still does not find the language in the Senate Committee Report to amount to an unambiguous statement that Congress intended the statutes governing secondary liability to apply to foreign nationals who are not otherwise covered by the FCPA as principals.

C. **New Case Law**

Next, the Government claims that the Court should reconsider its Ruling in light of rulings in "several additional cases" interpreting the FCPA in a way that aligns with the Government's position. (Gov't's Reply at 4.) However, the Court finds only one additional case interpreting the FCPA in the Government's motion that was not previously raised by the parties or discussed by the Court—*United States v. McLean*, 738 F.2d 655 (5th Cir. 1984), where, in a footnote, the Fifth Circuit stated that the "[t]he [FCPA's] legislative history indicate[d] that aiding and abetting charges may be brought under the Act." *Id.* at 655 n.9. In addition to the fact that *McLean* does not constitute "an intervening change of controlling law" as it was published in 1984, the Fifth Circuit did not analyze the legislative history of the FCPA, nor did the case concern non-resident foreign nationals, instead addressing whether the statute "permits the prosecution of an employee for a substantive offense under the Act if his employer has not and cannot be

11

convicted of similarly violating the FCPA." *Id.* at 656. In the Court's view, *McLean* does not warrant reconsideration of the ruling.[3]

**IV.    Conclusion**

In summary, the Court concludes that the Government has failed to satisfy the strict standards governing motions for reconsideration, as it has made no showing that the Court's decision was in "clear error." Although the Government clearly disagrees with Court's interpretation of the FCPA and theories of secondary liability, disagreement does not provide a ground for reconsideration. For the foregoing reasons, the Government's Motion [Doc. # 273] for Reconsideration is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16 day of March 2016.

---

[3] Although the Government also points to *United States v. Castle*, 925 F.2d 831 (5th Cir. 1991) as supporting its position, this case was addressed at length by the Court in its Ruling and thus does not amount to "an intervening change of controlling law" or previously unconsidered case law providing grounds for reconsideration. (See Ruling on 2d Mot. to Dismiss at 11–12.) Regardless, the Court continues to view *Castle* as not helping the Government's position. (*See id.* at 12.)