UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | |
|---|---|
| v. | Criminal No. 3:12cr238 (JBA) |
| LAWRENCE HOSKINS | August 23, 2019 |

**RULING ON DEFENDANT'S MOTION FOR AGENCY INSTRUCTION**

Mr. Hoskins moves "for a pretrial ruling regarding the Court's jury instruction on the definition of the term 'agent' as used in the Foreign Corrupt Practices Act" ("FCPA"). (Def.'s Mem. Supp. Mot. for Agency Instr. [Doc. # 449-1] at 1.) The Government "agrees with the defendant that the Court can define the term 'agent' prior to hearing the evidence presented at trial" but disputes the substance of Defendant's proposed instruction. (Gov't Opp. [Doc. # 476] at 1.)

### I. Background

The Court assumes the parties' familiarity with the facts and history of this case. "[F]or a jury to find Mr. Hoskins guilty of conspiring to violate or aiding and abetting violations of the FCPA, the government must prove beyond a reasonable doubt that, *inter alia*, Mr. Hoskins acted as an 'agent' of a domestic concern." (Def.'s Mem. at 1.) The meaning of the term "agent" is therefore a key question in this case, but the FCPA itself does not define that term.

### II. Discussion

The parties agree that "the definition of the term 'agent' in the FCPA should be drawn from traditional agency law principles, and includes an element of 'control'" but dispute the precise language which should be used to describe those principles to the jury. (Gov't Opp. at 1.)

The Defendant's proposed instruction includes in pertinent part:

> For purposes of your deliberations, as used in the FCPA, an "agent" is a person who agrees to perform acts or services for another person or company (known as the principal) under an express or implied agreement and who is subject to the principal's control or right to control the manner and means of performing the services. For example, an outside consultant or third-party intermediary retained by a corporation to perform a specific service may be an agent. An agent of one corporation is not necessarily also an agent of an affiliated corporation unless a separate agency relationship with that affiliated corporation is established. Therefore, in order for Mr. Hoskins to be considered an "agent of a domestic concern," you must find that: First, Alstom Power, Inc. manifested its intent that Mr. Hoskins act as its agent; AND Second, that Mr. Hoskins accepted Alstom Power, Inc.'s request to be its agent; AND Third, that Alstom Power, Inc. controlled, or had the right to control, Mr. Hoskins's day-to-day work for the duration of the agency relationship. Control is more than merely the ability to influence. Rather, in assessing whether Alstom Power, Inc. had the right to control Mr. Hoskins's conduct, you should consider whether Alstom Power, Inc. had the right to supervise and assess Mr. Hoskins's work, the right to approve or disapprove his actions, and the right to terminate his services.

(Def.'s Mem. at 20-21.) The Government's proposed instruction includes in pertinent part:

> An agent is a person who by agreement with another, called the principal, undertakes to represent the principal in performing some service for the principal. To be considered an agent, there must be a manifestation by the principal that the agent will act for the principal; the agent must accept the undertaking; and the parties must understand that the principal is in control of the undertaking. Such control need not be present at every moment, its exercise may be attenuated, and it may even be ineffective. Joint participation in a partnership or joint venture establishes 'control' sufficient to make each partner or joint venturer an agent of the others. Proof of agency need not be in the form of a formal agreement between agent and principal; rather, it may be inferred circumstantially and from the words and actions of the parties involved. Finally, agency need only be found in connection with the specific events of this case; in other words, one may be an agent for some business purposes and not others.

(Gov't Opp. at 10-11.)

The "FCPA does not define the term 'agent' and where no definition is provided, courts first 'consider the ordinary, common-sense meaning of the words.'" *United States v. Hoskins*, 73

F. Supp. 3d 154, 165 (D. Conn. 2014) (quoting *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000)) (internal quotation marks and citation omitted). And when a statute "'uses terms that have accumulated meaning under either equity or the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.'" *Id.* (quoting *N.L.R.B. v. Amax Coal Co., a Div. of Amax*, 453 U.S. 322, 329 (1981)). But a term's "plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." *United States v. Gayle*, 342 F.3d 89, 93 (2d Cir. 2003). In cases of ambiguity, courts "may consult legislative history and other tools of statutory construction to discern Congress's meaning." *Gayle*, 342 F.3d at 93.

The Government takes issue with four aspects of Defendant's proposed instruction. First, the Government argues, Mr. Hoskins "incorrectly states in his motion that the Second Circuit's definition of agency includes 'the principal's right to control the agent,'" when what is actually required is that "the principal need only control the 'undertaking.'" (Gov't Opp. at 2.) "Rather than employing this well-established statement of the law, the defendant instead proposes that the jury be instructed that the principal must control the defendant's 'day-to-day work for the duration of the agency relationship.'" (*Id.* at 3 (quoting Def.'s Mem. at 21).) The Government argues that it is well-settled that "the control asserted need not include control at every moment; its exercise may be very attenuated and, as where the principal is physically absent, may be ineffective." (*Id.* (quoting *Cleveland v. Caplaw Enterp.*, 448 F.3d 518, 522 (2d Cir. 2006).)

Mr. Hoskins responds that the Government is attempting "to create an artificial distinction between a principal's control over an 'undertaking' and the principal's control over an agent's actions." (Def.'s Reply [Doc. # 481] at 1.) Defendant describes this change in language as "a distinction without a difference" because "the 'undertaking' referred to is the agent's

3

undertaking *to act for* the principal," and therefore, "the reference to 'control of the undertaking'" refers to the principals' authority to control the agent's actions taken on the principal's behalf. (*Id.* at 2.) Despite arguing that the two formulations are functionally identical, Mr. Hoskins nonetheless contends that "for the sake of clarity and to avoid confusion, the jury instruction should refer to the principal's right to control Mr. Hoskins's actions." (*Id.* at 4.)

The Court disagrees with Defendant's suggestion that an instruction that the principal must control the "undertaking" would be more confusing to the jury than an instruction that the principal must control the "agent." An instruction which states that the principal must control the "agent" might wrongly suggest to the jury that a higher level of generalized control over the agent is required, contrary to Defendant's own acknowledgement that the control need only be over "the agent's actions taken on the principal's behalf," (*id.* at 3). Thus the Court's instruction to the jury on agency will follow the Second Circuit's clear statement of the third requirement of an agency relationship: "the understanding of the parties that the principal is to be in control of the undertaking." *Cleveland*, 448 F.3d at 522; *see Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 277 (2d Cir. 2013) (describing the "three elements necessary to an agency relationship" as "(1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties *that the principal will be in control of the undertaking.*" (emphasis in original) (internal quotation omitted)).

Second, the Government argues that "the defendant's proposed instruction omits the well-established agency principle that 'control asserted need not include control at every moment; its exercise may be very attenuated and, as where the principal is physically absent, may be ineffective.'" (Gov't Opp. at 8 (quoting *Caplaw*, 448 F.3d at 522, and additional cases).) Mr.

4

Hoskins, the Government notes, "fails to provide a justification for why the jury should not be instructed on this portion of the Second Circuit's definition of 'control.'" (*Id.*)

Mr. Hoskins "does not dispute these principles of agency law, and nothing in his proposed jury instruction is inconsistent with them," but argues that "an instruction regarding attenuated control would only be appropriate if the government provides evidence at trial that API actually exercised some degree of control." (Def.'s Reply at 7.) Because the applicability of this portion of the Government's requested instruction will be informed by the evidence at trial, the Court cannot now determine whether that language will be included in the instruction given to the jury.

Third, the Government argues that "the defendant's proposed instruction omits that 'joint participation in a partnership or joint venture establishes 'control' sufficient to make each partner or joint venture an agent of the others." (Gov't Opp. at 9 (quoting *CutCo Indus. v. Naughton*, 806 F.3d 361, 366 (2d Cir. 1986).) The Government argues that this legal principle will be especially important after it demonstrates at trial "that the defendant and his Alstom colleagues were part of a consortium, i.e. partnership, in bidding on and securing the Tarahan Project, and therefore they were agents of each other for that particular venture." (*Id.*) Because the applicability of the standard set out in *CutCo* will be depend in part on the evidence at trial, the Court will make the determination whether language derived from that standard will be included in the instruction given to the jury at the time of trial.

Fourth, the Government contends that Mr. Hoskins' proposed instruction "overlooks the axiomatic principle that, '[i]n determining the existence of an agency relationship . . . substance controls over form . . . .'" (Gov't Opp. at 4 (quoting *Urban Assocs. v. Standex Elecs., Inc.*, 216 F. App'x 495, 510 (6th Cir. 2007) and citing *Caplaw*, 448 F.3d at 523).) The Government argues that

"[r]ather than providing the jury broad principles consistent with the ones adopted by the Supreme Court and Second Circuit[1] that would allow the jury to reach a decision on the facts presented at trial, the defendant's proposed instruction instead injects a number of fact-specific scenarios that are not grounded in the facts of this case and will likely confuse and mislead the jury." (Gov't Opp. at 4-5.) Mr. Hoskins responds that he "does not disagree with the precept," but defends the portions of his charge with which the Government takes issue under this principle. (Def.'s Reply at 5.)

The Government takes issue with the portion of Defendant's proposed instruction which reads, "For example, an outside consultant or third-party intermediary retained by a corporation to perform a specific service may be an agent." It contends that by including this sentence, "rather than accurately restate the law, the defendant intends to mislead the jury by using the court to help him draw a distinction between himself and the consultants he helped hire to pay bribes." (*Id.* at 5-6.) Mr. Hoskins "does not contend" that he is such a consultant, but defends the inclusion of this sentence because "a third-party consultant is a paradigmatic example of an

---

[1] The "question whether an agency relationship exists is highly factual," and it
can turn on a number of factors, including: the situation of the parties, their relations to one another, and the business in which they are engaged; the general usages of the business in question and the purported principal's business methods; the nature of the subject matters and the circumstances under which the business is done.

*Caplaw*, 448 F.3d at 522 (internal quotation omitted). Moreover, "[o]ne may be an agent for some business purposes and not others so that the fact that one may be an agent for one purpose does not make him or her an agent for every purpose." *Daimler AG v. Bauman*, 571 U.S. 117, 135 (2014).

agent, and it is both customary and appropriate to provide the jury with concrete examples in order to aid in their understanding." (Def.'s Reply at 5.)

However, Mr. Hoskins' proposed example in this case treads too closely to trial evidence anticipated to reference third-party consultants. Singling out that category of persons in the agency instruction is therefore likely to confuse the jury, and this example will not be used.

The Government also argues that the sentence in Defendant's proposed charge which reads, "An agent of one corporation is not necessarily also an agent of an affiliated corporation unless a separate agency relationship with that affiliated corporation is established" is "unnecessary and could potentially confuse and mislead the jury" and is unsupported by any authority. (*Id.*) This statement, according to the Government, oversimplifies the relationships between the Alstom entities which will be demonstrated at trial and so will lead to confusion. (*Id.* at 6-7.)

Mr. Hoskins responds that the Government's own argument—that it intends to introduce evidence about the interconnectedness of Alstom entities—is precisely why that instruction is necessary:

> Since, by the government's own admission, it intends to argue that the lines between API and its affiliated entities were blurry, it is crucial that the Court instruct the jury that they must find that Mr. Hoskins was an agent of API—the only "domestic concern" entity referenced in the indictment.

(*Id.* at 6.) Evidence and arguments about the impact of the relationships among Alstom entities will undoubtedly be offered at trial, and the Court's instruction will make clear that the Government must prove that Mr. Hoskins was an agent of Alstom Power, Inc. Defendant's requested language is therefore unnecessary and risks confusing or misleading the jury.

The Government also challenges the language in Defendant's proposed instruction which reads: "Control is more than merely the ability to influence. Rather, in assessing whether Alstom Power, Inc. had the right to control Mr. Hoskins's conduct, you should consider whether Alstom Power, Inc. had the right to supervise and assess Mr. Hoskins's work, the right to approve or disapprove his actions, and the right to terminate his services." (Gov't Opp. at 7-8 (quoting Mem. Supp. Agent Instr. at 21).) This too, according to the Government, lacks any authority and misstates the caselaw, which does not define so narrowly the requirements of control.

Mr. Hoskins responds that this language comes from this Court's prior ruling, which noted that "the requirement that an agent be subject to the principal's control assumes that the principal is capable of providing instructions to the agent and of terminating the agent's authority." *United States v. Hoskins*, 2015 WL 4874921, at *8 (D. Conn. Aug. 14, 2015) (concluding that a discovery request for "information reflecting policies for hiring, appraisal and termination of employees" at Alstom entities was relevant to the question of agency). But that language did not define agency for purposes of a jury instruction, and narrowly listing aspects of an agency relationship as Defendant requests is likely to mislead the jury and is unnecessary to ensure the jury's understanding of agency principles.

## III. Conclusion

For the foregoing reasons, Defendant's Motion for a Jury Instruction Regarding the Meaning of the Term Agent [Doc. # 449] is granted in part and denied in part. The agency instruction given to the jury will be consistent with this ruling, but its precise contours and content will be determined at trial.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 23rd day of August 2019.