UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:12CR238 (JBA) |
| v. | |
| LAWRENCE HOSKINS | October 25, 2019 |

**GOVERNMENT'S SUPPLEMENTAL REQUESTS FOR JURY INSTRUCTIONS**

Supplementing its earlier requests, the Government moves the Court for: (1) a jury instruction clarifying that the "undertaking" that forms the basis of the agency relationship between Alstom Power Inc. and the defendant is Alstom Power Inc.'s efforts to secure the Tarahan Project; (2) a jury instruction on the definition of "agent" to avoid confusion relating to other references to the term "agent" in the evidence; (3) a jury instruction clarifying the intent standard in Count Eight (money laundering conspiracy), in response to the Court's inquiry; and (4) a jury instruction regarding the interstate commerce element in Counts Two through Seven (FCPA) to clarify that the Government need not prove that the defendant intended the use of the mails or any means or instrumentality of interstate commerce.

**I.    The instructions should clarify that the "undertaking" is Alstom Power Inc.'s efforts to secure the Tarahan project**

The Government first requests that the jury instructions make clear that, in the context of any agency instruction, the "undertaking" with which Hoskins is tasked and that is controlled by Alstom Power Inc. ("API") is support and assistance in securing the Tarahan contract for API, and is not limited only to the retention of agents.

In his recent opposition to the Government's motion to limit expert testimony (Doc. 539), the defendant asserted that the "undertaking" for purposes of the Court's agency instruction should be limited to "the retention of local agents." Having unsuccessfully asked the Court to ignore clear

Second Circuit precedent and expunge the word "undertaking" altogether from the definition of agency, he now tries to artificially narrow the meaning of the word so that it has the same import as his prior requested instruction. His basis for so doing appears to be an overly restrictive reading of the Government's Third Superseding Indictment (the "Indictment").

Yet an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)). Thus the Government need not have alleged the evidence in support of its allegation that the defendant was an agent of API, nor—even if it did so—was it required to do so comprehensively.

Nonetheless, the Indictment makes clear that the defendant's role in support of Alstom Power Inc. was broader than just retaining agents, and included support services to API and helping API secure the Tarahan Project. *See, e.g.*, Ind. ¶ 3 ("[As a Senior Vice President in International Network], HOSKINS performed functions and support services for and on behalf of various other Alstom subsidiaries, including Alstom Power US, as described more fully below."); ¶ 29 ("HOSKINS, together with others, in the District of Connecticut and elsewhere, discussed in person, via telephone, and via electronic mail ('e-mail') the need to obtain the contract to perform power-related services on the Tarahan Project."). While there is no question that retention of agents was an important part of the defendant's support of API's efforts, the Indictment makes clear that his role in selecting agents was in service of "Alstom's and Alstom's subsidiaries' efforts to obtain contracts with new customers and to retain contracts with existing customers in Asia, including the Tarahan Project in Indonesia." Ind. ¶ 13.

The evidence that the Government intends to introduce at trial will match the Indictment's description of the defendant's supporting role in helping API secure the Tarahan Project. For example, as early as August 20, 2002, at the outset of the bidding process, the defendant sent an email with the subject, "Indonesia Tarahan," in which he wrote: "Fred P[ierucci] asked me to check with Resa on latest position on Tarahan. I spoke with Resa and Eko and game plan is to get Mitsui out (corruption scandal etc) leaving likely bids from ourselves and FW Finland next month. Spec apparently does not allow Indian/Chinese/Korean components. We then plan to appoint Emir [Moeis] who I understand has been previously used by G segment on fee plus expenses basis. We also need Marubeni help to put pressure on JBIC end to help our cause. Fred will pass through Paris next week and I will brief him. Let me know if you have any knowledge/views on Emir or JBIC issues." Thus more than merely assisting with the hiring of consultants, the defendant was enlisted by Fred Pierucci, an API employee and head of sales for Alstom's global boiler business, to help with the Tarahan project more generally.

Similarly, on August 29, 2003, the defendant sent an email to Pierucci with the subject, "Tarahan," in which the defendant wrote, "Understand on above that Marubeni pressing us to make bid extn (tomorrow) without increasing price but Windsor [API] wish to increase price by 2.4 million dollars….Reza believes we will get the increase during negotiations and is checking with the team as to whether they can 'guarantee' this….If Reza puts his name to guaranteeing the increase during negotiation can Windsor be persuaded? Or do you have other ideas??"

When API was successful in winning the Tarahan Project, Fred Pierucci sent a congratulatory email to the defendant and others, and specifically thanked the defendant and two other employees "for the local support without which we would not have been able to achieve this result."

3

Indeed, even the defendant's proposed exhibits list the defendant's responsibilities to include, among other similar functions, "[s]upport[ing] the Sectors in defining and implementing their regional strategy and objectives." *See, e.g.*, Defense Exhibit 16.

In short, the Indictment and the evidence that will be adduced at trial make clear that the "undertaking" is API's efforts to secure the Tarahan Project.

Thus the Government suggests the following clarifying instruction, in the definition of the term "agent":

> An agent is a person who by agreement with another, called the principal, undertakes to represent the principal in performing some service for the principal. To be considered an agent, there must be a manifestation by the principal that the agent will act for the principal; the agent must accept the undertaking; and the parties must understand that the principal is in control of the undertaking. **Here, the government alleges that the "undertaking" included the defendant's activities in support of Alstom Power Inc.'s efforts to secure the Tarahan Project.** Such control need not be present at every moment, its exercise may be attenuated, and it may even be ineffective. Joint participation in a partnership or joint venture establishes 'control' sufficient to make each partner or joint venturer an agent of the others.
>
> Proof of agency need not be in the form of a formal agreement between agent and principal; rather, it may be inferred circumstantially and from the words and actions of the parties involved.
>
> Finally, agency need only be found in connection with the specific events of this case; in other words, one may be an agent for some business purposes and not others.

## II. The instructions should clarify that the jury should adhere to the Court's instruction of "agent" and not other definitions found in the evidence

The Government next requests a clarifying instruction that the jury should follow the Court's instruction as to the definition of "agent," and that it should ignore any definition or colloquial use of the word found in the evidence.

The evidence in this case, both from the Government and defendant, will include references to the term "agent," interchangeably with "consultant" and "representative," to mean third-party intermediaries that were frequently used to pass bribes from Alstom to government officials. In

fact, some exhibits may define the term "agent" for Alstom's internal purposes. *See, e.g.*, Defense Ex. 17.

In rejecting the defendant's request for an instruction that an outside consultant or third-party intermediary may be an agent, the Court concluded: "Mr. Hoskins proposed example in this case treads too closely to trial evidence anticipated to reference third-party consultants. Singling out that category of persons in the agency instruction is therefore likely to confuse the jury, and this example will not be used." Doc. 532 at 7; *see also Nat'l R.R. Passenger Corp. v. One 25,900 Square Foot More or Less Parcel of Land*, 766 F.2d 685, 688 (2d Cir. 1985) ("A charge that appears likely to have left the jury 'highly confused' may, on that ground alone, be reversed." (citation omitted)); *Kreiner v. United States*, 11 F.2d 722, 726 (2d Cir. 1926) ("While the government must prove guilt, and prove it beyond a reasonable doubt, a court should be careful to refuse an instruction the effect of which, in the form in which it is presented, is only to mislead and confuse the jury.").

To avoid jury confusion, and to ensure the jury follows the law as the Court gives it, the Government proposes the following supplemental instruction to the Court's agency instruction:

> You have seen and heard evidence that the term "agent" was sometimes used in connection with Alstom's business, including in internal Alstom documents. I instruct you that, in determining whether the defendant was an agent of Alstom Power Inc. in connection with the Tarahan Project, you should follow the instructions I have just given you. You should not rely on Alstom's definition or use of the term "agent," or the colloquial use of the word by any other document or witness, which was in a different context and for a different purpose than my instructions here.

### III. The instructions should clarify the intent requirement for the money laundering conspiracy in Count Eight

During a pretrial conference on October 16, 2019, the Court sought the parties' position on whether specific intent is an element of the money laundering conspiracy charged in Count Eight

5

of the Third Superseding Indictment. Tr. 18:15-18 (requesting clarification on whether specific intent is an element of the money laundering conspiracy charged in Count 8 under *United States v. Garcia*, *United States v. Huezo*, and *Cuellar v. United States*[1]).

### A. Existing proposed instructions.

For Count 8, the Government's proposed instructions state: "In order to satisfy its burden of proof, government must establish the following two essential elements beyond a reasonable doubt. . . . Second, that the defendant *knowingly, willfully, and voluntarily* became a member of that conspiracy." Govt. Preliminary Proposed Jury Instructions (Doc. 452) at 46 (emphasis added). The Government then referred back to the proposed explanations of "knowingly and willfully" given in the FCPA conspiracy instruction, which required the jury to consider whether the defendant acted with "knowledge of [the conspiracy's] unlawful purpose and *with the specific intention* of furthering its business or objective." *Id* at 19 (emphasis added). The proposed instruction added: "In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering the illegal undertaking." *Id.* at 21.

The defendant's proposed instructions is as follows: "In order to satisfy its burden of proof, the Government must establish the following two elements beyond a reasonable doubt. . . . Second, that Mr. Hoskins knowingly engaged in the conspiracy *with the specific intent* to commit the offenses that are the objects of the conspiracy." Defense Proposed Jury Instructions (Doc. 446) at 40 (emphasis added).

---

[1] In *Cuellar v. United States*, 553 U.S. 550, 567 (2008), the Supreme Court held that a conviction for concealment money laundering "requires proof that the purpose—not merely effect—of the transportation was to conceal or disguise a listed attribute" of the funds. The Court relied on the word "design" in the concealment money laundering provision. *Id*. at 563. Since the defendant here is not charged with concealment money laundering, *Cuellar* does not apply.

6

### B.     Intent standard for money laundering conspiracy.

18 U.S.C. § 1956(a)(2)(A), in relevant part, criminalizes "[w]hoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity."  Thus in order to prove a violation of this provision, the Government must show that the defendant acted "with the intent to promote the carrying on of specified unlawful activity." *United States v. Piervinanzi*, 23 F.3d 670, 680 (2d Cir. 1994) (quoting § 1956(a)(2)(A)); *see also United States v. Bodmer*, 342 F. Supp. 2d 176, 192 (S.D.N.Y. 2004).  However, unlike in other money laundering offenses, the money being transported need not be criminal proceeds. *Cuellar*, 553 U.S. at 561 n. 3 ("Section 1956(a)(2)(A) also punishes the mere transportation of lawfully derived proceeds, but it imposes the additional requirement . . . that the defendant must have "inten[ded] to promote the carrying on of specified unlawful activity."); *United States v. Piervinanzi*, 23 F.3d 670, 680 (2d Cir. 1994) ("§ 1956(a)(2) contains no requirement that "proceeds" first be generated by unlawful activity, followed by a financial transaction with those proceeds, for criminal liability to attach."); *United States v. Krasinski*, 545 F.3d 546, 550 (7th Cir. 2008) (§ 1956(a)(2)(A) "does not refer to 'proceeds' of the activity").  Intent to promote "can be demonstrated by facts that show the defendant benefited from, or had extensive knowledge about, the underlying illegal activity he was promoting." *United States v. Stoddard*, 892 F.3d 1203, 1214-15 (D.C. Cir. 2018).

Unlike § 1956 (a)(2)(A), § 1957 does not have an intent element.  Rather, the Government must prove that the "defendant knew the transaction involved proceeds of a criminal offense." *United States v. Bick*, 711 F. App'x 664, 667 n.1 (2d Cir. 2017) (summary order); *see also United States v. Odiase*, __ F. App'x __, 2019 WL 4745383 (2d Cir. 2019) (summary order) ("The offense of transacting property derived from a specified unlawful activity under 18 U.S.C. § 1957 requires

7

a showing of knowledge that the money at issue was 'criminally derived property.'"). The Government is *not* required to prove that the defendant knew the specific crime from which the proceeds were derived. *See*, *e.g.*, *United States v. Reiss*, 186 F.3d 149, 154 (2d Cir. 1999) (holding Government need not prove defendant's knowledge of SUA); *United States v. Hawkey*, 148 F.3d 920, 925 (8th Cir. 1998) (government not required to prove defendant knew offense from which property was derived was SUA); *United States v. Weidner*, 437 F.3d 1023, 1041 (10th Cir. 2006) (same; government must prove defendant knew property was "criminally derived," but need not prove defendant knew it was derived from SUA). Similarly, the Government need not prove a defendant's knowledge that money laundering is illegal. *See*, *e.g.*, *United States v. Turman*, 122 F.3d 1167, 1169 (9th Cir. 1997) (government must prove defendant knew property was criminally derived, but need not prove defendant knew money laundering itself was illegal); *United States v. Sokolow*, 81 F.3d 397, 409 (3d Cir. 1996) (defendant does not need to know that the monetary transaction constitutes a criminal offense).

"Conspiring to launder money requires that two or more people agree to violate the federal money laundering statute, and that the defendant 'knowingly engaged in the conspiracy with the specific intent to commit the offenses that [are] objects of the conspiracy.'" *United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009) (quoting *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008)). As to specific intent, "[t]his requires the government to prove 'at least the degree of criminal intent necessary for the substantive offense itself.'" *United States v. Anderson*, 747 F.3d 51, 61 (2d Cir. 2010) (quoting *United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010)); *accord United States v. Feola*, 420 U.S. 671, 686 (1975).

Thus, a conspiracy to launder money in violation of 18 U.S.C. § 1957, which itself has no intent element, requires proof that the defendant knew the funds used in the transaction were

8

derived from unlawful activity. *See Odiase*, __ F. App'x __, 2019 WL 4745383, at *2 (in case charging § 1957 as one of two conspiracy objects, concluding "that a rational jury could find Odiase knew that the funds were derived from criminal activity"). And a conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(2)(A) requires proof that the defendant, through his participation, intended the transportation, transmission, or transfer of funds to promote the underlying SUA. *See, e.g.*, *United States v. Evergreen Intern.*, 206 F. App'x 71, 75 (2d Cir. 2006) (summary order) (in case charging § 1956(a)(2)(A) as the conspiracy object, requiring the government to prove that, through the transfer of funds, the defendants "intended to promote the underlying unlawful activity, as it was charged to the jury: defrauding investors by means of misrepresentations"); *United States v. Kozeny*, 638 F. Supp. 2d 348, 351(S.D.N.Y. 2009) (in case charging § 1956(a)(2)(A) as the conspiracy object, concluding "that a reasonable jury could draw the inference that Bourke agreed with others that the intended use of his investment would be, in part, for the purpose of bribing Azeri officials").

Where a conspiracy charges multiple objects, "the law is clear that a guilty verdict may be returned on a conspiracy count setting forth more than one object as long as the jury unanimously agrees that the defendant conspired to commit at least one object of the conspiracy." *United States v. Sharpsteen*, 913 F.2d 59, 62 (2d Cir. 1990); *see also United States v. Murray*, 618 F.2d 892, 898 (2d Cir. 1980) ("When an indictment charges a conspiracy to violate two statutes, the jury may find the defendant guilty if it believes beyond a reasonable doubt that he conspired to violate either one of the statutes.").

### C. The Government's proposed charge is correct.

The Government's proposed jury instructions adequately capture the specific intent requirement needed for a conspiracy charge under 18 U.S.C. § 1956(h). As discussed, the proposed instructions on Count 8 direct the jury to apply the first two elements in the conspiracy

9

instructions for Count 1. Doc. 452 at 46. As to the second element (Membership in the Conspiracy), the proposed Count 1 instructions explain to the jury that the relevant inquiry is "Did [the defendant] participate in [the conspiracy] with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective as an associate or worker?," *id.* at 19; that "[w]hat is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and *with the intention of aiding in the accomplishment of those unlawful ends*," *id.* at 20-21 (emphasis added); and that "the defendant, with an understanding of the unlawful character of the conspiracy, must have *intentionally* engaged, advised or assisted in it *for the purpose of furthering the illegal undertaking*," *id.* at 21 (emphasis added). The proposed instructions also inform the jury that the objects of the money laundering conspiracy are violations of 18 U.S.C. §§ 1957 and 1956(a)(2)(A) and describe the elements of those violations. *Id.* at 49-50, 53. These instructions ensure that, to convict the defendant under § 1956(h), the jury must find he intended that one or both of the underlying money laundering crimes be committed.

Indeed, the Government's proposed instructions are strikingly similar to the conspiracy instructions the Second Circuit held to be appropriate in *United States v. Ghayth*, 709 F. App'x 718 (2d Cir. 2017) (summary order), over a challenge by the defendant that the "instructions vitiated the 'specific intent requirement for conspiracy and murder." *Id.* at 720-21 (2d Cir. 2017) (summary order); *see generally United States v. Sabhnani*, 599 F.3d 215, 237 (2d Cir. 2010) (jury instructions must be considered as a whole).[2]

---

[2] The Government's instructions are also consistent with the instructions given in a recent case that the defendant himself cites in his proposed instructions. Defendant's Proposed Jury Charge (Doc. 446) at 37 n.33 (citing Trial Transcript, ECF No. 609, in *United States v. Lap Seng*, Case No. 1:15-cr-706 (S.D.N.Y. Aug. 3, 2017) (hereafter "*Lap Seng* Tr.")). Those instructions do not refer to "specific" intent when explaining the second element of money laundering conspiracy, and similar to the Government's proposed instructions, state, *inter alia*, that "[w]hat is necessary is that the defendant participated in the conspiracy with knowledge of its unlawful purpose and went to aid in the accomplishment of its unlawful objective or objectives." *Lap Seng* Tr. at 202-03, 234.

By contrast, the defendant's proposed instructions on a § 1956(h) conspiracy, which would require the jury to find that he "knowingly engaged in the conspiracy with the specific intent to commit the offenses that are the object of the conspiracy," Def. Proposed Jury Charge at 37 n.33 (Doc. 446), are misleading and may confuse the jury into believing that the defendant must have intended to commit the underlying crime himself, whereas what conspiracy law requires is that the defendant intentionally participated in the conspiracy with "the purpose of furthering any of its illegal objectives."  *Ghayth*, 709 F. App'x at 721; *see Ocasio*, 136 S. Ct. at 1429  ("A defendant must merely reach an agreement with the specific intent that the underlying crime *be committed* by some member of the conspiracy.  The government does not have to prove that the defendant intended to commit the underlying offense himself/herself.") (emphasis in original; citations and quotation marks removed); *see also United States v. Zhou*, 428 F.3d 361, 370-71 (2d Cir. 2005).

### D.     The Court should give a clarifying instruction regarding intent.

While the Government's charge is correct, a clarifying instruction regarding the intent standards in Count Eight will eliminate any risk of juror confusion.  Consistent with the law discussed above, the Government suggests the following, to be placed after the description of the two objects of Count Eight:

> As I explained to you in Count One, conspiracy law does not require that a defendant join in all of a conspiracy's unlawful objectives.  Rather, in order to find a defendant guilty of conspiracy, you need only find that that the defendant joined the conspiracy with the intent that the conspiracy accomplish at least one of those unlawful objectives, and that he acted with the same intent as if he committed the crime himself.  Here, the defendant is alleged to have joined a conspiracy to violate two different money laundering statutes, as I have just described.  To find the defendant guilty of a conspiracy to violate money laundering in violation of 18 U.S.C. § 1956(a)(2)(A), you must find that the defendant, through his participation in the conspiracy, intended the transportation, transmission, or transfer of funds to promote the bribery of Indonesian officials.  To find the defendant guilty of a conspiracy to violate 18 U.S.C. § 1957, you must find that the defendant joined the conspiracy with knowledge that the transacted funds were derived from unlawful activity, although the government need not prove that the defendant knew the precise nature of that unlawful activity, and the defendant need not have intended

11

that the transactions further any unlawful objective. Again, to find the defendant guilty of Count Eight, you must find he joined an agreement to violate one (or more) of these unlawful objectives.

### IV. The instructions should clarify that the defendant need not intend the use of means of interstate commerce in the FCPA

The Government next requests to amend its original requested instruction regarding interstate commerce (Doc. 452 at 36) to clarify that the Government need not prove that the defendant intended the use of the mails or any means or instrumentality of interstate commerce.

Under 15 U.S.C. § 78dd-2(a), the Government must prove that the defendant "[made] use of the mails or any means or instrumentality of interstate commerce." Because this is a jurisdictional element, there is no *mens rea* requirement. *See S.E.C. v. Straub*, 921 F. Supp. 2d 244, 261-64 (S.D.N.Y. 2013) (finding no intent requirement for the interstate commerce element of § 78dd-1). The court in *Straub* likened the interstate commerce element in the FCPA to similar parts of the wire and securities fraud statutes, which likewise do not require intent.

The Government therefore requests a charge that instructs the jury that they need not find that the defendant intended the use of a means or instrumentality of interstate commerce. The following proposal is modeled after the pattern charge for wire fraud:

> The third element that the Government must prove is that the defendant made use of the mails or any means or instrumentality of interstate commerce in furtherance of an unlawful act under the FCPA.
>
> The parties have stipulated that the wires charged in the indictment constituted means and instrumentalities of interstate commerce.
>
> It is not necessary for the defendant to be directly or personally involved in the charged wire, as long as the wire was reasonably foreseeable in the execution of the alleged bribery scheme.
>
> In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires to be sent by others. This does not mean that the defendant must specifically have authorized others to make the wire. When one does an act with knowledge that the use of the wires will follow in

the ordinary course of business or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used.

*See* Sand, Modern Federal Jury Instructions, Instruction 44-7.[3]

## V. Conclusion

The Government respectfully requests that the Court include the above instructions in its jury charge, in addition to the instructions previously requested by the Government (as amended).

Respectfully submitted,

| | |
|---|---|
| ROBERT ZINK | JOHN H. DURHAM |
| CHIEF | UNITED STATES ATTORNEY |
| Fraud Section, Criminal Division | District of Connecticut |
| United States Department of Justice | |
| | |
| /s/ | /s/ |
| | |
| DANIEL S. KAHN | DAVID E. NOVICK |
| SENIOR DEPUTY CHIEF | ASSISTANT U.S. ATTORNEY |
| Federal Bar No. phv04243 | Federal Bar No. phv02874 |
| LORINDA LARYEA | 157 Church St., 25th Floor |
| ASSISTANT CHIEF | New Haven, Connecticut 06510 |
| Fraud Section, Criminal Division | Tel. (203) 821-3700 |
| U.S. Department of Justice | |
| 1400 New York Avenue, N.W. | |
| Washington, D.C. 20005 | |
| Tel. (202) 616-3434 | |

---

[3] Because the interstate commerce element is jurisdictional, the Court need not resort to 18 U.S.C. §§ 2(a) or 2(b). The jury instructions originally proposed by the Government included aiding and abetting liability, but unintentionally excluded willful causation. *See* Doc. 452 at 36. 18 U.S.C. § 2(b) states that "[w]hoever willfully causes an act to be done which, if directly performed by him, would be an offense against the United States, is punishable as a principal." Unlike in § 2(a), where a defendant can only aid and abet someone committing a criminal act, "the guilt or innocence of the intermediary under a § 2(b) charge is irrelevant." *United States v. Ordner*, 554 F.2d 23 (2d Cir. 1977). In this case, while the evidence will show the defendant aiding and abetting several others who were knowing participants in the bribery scheme, the evidence will also show that others executed functions without criminal intent. In particular, the Government anticipates that the evidence will show that the actual payments by Alstom Power Inc. to consultants (or to Alstom PROM for the purpose of paying consultants)—which constitute the substantive FCPA violations—were executed by individuals who were not aware that the money was being used to pay Indonesian officials, and thus were not participants in the criminals scheme. Rather, the evidence will show that they were executing payments based on obligations set out in the consultancy agreements that the defendant helped secure. Thus, if the Court declines the Government's amended charge, a willful causation charge would be appropriate.

13

CERTIFICATION OF SERVICE

      This is to certify that on October 25, 2019, a copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

BY:     /s/_____
        DAVID E. NOVICK
        ASSISTANT UNITED STATES ATTORNEY