UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | Criminal No. 3:12cr238 (JBA) |
|---|---|
| v. | |
| LAWRENCE HOSKINS | October 28, 2019 |

## RULING ON GOVERNMENT'S MOTION TO LIMIT EXPERT TESTIMONY AND COMPEL COMPLIANCE WITH STANDING ORDER

The Government "moves the Court to significantly limit the proposed testimony of the defendant's expert witness, law professor Ronald J. Gilson, and compel the defendant's compliance with the Standing Order on Discovery." (Mot. to Limit [Doc. # 535] at 1.) Defendant opposes. ([Doc. # 539].)

### I. Background

The Court assumes the parties' familiarity with the underlying facts of this case. On December 18, 2018, Defendant notified the Government by letter that "he may call Professor Ronald J. Gilson as an expert witness on the topic of corporate governance, Alstom, S.A.'s (together with its affiliates, 'Alstom's') corporate governance and structure, and Mr. Hoskins's position in that structure." (Ex. 1 (December 2018 Notice) to Mot. to Limit [Doc. # 535-1] at 1.) The December 2018 Letter set out Professor Gilson's qualifications and indicated that he

> will testify about: 1) principles of corporate governance and corporate structure, including the manner in which a corporation relies on establishing a clear hierarchy of authority in managing its business; 2) Alstom's corporate governance structure during the period in which Mr. Hoskins was employed by Alstom; and 3) Mr. Hoskin's [sic] position in that structure, including his authority within the Alstom organization with respect to the retention of local agents.

(*Id.* at 2.) Professor Gilson's testimony "regarding principles of corporate governance and corporate structure" would be "based on his academic research and professional experience." (*Id.*) His testimony "regarding Alstom's structure and Mr. Hoskins's position" would be "based on his academic research and professional experience as well as documents previously provided by the government in discovery, including: corporate organizational charts; internal Alstom presentations and memoranda; and documents from Mr. Hoskins's personnel file, as well as publicly available corporate records." (*Id.*) Mr. Hoskins also "reserve[d] the right to elicit additional testimony from Professor Gilson to further elucidate these topics or to rebut evidence introduced by the government." (*Id.*)

On September 18, 2019, Defendant disclosed to the Government his witness list, which includes Professor Gilson. (Mot. to Limit at 3.) On September 25, 2019, the Government sent a letter to counsel for Defendant to request additional detail regarding Professor Gilson's testimony. (Ex. 2 (September 2019 Letter) to Mot. to Limit [Doc. # 535-2].) The September 2019 Letter described the content of the December 2018 Notice as "more a list of topics than it is a summary of the testimony and opinions you intend to elicit from Professor Gilson." (*Id.* at 1.) The Government requested additional summary of the opinions to be elicited and the specific bases of those opinions. (*Id.* at 1-2.)

On October 8, 2019, Defendant provided to the Government an additional notice regarding Professor Gilson's testimony. (Ex. 3 (Revised Notice) to Mot. to Limit [Doc. # 535-3].) The Revised Notice provides a "more detailed description of Professor Gilson's anticipated testimony and the bases for his conclusions." (*Id.* at 1.) The Revised Notice explains that "Professor Gilson is an expert in complex business entities, including corporations, and corporate governance and will testify about the nature and structure of corporations generally." (*Id.*) The Revised Notice goes on to

2

describe general aspects of typical corporate structure and governance. (*Id.* at 1-2.) The Revised Notice also states that "Professor Gilson will testify that, during the relevant time period, Alstom, S.A. was a French public limited liability company" which "was not an operating entity but rather managed the performance of and provided services to Alstom's many operating units." (*Id.* at 2.) He also "will testify about the structure of the Alstom conglomerate" and that "Alstom Power Inc. ('API') was a U.S. operating entity within the Alstom conglomerate that was part of the power Sector." (*Id.* 2-3.) Professor Gilson will explain that "API was owned by Alstom Inc., the holding company of Alstom in the United States, which was ultimately wholly owned by Alstom, S.A." (*Id.* at 3.)

As to Mr. Hoskins, Professor Gilson will testify "that, throughout his employment at Alstom, Mr. Hoskins was contractually employed by Alstom UK Ltd., a subsidiary of Alstom in the United Kingdom, but was formally assigned to work for Alstom Resource Management, S.A., another subsidiary, based at Alstom's Paris headquarters." (*Id.*) Professor Gilson will describe Mr. Hoskins's role as an "Area Senior Vice President in an Alstom headquarters component known as 'International Network'," which "was a component of the central Alstom management structure that operated separately from the Sectors." (*Id.*) He will explain that the International Network "performed a service for the operating entities but functioned as an instrument of Alstom, S.A., the parent entity" and was "not subject to the control of any Sector President or Operating entity" and that its "reporting and authority obligations were set by Alstom, S.A.'s central management team." (*Id.*) Professor Gilson will testify that Mr. Hoskins "had a variety of duties and responsibilities, including the authority to approve or disapprove requests by Alstom operating entities within the various Sectors to retain local agents or consultants" but "did not report to any Sector President or to anyone with an operating entity." (*Id.*) Instead, "Mr. Hoskins reported to

3

Etienne De, who in turn reported to Alstom, S.A.'s executive management team." (*Id.*) Professor Gilson will conclude that "[a]s such, Mr. Hoskins was not employed by API and did not report to anyone who worked for API," and "[t]herefore, based on the organizational structure of Alstom and the applicable corporate policies and procedures, no employee of Alstom Power Inc. had the authority to control or supervise Mr. Hoskins with respect to the retention of local agents." (*Id.*)

According to the Revised Notice, the bases for Professor Gilson's opinions are his "extensive[]" writings "on the topic of corporate governance" as "set forth in detail in Professor Gilson's *curriculum vitae*" and "*inter alia*, 1) Alstom's annual reports filed on Form 20-F with the Securities & Exchange Commission for the years 2002, 2003 and 2004 (which are publicly available); and 2) documents included on the defendant's preliminary exhibit list submitted to [the Government] on September 18, 2019, including exhibits 1, 2, 3A, 5, 6, 7, 10, 11, 13, 14, 16, and 17A." (*Id.* at 4.)

## II. Discussion

The Government claims that the Revised Notice and the scope of Professor Gilson's proposed testimony are improper in two ways. First, the Government argues that some of Professor Gilson's opinions will "improperly instruct the jury on legal terms and what conclusions to draw from the evidence in this case," while others are "entirely irrelevant." (Mot. to Limit at 4.) Second, the Government argues that Defendant has "failed to disclose a specific basis for *any* of" Professor Gilson's opinions, in violation of Federal Rule of Criminal Procedure 16 and this Court's Standing Order on Discovery.

### A. Scope of Professor Gilson's Testimony

"An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. But "Rule 704 was not intended to allow experts to offer opinions embodying legal

4

conclusions." *United States v. Scop*, 846 F.2d 135, 139 (2d. Cir. 1988). Rather, "under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . . [and] *also stand ready to exclude legal opinions phrased in terms of inadequately explored legal criteria.*" *Id.* at 140. (quoting Advisory Comm. Note to Fed. R. Evid. 704) (emphasis in *Scop*).

Expert testimony which "help[s] a jury understand unfamiliar terms and concepts" may be admissible, *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991), especially where it "focuse[s] solely on factual conclusions and [does] not involve any legal characterization," *United States v. Russo*, 74 F.3d 1383, 1395 (2d Cir. 1996). But such testimony is improper when it seeks to define terms which "are not self-defining terms but rather have been the subject of diverse judicial interpretations." *Scop*, 846 F.2d at 140. And where expert "testimony deliberately track[s] the language of the relevant regulation and statutes, [is] not couched in even conclusory factual statements, and [is] not helpful to the jury in carrying out its legitimate function," it should not be admitted. *Fiataruolo v. United States*, 8 F.3d 930, 942 (2d Cir. 1993). Any use of expert testimony "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of jury in applying that law to the facts before it." *Bilzerian*, 926 F.2d at 1294.

    i.    **Agency**

The Government argues that Defendant "improperly proposes to use Professor Gilson to instruct the jury on the definition of agency," thereby usurping the role of the Court. (Mot. to Limit at 6.) The Government takes issue with the portion of the Revised Notice which reads:

> Agency relationships are often formed by contract, and are embedded in the corporate governance and are embedded in the corporate governance arrangements for complex businesses. In the context of a complex business organization, an agency relationship can be created by virtue of an individual employee's employment contract, corporate documents which set forth that employee's duties and responsibilities or, in some cases, verbal instructions given by or on behalf of that employee's superiors. In all cases, delegations of authority must be made by those who themselves have the requisite authority to make such delegations. The hallmarks of this authority are the corporation's power to determine the authority of its employees and agents and to specify the internal approval process for specified decisions. This hierarchical authority chain is critical to managing large complex organizations.

(Revised Notice at 2.) The Government argues that in addition to usurping the function of the Court's jury instruction on agency, this testimony also "seemingly" attempts "to circumvent the Court's ruling that 'narrowly listing aspects of an agency relationship' in the jury instructions 'is likely to mislead the jury and is unnecessary to ensure the jury's understanding of agency principles.'" (Mot. to Limit at 7 (quoting Ruling on Agency Instruction [Doc. #532] at 8).) The Government also argues that "this is not a case in which the expert is required to help a jury understand unfamiliar terms or concepts" because the definition of agency is a question of law for the Court to define and not a complex industry term which requires additional explanation. (*Id.* at 7-8 (internal quotation omitted).)

The Government also contends that Professor Gilson's proposed testimony regarding general definitions and concepts of agency are not relevant or helpful in this case, given that "the existence of an agency relationship is a highly factual inquiry." (*Id.* at 8 (internal quotation omitted).) It argues that "[w]hether an agency relationship *can* be created by contract or whether it does so *in other corporate settings* does not make it 'more or less probable' that one existed in this case." (*Id.* (quoting Fed. R. Evid. 401) (emphasis in Mot. to Limit).)

6

Defendant responds that "Professor Gilson will not define agency, and his testimony certainly would not contradict or diverge in any respect from the Court's instruction on that issue." (Def.'s Opp. at 10.) "Rather," Defendant continues, "in explaining corporate governance principles as applied to large multinational businesses, Professor Gilson would explain how large companies typically use agents, how such relationships are commonly formed, and the importance of agency relationships in forming and running a large business." (*Id.*) "Professor Gilson would explain that, in the corporate context," the elements of an agency relationship "can be embodied in contracts or in other written corporate documents, or can be effectuated through verbal instructions when given by a party with requisite authority." (*Id.*)

But once the complexities of corporate structuring are explained, the way that "large companies *typically* use agents" and "how such relationships are *commonly* formed" (emphasis added) has only minimal, if any, relevance to this case, as the question here is not whether Mr. Hoskins and API formed a "typical" or "common" agency relationship. And any attempt by an expert witness to describe typical or common agency relationships treads too closely to the Court's duty to define agency for the jury. Moreover, any relevance that such general evidence might have is substantially outweighed by the risk of confusion to the jury, whose role will be to determine whether the evidence of the relationship between Mr. Hoskins and API meets the elements of an agency relationship to be set out in the Court's jury instructions; its role is not to determine whether that relationship had qualities matching the common or typical corporate agency relationships which Professor Gilson would describe. *See* Fed. R. Evid. 403. In order to avoid the usurping of the Court's duty to define agency for the jury, the admission of irrelevant evidence, and the creation of confusion among the jury, Professor Gilson will not be permitted to testify

about the characteristics, requirements, or corporate role of typical or common agency relationships.

### ii. Control

Further, the Government argues that Professor Gilson should not be permitted to "testify to the ultimate issue of whether Alstom Power Inc. 'controlled' the Tarahan project, the retention of third party agents, and/or the bribery scheme." (*Id.* at 9.) "Gilson's conclusion that API could not 'control or supervise Hoskins with respect to the retention of local agents,'" the Government argues, would improperly "direct[] the jury how to decide a central issue in this case." (*Id.*) The Government contends that even "if Gilson is permitted to aid the jury in deciphering organizational charts, there is no reason why it would be helpful for him to offer a broad opinion that Alstom Power Inc. could never have been in 'control' of the defendant based on those charts, while ignoring the highly factual agency inquiry, as well as the rest of the evidence." (Gov't Reply [Doc. # 541] at 3.)

As with Professor Gilson's proposed testimony regarding agency, the Government argues that his testimony regarding API's control would improperly "circumvent the Court's ruling on agency-related jury instructions" by "deliver[ing] the same instruction that the Court already rejected, only now phrased as a declarative statement of fact." (Mot. to Limit at 9; *see* Revised Notice at 3 ("no employee of Alstom Power Inc. had the authority to control or supervise Mr. Hoskins with respect to the retention of local agents").) And like agency, the Government argues that control is not a complicated or technical concept such that expert testimony about that concept would benefit the jury. (*Id.* at 10.)

In response, Defendant characterizes Professor Gilson's proposed testimony regarding control, stating that "[i]n other words, Professor Gilson will testify that, based on the documents

8

that he has reviewed, which include structure and organizational charts of Alstom and its subsidiaries and Alstom corporate policies produced by the government, there is no indication that, as a factual matter, API had the right to control Mr. Hoskins's work with respect to the retention of third-party consultants." (Def.'s Opp. at 6.) Defendant states that this testimony "will be based on [Professor Gilson's] specialized knowledge and experience as an expert on corporate governance" and "will aid the jury in understanding a complex topic, specifically, how the Alstom conglomerate was structured and Mr. Hoskins's position in that hierarchy." (*Id.*) Defendant argues that testimony by Professor Gilson which "offer[s] an opinion on the issue of control based on his interpretation of Alstom corporate records" does not "direct the jury how to decide a central issue" because "Alstom's corporate structure and Mr. Hoskins's duties and responsibilities as embodied in Alstom's corporate records are not determinative of the issue of control." (*Id.* at 6-7.) "Professor Gilson will testify that the documents he has reviewed do not indicate that any 'employee of Alstom Power Inc. had the right to control or supervise Mr. Hoskins with respect to the retention of local agents,'" Defendant explains, but the Government "will be free to argue that there are other facts in the record that undermine Professor Gilson's conclusions as to whether control existed." (*Id.*)

Because "control" is a critical element of the definition of agency which the Court will provide to the jury, permitting a witness to define control or opine as to what constitutes control in a corporate setting would infringe on the Court's role and is likely to confuse the jury. Thus Professor Gilson will not be permitted to offer testimony which purports to explain or define the concept of control. But a complicated corporate structure, especially of a multinational corporation comprised of many entities, is precisely the type of unfamiliar concept about which a jury is likely to benefit from an expert's fact-based conclusions. *See Russo*, 74 F.3d at 1395. Therefore, Professor Gilson will be permitted to testify about his *factual* conclusions regarding

9

Alstom's corporate structure, Mr. Hoskins's position within that structure, and the impact of that structure on API's supervisory responsibility or authority over Mr. Hoskins. He may not offer an opinion as to any *legal* conclusions which might usurp the function of the jury. *See Bilzerian*, 926 F.2d at 1294. In other words, Professor Gilson may not opine as to whether or not it was possible for API to exert control over Mr. Hoskins or for an agency relationship to exist between API and Mr. Hoskins. *See SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 268 (D. Conn. 2017) ("Within the Second Circuit, numerous courts have followed this distinction, allowing corporate governance expert testimony on factual conclusions that may embrace an ultimate issue but disallowing such testimony on ultimate legal conclusions."). It is the role of the jury to determine whether the evidence shows that such control was present and whether the relationship between Mr. Hoskins and API was that of an agent and principal.

### iii. Corporate Governance

Regarding Professor Gilson's proposed testimony "as to general principles of corporate governance and basic facts as to the formal organizational structure of various Alstom entities," the Government argues that such "general principles will serve only to confuse the jurors, and to divert them from the task at hand, namely evaluating the facts of *this* case." (*Id.* at 10-11.) "Given the accessibility of" the evidence upon which Professor Gilson's opinion on these general principles apparently rests, the Government argues that it "is unclear why expert assistance would help the jury to determine" Alstom's corporate structure. (*Id.* at 11.)

Defendant responds that "Professor Gilson's testimony regarding principles of corporate governance and Alstom's corporate structure will assist the jury in understanding and evaluating" whether "an agency relationship existed" between API and Mr. Hoskins. (Def.'s Opp. at 8.) "Specifically," Defendant continues, "testimony regarding corporate governance concepts such as

the relationship between a parent and a subsidiary, how corporations are set up and run and by whom, and how these concepts were applied by Alstom in general and with respect to Mr. Hoskins's role in particular will aid the jury in understanding the situation of the parties and their relations to one another." (*Id.* at 8-9 (internal quotation and alteration omitted).) Defendant also argues that contrary to the Government's suggestion, whether the documents on which Professor Gilson will base his conclusions are publicly available is not relevant to whether "most lay jurors would have any familiarity with" the intricacies of corporate structure or "how to read a complex corporate organizational chart." (*Id.* at 9.)

As discussed, Professor Gilson will be permitted to testify as to Alstom's corporate structure and Mr. Hoskins's position within that structure. And he will surely draw upon his knowledge of "corporate governance concepts such as the relationship between a parent and a subsidiary, [and] how corporations are set up and run and by whom" in reaching conclusions about Alstom and Mr. Hoskins. But it is "how these concepts were applied by Alstom in general and with respect to Mr. Hoskins's role in particular" that is most relevant here, and any discussion of general corporate principles which is untethered to this case would risk jury confusion. Thus Professor Gilson may testify regarding general principles of corporate structure, formation, or governance insofar as that testimony relates to this case, but he may not describe general concepts absent some relationship between those concepts and the entities, persons, or facts at issue here. *See* Fed. R. Evid. 401, 403; *Kleban*, 277 F.Supp.3d at 282 (Expert testimony regarding corporate governance is admissible "[p]rovided that the testimony is properly tailored to the case and based on the specialized knowledge and experience of an expert.").

B. Required Disclosures

11

Federal Rule of Criminal Procedure 16(b)(1)(C) requires that the "defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if . . . the defendant requests disclosure under subdivision (a)(1)(G) and the government complies," which it has in this case. (*See* Mot. to Limit at 11 n.4.) "This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C); Standing Order on Discovery § (B)(1)(b). The required summary must do more than list "general" or "extremely broad topics on which the expert[] might opine," and even a "more specific" summary is insufficient if it does not provide a true "summary" of the opinion and "identify the basis for that opinion." *United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017).

The Government argues that Defendant "has strategically declined to supply sufficient bases for his expert's opinions, and thus has not satisfied" his disclosure requirements. (Mot. to Limit at 13.) The Government concedes that the Revised Notice "does provide additional detail regarding Gilson's opinions" but argues that it "nonetheless falls far short of Rule 16's requirement to provide the bases for these opinions." (*Id.*)

The Government argues that the Revised Notice "simply identifies a list of defense exhibits, with no explanation of how or which are the basis for Gilson's specific opinions regarding Alstom's structure and the defendant's position within it." (*Id.* at 13-14.) "Many of these are long documents, and contain large amounts of seemingly irrelevant information," and so the Government argues that this "blanket, one paragraph, generalized statement, unhinged from any particular opinion, is clearly insufficient." (*Id.* at 14.)[1] Especially as to testimony which is "clearly

---

[1] The Government also argues that Defendant should be compelled to disclose "which of [Professor Gilson's] specific writings or experiences underlie each of his generic corporate

12

argument not located explicitly within any material," the Government asks the Court to "compel a much more fulsome disclosure that sets out the source of each of Gilson's opinions." (*Id.* at 14-15.)

In support of its position, the Government relies on *United States v. Ferguson*, No. 3:06CR137(CFD), 2007 WL 4539646 (D. Conn. Dec. 14, 2007). In *Ferguson*, the defendant listed as sources for his experts' opinions only "numerous broad-based sources for each expert and did not specify which sources the expert used to reach the different opinions identified." 2007 WL 4539646, at * 2. The court in that case directed the defendant to provide "information that links specific sources to each of the experts' opinions." *Id.* The Government argues that the Revised Notice is similarly deficient.

Defendant points out that the Government "apparently now concedes that Mr. Hoskins has provided sufficient information regarding Professor Gilson's qualifications as well as the substance of his proposed testimony," and he disputes the Government's contention that he "has not sufficiently identified the bases for Professor Gilson's opinions." (Def.'s Opp. at 11.) He argues that the Revised Notice, which has "both described by category the types of documents reviewed by Professor Gilson (almost all of which were provided by the government in discovery) and has identified specifically by exhibit number the specific documents upon which his testimony will primarily rely," provides a sufficiently detailed description of the bases for Professor Gilson's opinions. (*Id.* at 12.)

---

opinions." (Gov't Reply at 8.) But because Professor Gilson's testimony will be limited to an explanation of how corporate principles relate to Alstom, and he will not be permitted to testify regarding unrelated general concepts of corporate structure, the Court need not address that argument.

The Revised Notice plainly states that "Professor Gilson's testimony *regarding Alstom's corporate structure and Mr. Hoskins's position in that structure*"—the topics about which the Court will permit Professor Gilson to testify—"will be based on" several specifically identified documents, including "*inter alia*, 1) Alstom's annual reports filed on Form 20-F with the Securities & Exchange Commission for the years 2002, 2003 and 2004 (which are publicly available); and 2) documents included on the defendant's preliminary exhibit list submitted to [the Government] on September 18, 2019, including exhibits 1, 2, 3A, 5, 6, 7, 10, 11, 13, 14, 16, and 17A." (Revised Notice at 4 (emphasis added).) Thus the Government's argument that Defendant "refus[es] to connect any of [Professor Gilson's] sources with the list of opinions" is unconvincing, as the Revised Notice specifically links those listed sources with one category of Professor Gilson's proposed testimony.

The Government nonetheless argues that more is required of Mr. Hoskins: "As in *Ferguson*, the defendant should be compelled to identify which pages of his exhibits underlie each of Gilson's Alstom-related opinions." (Gov't Reply at 8.) But the *Ferguson* court imposed no such page requirement, and the Government cites no other authority for its suggestion that Mr. Hoskins is required to identify the specific pages of the listed documents which underlie each opinion. *See Ferguson*, 2007 WL 4539646, at *2 ("Absent information that links specific *sources* to each of the experts' opinions, the government does not have the type of information envisioned by Rule 16(b)(1)(C) with which to prepare for cross-examining the experts." (emphasis added)).

Therefore, as to the topics about which Professor Gilson may testify, Defendant has provided sufficient disclosures as to the bases of Professor Gilson's expert opinions.

### III. Conclusion

For the foregoing reasons, the Government's Motion to Limit Expert Testimony and Compel Compliance with the Standing Order [Doc. # 535] is GRANTED in part and DENIED in

14

part. Professor Gilson may offer factual conclusions, but he may not opine as to whether it was possible for the legal elements of an agent-principal relationship, including the element of control, to have existed between Mr. Hoskins and API. Professor Gilson may not define "agency," nor may he describe common characteristics of agency relationships. Similarly, Professor Gilson may not define "control," nor may he opine as to what is required to exert or demonstrate control. But Professor Gilson will be permitted to testify about the corporate structure and governance of Alstom-related entities, and about Mr. Hoskins's position within that structure. He may offer an opinion as to the impact of that structure, and Mr. Hoskins's place in it, on the supervision of and authority over Mr. Hoskins. Finally, Professor Gilson may explain to the jury general principles of corporate structure and governance in relation to the entities and persons at issue here, but he may not do so in a way that is not relevant to the facts of this case. Defendant need not provide any additional disclosures as to the bases of Professor Gilson's opinions.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 28th day of October 2019.