1          UNITED STATES DISTRICT COURT                    10:01
              DISTRICT OF CONNECTICUT
2

3   _____
                                  )
4   UNITED STATES OF AMERICA,     )
                                  ) No. 3:12-CR-238 (JBA)
5              Plaintiff,         )
                                  ) November 7, 2019
6   v.                            )
                                  ) 10:01 a.m.
7                                 )
                                  ) 141 Church Street
8                                 ) New Haven, Connecticut
    LAWRENCE HOSKINS,             )
9                                 )
               Defendant.         )
10  _____)

11

12

13                    JURY TRIAL

14                    VOLUME VIII

15

16

17  B E F O R E:

18       THE HONORABLE JANET BOND ARTERTON, U.S.D.J.
                        AND A JURY
19

20

21

22

23

24       Official Court Reporter:
         Melissa J. Cianciullo, RMR, CRR, CRC
25       (203) 606-1794

```
1   A P P E A R A N C E S:

2   For the Government:

3        DAVID E. NOVICK, AUSA
         U.S. Attorney's Office - NH
4        157 Church Street, 23rd Floor
         New Haven, CT 06510
5        (203) 821-3700
         E-mail: david.novick@usdoj.gov
6
         DANIEL S. KAHN, ESQ.
7        LORINDA LARYEA, ESQ.
         U.S. Department of Justice
8        Fraud Section, Criminal Division
         1400 New York Avenue, N.W.
9        Room 11308
         Washington, D.C., 20005
10       Email: daniel.kahn@usdoj.gov
                 lorinda.laryea@usdoj.gov
11
    For the Defendant:
12
         CHRISTOPHER J. MORVILLO, ESQ.
13       DANIEL SILVER, ESQ.
         BENJAMIN K. PEACOCK, ESQ.
14       Clifford Chance US LLP - NY
         New York, NY 10019-6131
15       (212) 878-8000
         E-mail: christopher.morvillo@cliffordchance.com
16               daniel.silver@cliffordchance.com
                 benjamin.peacock@cliffordchance.com
17
         BRIAN E. SPEARS, ESQ.
18       Spears Manning & Martini LLC
         2425 Post Road, Suite 203
19       Southport, CT 06890
         (203) 292-9766
20       E-mail: bspears@spearsmanning.com

21                                                            09:31

22                                                            09:31

23                                                            09:31

24

25
```

| | | |
|---|---|---|
| 1 | (Jury begins deliberating, 9:40 a.m.) | 10:05 |
| 2 | THE COURT:  So, Counsel, we have a note from | 10:01 |
| 3 | Juror Number 4 given to the courtroom deputy not | 10:01 |
| 4 | opened until it got to me identifying that Juror | 10:01 |
| 5 | Number 4's husband has been working as a fireman on a | 10:01 |
| 6 | job in upper New York City for Alstom.  And you've | 10:01 |
| 7 | read the rest with respect to why she couldn't have | 10:01 |
| 8 | notified us earlier. | 10:01 |
| 9 | If she had been a -- during jury selection | 10:01 |
| 10 | she had identified that her husband was on a job | 10:01 |
| 11 | working for Alstom, we likely would have excused her, | 10:02 |
| 12 | right? | 10:02 |
| 13 | MR. MORVILLO:  I think we likely would have | 10:02 |
| 14 | requested that, Judge. | 10:02 |
| 15 | THE COURT:  Yeah. | 10:02 |
| 16 | MR. NOVICK:  I'm not -- well, I think we | 10:02 |
| 17 | would have voir dired her, Your Honor.  Given that | 10:02 |
| 18 | he's doing -- as I understand, reading from the note, | 10:02 |
| 19 | a subcontractor on a job for Alstom.  Now, he doesn't | 10:02 |
| 20 | work for Alstom.  We would have presumably voir dired | 10:02 |
| 21 | her as to whether her husband's being a fireman on a | 10:02 |
| 22 | subcontracting job for Alstom would affect her | 10:02 |
| 23 | ability to be fair and impartial, and she would have | 10:02 |
| 24 | said what she says. | 10:02 |
| 25 | MR. SILVER:  I think it's "foreman."  Is | 10:02 |

1    that -- I think it's "foreman," not "fireman."            10:02

2        MR. NOVICK:  Oh, foreman.  Either way, being          10:02

3    a foreman on a subcontractor job, I don't think he's      10:02

4    employed by Alstom.                                        10:02

5        MR. KAHN:  And it's also -- I mean, if this           10:02

6    were a case against Alstom, certainly.  But this is a     10:03

7    different Alstom division that doesn't relate to the      10:03

8    subject matter we're dealing with.                        10:03

9        MS. LARYEA:  I was saying it's three weeks.           10:03

10   I don't think -- I don't know whether he started          10:03

11   working as a foreman on this job after jury selection     10:03

12   which was at this point almost a month ago.               10:03

13       MR. MORVILLO:  The note also calls into               10:03

14   question as to whether she was discussing the case        10:03

15   with her husband.                                          10:03

16       THE COURT:  Well, it certainly somehow came           10:03

17   to her attention that there was a particular interest     10:03

18   on her part as to who her husband was working for         10:03

19   even as a subcontractor.  It's not very -- I mean,        10:03

20   they haven't started deliberating, and we can bring       10:03

21   an alternate in without much adieu.  It seems to me       10:03

22   that that's not a bad idea.                               10:03

23       MR. NOVICK:  At risk, Your Honor, of                  10:04

24   respectfully disagreeing, I think that we could very      10:04

25   easily voir dire her.  We could ask her whether this      10:04

1    would at all impact her ability to be fair and                    10:04

2    impartial.  I do recognize this is the juror who's                10:04

3    been late, and I understand where the Court is coming             10:04

4    from.  But I think that what I see in the note here               10:04

5    to me does not necessarily suggest a conflict.  It is             10:04

6    a couple steps removed.  It does not have any bearing             10:04

7    on the facts of this case.  Alstom doesn't even --                10:04

8    isn't even in the power business anymore.  I think                10:05

9    this is transportation.  I can't fathom how this                  10:05

10   would impact her -- and the case isn't against                    10:05

11   Alstom, as my colleague indicated.  I can't fathom               10:05

12   how this would impact her otherwise stated view that             10:05

13   she can be fair and impartial from jury selection.               10:05

14        THE COURT:  She made that view clear.  I                    10:05

15   mean, she expressed that view or that the contrary                10:05

16   did not exist before she knew that Alstom was in some             10:05

17   way in her life.                                                  10:05

18        MR. NOVICK:  Absolutely.  So I don't think --               10:05

19        THE COURT:  And where we had plenty of jurors               10:05

20   to utilize at that point, it would not have been a                10:05

21   bad idea to excuse her lest the fact that Alstom,                 10:05

22   which may not be a party but is certainly prominently             10:06

23   displayed throughout this trial.                                  10:06

24        MR. NOVICK:  Certainly.  And I think that                   10:06

25   if -- certainly if she were doing a job that related             10:06

1    some way to this case.  But this is -- first of all,    10:06

2    she obviously didn't know it at the time so there's    10:06

3    no way we could have known it at the time.  So    10:06

4    there's no -- you know, it's hard to go back and    10:06

5    figure out what she would have said were we to have    10:06

6    inquired.    10:06

7        THE COURT:  I know that.  Let me also remind    10:06

8    you that I believe this is the juror who said I    10:06

9    cannot stay past Friday.  And I don't know whether    10:06

10   these jurors are going to be able to complete by    10:06

11   Friday.  If that comes up, we're then going to have    10:06

12   to bring in an alternate.    10:06

13       MR. NOVICK:  Well, my worry, Your Honor, is I    10:06

14   don't think she was the only one to have had an    10:06

15   issue.  Was there another juror who said they had to    10:06

16   go?    10:07

17       THE COURT:  I don't think so.    10:07

18       MR. NOVICK:  That was the only one.    10:07

19       THE COURT:  I don't want to have to start the    10:07

20   deliberations over with an alternate that will take    10:07

21   them back through two days of deliberation.    10:07

22       MR. NOVICK:  So my request, Your Honor, would    10:07

23   be to voir dire her and we can ask both questions    10:07

24   then.  You know, number one, in light of what you've    10:07

25   told us, can you reiterate that you can be fair and    10:07

1  impartial in this instance.  Is this going to affect                10:07

2  your evaluation of the case.  She certainly doesn't                10:07

3  indicate that in the note.  She's, I think, doing                  10:07

4  what she should do which is she found something out,               10:07

5  she's letting us know which I think she should do.                 10:07

6  And then we can also ask her whether -- if the                     10:07

7  deliberations were to go beyond this week, whether                 10:07

8  that continues to cause a problem.                                 10:07

9       MR. MORVILLO:  Your Honor, I think that what                  10:07

10  is clear from the note is that her husband is working             10:07

11  as a subcontractor for a company that has been                    10:07

12  prominently displayed throughout this and in a way is             10:08

13  portrayed as a victim of the conduct that Mr. Hoskins             10:08

14  is accused of.  And I think it's -- well, they've                 10:08

15  obviously resolved the case.                                      10:08

16       But there have been a number of witnesses who                10:08

17  have testified who were previously employed by                    10:08

18  Alstom, I think all of them except for Agent Coleman.             10:08

19  And there's, I think, just a risk here that she could             10:08

20  be swayed by the fact that her husband is now working             10:08

21  for this company, that they may have some more                    10:08

22  credibility or that they -- that her judgment could               10:08

23  be affected by the fact that her husband is working               10:08

24  on matters relating to Alstom in this case.                       10:08

25       MR. NOVICK:  I can't fathom, Your Honor, that                10:08

1    that's the case.                                              10:08

2         THE COURT:  Let's voir dire her.  If neither            10:08

3    side think there's a problem with pulling her out of         10:08

4    the deliberations, let me voir dire her and see,             10:09

5    particularly with regard to the scheduling.                  10:09

6         The other question is the jurors would like             10:09

7    to attend a naturalization.  I have one that I had           10:09

8    transferred off at 11 but I can recall if we let them        10:09

9    come to a naturalization.  Your views?  We'll just           10:09

10   put them back in the jury box.                               10:09

11        MR. NOVICK:  That's a first for me, Your                10:09

12   Honor.                                                       10:09

13        MR. MORVILLO:  Me as well.  How long is the             10:09

14   naturalization?                                              10:09

15        THE COURT:  About 40 minutes.                           10:09

16        MR. NOVICK:  So ...                                     10:09

17        MR. MORVILLO:  I certainly wouldn't want to             10:09

18   deprive them of an opportunity to watch Your Honor in        10:09

19   another setting.  I do think it's a bit of a                 10:09

20   distraction for them to do that at the outset of such        10:09

21   important work.  But ultimately it's 40 minutes, I           10:10

22   don't have an objection.                                     10:10

23        MR. NOVICK:  I suppose I don't have any                 10:10

24   objection certainly to the concept, Your Honor.  My          10:10

25   worry is we are at the -- we are on a Thursday before        10:10

1  a long weekend, and I think that -- and I don't know          10:10

2  what they voted on in terms of how much time they             10:10

3  plan on spending in court every day.                          10:10

4          THE COURT:  I don't know that they have              10:10

5  voted.                                                         10:10

6          MR. NOVICK:  But that's a -- relatively              10:10

7  speaking, a chunk of time.  But I defer entirely to           10:10

8  the Court on that.                                             10:10

9          MR. MORVILLO:  Is that something that they           10:10

10  all want to do or is it -- what time is the                  10:10

11  naturalization?  You said 11.                                10:10

12          THE COURT:  My view is they should stick to         10:10

13  the program at hand, and we can let them know when           10:10

14  the next naturalizations are.                                10:11

15          MR. MORVILLO:  That's a great idea.                 10:11

16          THE COURT:  And they can come back to court         10:11

17  and be welcome to attend that.                               10:11

18          MR. NOVICK:  That seems right to the                10:11

19  government, Your Honor.                                       10:11

20          MR. MORVILLO:  Hopefully they're all               10:11

21  naturalized.                                                  10:11

22          THE COURT:  We're going to have one more           10:11

23  problem potentially Friday afternoon.  I haven't             10:11

24  heard from the juror.                                         10:11

25          MR. MORVILLO:  With prayers?                        10:11

1    THE COURT:  Uh-huh.  I haven't heard from him                 10:11
2  with respect to whether he thinks that this work                10:11
3  would be sufficiently important that he will forego             10:11
4  prayers, but I'm waiting for that communication.                10:11
5    MR. NOVICK:  Understood.                                      10:11
6    THE COURT:  All right.  We'll call in Juror                   10:11
7  Number 4.  We will tell the jurors that really we'd             10:11
8  prefer that they keep going and come to another                 10:11
9  naturalization another time.  We will give them the            10:11
10  schedule.                                                       10:12
11    And we will see whether Juror Number 4 would                 10:12
12  be able to stay with us if this deliberation runs              10:12
13  into next week.                                                 10:12
14    MR. NOVICK:  I think that's reasonable, Your                 10:12
15  Honor.  I would say that if she says it's going to be          10:12
16  difficult, I think we then wait and see whether                10:12
17  deliberations do run until next week.                          10:12
18    THE COURT:  No.  I think if it's going to be                 10:12
19  difficult and she can't do it, I'm going to excuse            10:12
20  her so I can get an alternate in at the beginning and          10:12
21  not have to redo all the deliberations with that               10:12
22  alternate.                                                      10:12
23    MR. MORVILLO:  I also, Your Honor, do think                  10:12
24  it's important to re-emphasize to this juror that she         10:12
25  shouldn't be talking about the case outside                    10:12

1  deliberations.                                          10:12

2          MR. NOVICK:  I don't think there's any          10:12

3  indication from this note that that's what she's        10:12

4  doing.  I think she had a conversation with her         10:12

5  husband.                                                10:12

6          THE COURT:  Let's hear from her.                10:12

7          (Proceedings moved to Courtroom 2.)            10:12

8          (Juror 4 entered proceedings, 10:17 a.m.)      10:17

9          THE COURT:  All right.  Juror Number 4, good    10:17

10  morning.                                                10:17

11          JUROR 4:  Good morning.                         10:17

12          THE COURT:  I've received your note which we    10:17

13  will mark as Court Exhibit A reflecting that your       10:17

14  husband is a subcontractor on a job for Alstom.        10:17

15          JUROR 4:  Correct.                              10:17

16          THE COURT:  That you just learned this and      10:17

17  you properly brought this to the Court's attention.     10:17

18          So my question to you is:  How did this fact    10:18

19  that your husband was a subcontractor for Alstom come   10:18

20  to your attention?                                      10:18

21          JUROR 4:  Well, he's been working there as      10:18

22  the foreman in Finger Lakes, New York.  And he works    10:18

23  at like many different plants and places, so I never    10:18

24  quite like asked him what plant or what company he      10:18

25  was doing work for.                                     10:18

1    So last night -- he's tentative to return     10:18

2    today -- he had mentioned something about the company     10:18

3    being called Alstom.  And he said like they have     10:18

4    places everywhere and in Paris.  And it like took me     10:18

5    a second.  This was over FaceTime -- not FaceTime,     10:18

6    over just regular phone call.  So then I questioned     10:18

7    him a few times and, I had asked him like to spell it     10:18

8    and I asked him what the logo looked like.  And then     10:19

9    I tried to like just stop from there because I didn't     10:19

10    want to like go to further.  And he's pretty vague in     10:19

11    response anyways when it comes to work stuff,     10:19

12    especially when he's on the road.  So he didn't     10:19

13    question why I didn't keep asking him about it.     10:19

14    But I would have told you weeks ago but,     10:19

15    again, I just never asked him.  I knew he was in New     10:19

16    York working and ...     10:19

17    THE COURT:  So let me ask you the question.     10:19

18    Obviously when he said "Alstom," this, let's say,     10:19

19    caught your attention.     10:19

20    JUROR 4:  Yes.     10:19

21    THE COURT:  Do you think there is a risk of     10:19

22    any sort that knowing that your husband was working     10:19

23    for Alstom, API, albeit as a foreman on the     10:19

24    subcontracting job, is there any chance that that     10:20

25    is -- could influence your way of thinking about the     10:20

| | |
|---|---|
| 1 | witnesses and the documents and the testimony in this | 10:20 |
| 2 | case which obviously involves Alstom? | 10:20 |
| 3 | JUROR 4:  I mean, I don't think so.  But I | 10:20 |
| 4 | had just found out last night.  And, I mean, he's | 10:20 |
| 5 | kind of on the road.  I have my son.  I've been kind | 10:20 |
| 6 | of busy.  I guess no.  I'm too busy to think about it | 10:20 |
| 7 | outside of like the courtroom anyways, and we're | 10:20 |
| 8 | not -- I'm not going to ask him about his work and | 10:20 |
| 9 | what he's done until after the case.  So it doesn't | 10:20 |
| 10 | affect it, I guess, if that's an okay answer. | 10:20 |
| 11 | THE COURT:  So do you think that in any way | 10:20 |
| 12 | your view or your -- how you assess the credibility | 10:21 |
| 13 | of witnesses or the inferences that you might put or | 10:21 |
| 14 | draw from the documents, the e-mails and so forth | 10:21 |
| 15 | that are in evidence could be influenced by the fact | 10:21 |
| 16 | that -- your husband's relationship with Alstom? | 10:21 |
| 17 | JUROR 4:  I don't think so.  They're kind of | 10:21 |
| 18 | two different atmospheres; and what we're on trial | 10:21 |
| 19 | for and what he's doing, they're not the same playing | 10:21 |
| 20 | field.  So I don't think so. | 10:21 |
| 21 | THE COURT:  When you came in this morning, | 10:21 |
| 22 | did you mention to your fellow jurors in any way that | 10:21 |
| 23 | you just found out your husband had been doing work | 10:21 |
| 24 | in conjunction with Alstom? | 10:22 |
| 25 | JUROR 4:  I mentioned it to the person next | 10:22 |

1    to me, yeah.  When the note came, I --                10:22

2        THE COURT:  Do you recall what you said?          10:22

3        JUROR 4:  There was like the note and -- that     10:22

4    I had to give you.  And it was kind of like when      10:22

5    you're in school and you give a note you were taking  10:22

6    to the teacher, you got caught out.  And I just       10:22

7    wanted to say like it's not about anyone or anything  10:22

8    besides myself.  And I was speaking to one of the     10:22

9    jurors last night about how my husband is doing work, 10:22

10   and I said what a small world it is.  That's what     10:22

11   that note was about.                                  10:22

12       THE COURT:  So you knew yesterday that your       10:22

13   husband was working for Alstom?                       10:22

14       JUROR 4:  I knew he was in New York working       10:22

15   at a company that engineered and fixed trains.  I did 10:22

16   not know that it was Alstom until last night on the   10:22

17   phone with him, he had mentioned it, like the name of 10:22

18   the company.  Like he was going to sign out a permit  10:23

19   or something at Alstom and the place that he's        10:23

20   working at.  So, no, I didn't know it was that        10:23

21   company until last night.                             10:23

22       THE COURT:  So perhaps I misunderstood.  I        10:23

23   thought you said last night as you all were leaving,  10:23

24   you said something to one of the other jurors about   10:23

25   small world.                                          10:23

1     JUROR 4:  Oh, no, that was kind of this    10:23

2  morning.  But last night he had asked -- because with    10:23

3  the time and everything, I was stressed out because    10:23

4  my husband's in New York working.  He had asked --    10:23

5  and we kind of went over time and with childcare and    10:23

6  stuff.  And I said, you know, I'm kind of like a    10:23

7  single mom this week.  He asked what my husband was    10:23

8  doing.  I said he's working at a plant with train --    10:23

9  like taking care of trains.  I don't know.  I'm    10:23

10  trying to like recall it, but I'm kind of nervous    10:23

11  right now so I can't.    10:23

12     THE COURT:  All right.  Let me move to a    10:23

13  different subject.    10:24

14     When you were at jury selection, I have a    10:24

15  recollection that you described that it would be --    10:24

16  that if deliberations continue past this Friday, that    10:24

17  that would create difficulties for you.    10:24

18     JUROR 4:  That's correct.    10:24

19     THE COURT:  There is a possibility that that    10:24

20  will happen.  What is -- and that you would be    10:24

21  required to come back Tuesday and perhaps Wednesday    10:24

22  if deliberations haven't been completed by Friday.    10:24

23  What happens?    10:24

24     JUROR 4:  So I'm heading a United Way    10:24

25  campaign on Tuesday, and that's when I hand out    10:24

1  pledge forms and I receive pledge forms, and it's          10:24

2  like a luncheon that I'm hosting at my job.  I'm the       10:24

3  campaign coordinator, so I have to be there               10:24

4  preferably Monday too so I can set up.                     10:25

5          THE COURT:  Monday is a holiday.                   10:25

6          JUROR 4:  Well, not at my job.  We don't           10:25

7  consider Veteran's Day.                                    10:25

8          THE COURT:  It's a court holiday.                  10:25

9          JUROR 4:  Okay.  Well, that's cool.  But,          10:25

10  yeah, Tuesday I wouldn't be able to come.  And I had      10:25

11  talked about that prior too.  But that wasn't my MO       10:25

12  or whatever for mentioning my husband works at            10:25

13  Alstom.                                                    10:25

14          THE COURT:  I understand that.  I'm just          10:25

15  recalling the two things.                                  10:25

16          Counsel, any questions for Juror Number 4?        10:25

17          MR. NOVICK:  No, Your Honor.                      10:25

18          MR. MORVILLO:  No, Your Honor.                    10:25

19          THE COURT:  Would you wait just one moment.       10:25

20          Counsel, may I see you.                           10:25

21          (Sidebar commenced at 10:25 a.m.)                 10:25

22          THE COURT:  All right.  Counsel, although         10:26

23  there is no apparent cause reason to excuse her, the      10:26

24  fact that she cannot come in on Tuesday is a concern.     10:26

25  I do not know whether this jury is going to complete      10:26

1    their work by the end of Friday.  I do not -- knowing    10:26

2    that she cannot come in on Tuesday, I do not want to    10:26

3    have to start all over on Tuesday with a new juror    10:26

4    and thereby extend their obligations by at least an    10:26

5    equal amount of time into the next week.    10:26

6         Is there any opposition to my excusing her    10:26

7    and bringing in an alternate at this time?    10:26

8         MR. NOVICK:  Can I just have one moment to    10:26

9    talk to my colleagues, Your Honor?    10:26

10         My only request, Your Honor, is I don't know    10:26

11   that this juror understands that the consequence of    10:27

12   her saying now that she can't come in on Tuesday is    10:27

13   that all of the work she's been doing for the last    10:27

14   two weeks, she's just going to leave.  I don't    10:28

15   know -- I think United Way is a great organization,    10:28

16   does great work.  I don't know that there's not    10:28

17   somebody who can fill in for her.  And if she    10:28

18   decides -- she did tell us about this.  If she    10:28

19   decides that that's what she prefer to do, it's fine    10:28

20   with the government.  I don't have any -- I would not    10:28

21   object to excusing her.  If she understands the    10:28

22   consequence of saying this now and so we're going to    10:28

23   excuse her, then she may change her mind.  That is my    10:28

24   thought.    10:28

25         MR. MORVILLO:  We don't have any objection to    10:28

1    her being excused, Your Honor, but I also don't                  10:28

2    disagree with what Mr. Novick said.                              10:28

3          THE COURT:  Let me ask her to make that call.             10:28

4    Okay?                                                            10:28

5          MR. NOVICK:  Thank you.                                   10:28

6          (Sidebar concluded, 10:28 a.m.)                           10:28

7          THE COURT:  All right.  Juror Number 4,                   10:28

8    Ms. Juror Number 4, if deliberations in this case in            10:28

9    fact continue past the end of this week and all the             10:29

10   jurors have to come back on Tuesday, is your                    10:29

11   obligation at work such that you just couldn't come             10:29

12   back or it would be very problematic for you to come            10:29

13   back?  Or in anticipation that you might be needed on           10:29

14   Tuesday and thereafter, could you and do you wish to            10:29

15   stay as a juror in this case?                                   10:29

16         JUROR 4:  I'm going to say it would be                    10:29

17   problematic at the time that I'm doing the campaign             10:29

18   and when the donations are due and such.  I'm already           10:30

19   cutting it pretty short.  I've had to do like                   10:30

20   reschedules not for the campaign itself but just, you          10:30

21   know, between jury duty and other stuff at work                 10:30

22   scheduling-wise.  I have to do it Tuesday.  It's                10:30

23   going to be nearly impossible to have someone else do          10:30

24   it.  This is kind of my job role and function.  Yeah,          10:30

25   it's going to be problematic.                                   10:30

1        THE COURT:  So my question is:  Given that          10:30

2   potential and knowing that potential now, are you        10:30

3   asking to be excused?  Recognizing that all of this      10:30

4   time that you've spent listening to the evidence in      10:30

5   this case and the law will not be able to be put to      10:30

6   use?                                                     10:30

7        JUROR 4:  Unfortunately, yes.  I've already         10:30

8   made a lot of scheduling conflicts or had a lot of       10:30

9   schedule conflicts and rescheduled.  And I was           10:31

10  told -- I asked twice about making sure the case         10:31

11  would be done by Friday and I was told twice that it     10:31

12  was on track.  So unfortunately, I think, yes, I'd       10:31

13  request kindly to withdraw myself, unfortunately.        10:31

14       THE COURT:  So when we say is case is on            10:31

15  track, we mean that the evidence will be completed       10:31

16  timely.  We have no way to anticipate or predict how     10:31

17  long it will take jurors to do the conscientious         10:31

18  deliberative job that they have ahead of them.           10:31

19       JUROR 4:  I was not aware of that.                  10:31

20       THE COURT:  I'm sorry.  Which were you              10:31

21  unaware of?  Oh, that when I said that -- although       10:31

22  there's no reason you would have keyed on this, I        10:31

23  said evidence would be completed before by Friday.       10:31

24       JUROR 4:  Okay.                                     10:32

25       THE COURT:  And that does not mean and we do        10:32

1    not want to hurry in any way the deliberative phase          10:32

2    of the case which is as critically as important as           10:32

3    anything.                                                     10:32

4             JUROR 4:  Okay.  Yeah.  I'm sorry.  I               10:32

5    misunderstood the whole process apparently.                  10:32

6             THE COURT:  Well, that is perhaps                    10:32

7    understandable.  It is not a way that I can be                10:32

8    particularly clear.  And, in fact, we do have these          10:32

9    two days.  I just don't know whether or not, given           10:32

10   the fact that there are twelve counts to be                  10:32

11   considered, et cetera, that the jurors will be able          10:32

12   to complete that work by Friday.  If they are not --         10:32

13   if you all are not able to complete it by the end of         10:32

14   Friday and you cannot return on Tuesday, I then need         10:32

15   to bring one of our alternates in to replace you.  If        10:33

16   I bring one of the alternates in to replace you, the         10:33

17   jurors then need to begin the deliberation anew with         10:33

18   that new alternate.  And so that's the consequence           10:33

19   from the case side of things.                                10:33

20             You are welcome to stay.  You are welcome to       10:33

21   do your work, do your work diligently but not do your        10:33

22   work with your fellow jurors feeling the pressure to         10:33

23   get it done by Friday.  That's my concern is that            10:33

24   this is not something that we rush.                          10:33

25             Do you think you would feel pressured to in        10:34

1  any way shortcut your own thought process or to          10:34
2  encourage others to speed up theirs so that you could    10:34
3  be finished by Friday?                                    10:34
4        JUROR 4:  Possibly.  I just am not going to         10:34
5  say I would rush it or influence others.  But I do        10:34
6  know I would ultimately have to excuse myself after       10:34
7  Friday which would then start deliberations all over      10:34
8  again for the alternate.  So it's kind of not only        10:34
9  going to like lose time for myself but kind of            10:34
10  disrespect the other fellow jurors knowing if we         10:34
11  didn't get it done, I would have to make them do it      10:35
12  all over again on my behalf.  So I just -- I'm sorry.    10:35
13  I can't -- this is very stressful, this like one on      10:35
14  one.  Did I answer that okay?                            10:35
15        THE COURT:  Yes, you did.                          10:35
16        JUROR 4:  Sorry.                                   10:35
17        THE COURT:  Any further questions for Juror        10:35
18  Number 4?                                                10:35
19        MR. NOVICK:  No, Your Honor.                       10:35
20        MR. MORVILLO:  No, Your Honor.                     10:35
21        THE COURT:  All right.  I think it's best at       10:35
22  this point, as you say, to accept your request to be    10:35
23  excused so as not to put any undue or even any          10:35
24  subconscious pressure on shortcutting this process.     10:35
25        And so I'm going to excuse you as a juror in      10:35

1    recognition of your concern that if you don't finish                10:35

2    by Friday, you, as you say, disrespect your fellow                  10:36

3    jurors by making them redo it.                                      10:36

4         Does that sound satisfactory to you?                           10:36

5         JUROR 4:  Yes.  Thank you, Your Honor.  I                      10:36

6    appreciate it.                                                      10:36

7         THE COURT:  All right.  Well, thank you very                   10:36

8    much for your service.  And if you would leave your                 10:36

9    notebooks and so forth in the jury room, you are                    10:36

10   excused.                                                            10:36

11        MR. MORVILLO:  Your Honor, may we approach                     10:37

12   very briefly?                                                       10:37

13        THE COURT:  Yes.  May I excuse Juror                           10:37

14   Number 4?                                                           10:37

15        MR. MORVILLO:  I just want to have a quick                     10:37

16   chat, if we could.                                                  10:37

17        THE COURT:  All right.                                         10:37

18        (Sidebar commenced, 10:37 a.m.)                               10:37

19        MR. MORVILLO:  It's a rather unusual                           10:37

20   circumstance for a juror to be present at the                       10:37

21   beginning of deliberations and then to be excused.                  10:37

22   And given that she says she spoke to one of the other              10:37

23   jurors about the relationship on the note that she                  10:37

24   sent to you, I'm wondering whether it makes sense to                10:37

25   send some message back to the jury that they                        10:37

1    shouldn't read anything into the fact that this juror    10:37

2    is excused or to direct this juror not to discuss it    10:37

3    any further with the jurors in the backroom.  It's    10:38

4    just a rather unusual event, and I'm wondering if the    10:38

5    other jurors will start to speculate about what    10:38

6    happened with her and given that she said to one of    10:38

7    the other jurors that her husband was associated with    10:38

8    Alstom, whether that juror will start to speculate    10:38

9    that there's something wrong with that.    10:38

10          THE COURT:  I'm not sure she said that --    10:38

11          MR. NOVICK:  I don't think she did.    10:38

12          THE COURT:  -- her husband was associated    10:38

13    with Alstom.    10:38

14          MR. MORVILLO:  I thought that's what she had    10:38

15    indicated this morning.    10:38

16          MR. NOVICK:  She said last night on her way    10:38

17    out she was having a conversation, she was stressed    10:38

18    about her childcare issues and mentioned that he was    10:38

19    working in New York on a job.    10:38

20          THE COURT:  And today she said this note    10:38

21    doesn't have anything to do with anybody else here.    10:38

22          MR. MORVILLO:  I thought what she said, and I    10:38

23    may have misheard her, is she described to the juror    10:38

24    what she learned last night from her husband.    10:38

25          MS. LARYEA:  No.  I think she just said it's    10:38

1  a small world, it's not nothing to do with anyone        10:39

2  here.        10:39

3       THE COURT:  I will clarify.  I will also tell        10:39

4  the other jurors that she's unable to continue her        10:39

5  service --        10:39

6       MR. MORVILLO:  Thank you.        10:39

7       THE COURT:  -- for personal reasons, and        10:39

8  we'll bring Number 8 in to take over and they'll just        10:39

9  begin anew.        10:39

10       Is there any objection to the course that I        10:39

11  have chosen here?        10:39

12       MR. NOVICK:  Not here.        10:39

13       MR. MORVILLO:  Not from the defense.        10:39

14       (Sidebar concluded, 10:39 a.m.)        10:39

15       THE COURT:  Can I clarify one thing?  When        10:39

16  you said that you discussed with at least one of the        10:40

17  other jurors this morning about the note that you        10:40

18  were going to give to the Court, refresh my        10:40

19  recollection on whether you told that juror that your        10:40

20  husband was working for or at an Alstom plant.        10:40

21       JUROR 4:  It would be at because --        10:40

22       THE COURT:  But you did mention that the        10:40

23  association between your husband and Alstom was the        10:40

24  subject matter of your note?        10:40

25       JUROR 4:  Correct.  Well, actually, I don't        10:41

1    know if I like mentioned like word for word what was          10:41
2    on my note.  More so as --                                    10:41
3          THE COURT:  What I want to know is whether              10:41
4    the other jurors are aware that Alstom, whatever you          10:41
5    said about it, was the basis of your note, whether           10:41
6    the name "Alstom" was shared.                                 10:41
7          JUROR 4:  I'm going to say yes.                         10:41
8          THE COURT:  Okay.  I need to address that              10:41
9    with them.  All right.                                        10:41
10         I will excuse you at your request, and you             10:41
11   may go and you may gather up your things.                     10:41
12         And I will have the jurors brought in, and I           10:41
13   will have Juror Number -- Alternate Number 8 also             10:41
14   brought in.  Thank you.                                       10:41
15         JUROR 4:  Thank you, Your Honor.                       10:41
16         (Pause from 10:41 a.m. to 10:44 a.m.)                   10:43
17         MR. NOVICK:  Your Honor's proposed course has          10:44
18   not changed.  You're going ask the jurors or inform          10:44
19   the jurors that the juror has been excused for               10:44
20   personal reasons and not to speculate or let any of          10:44
21   that influence their deliberations but not                    10:44
22   specifically voir dire anybody about what they heard         10:44
23   or Alstom or anything like that, correct?                     10:44
24         THE COURT:  Yes.                                       10:44
25         MR. MORVILLO:  We agree with that, Your               10:44

1    Honor.                                                      10:44

2         THE COURT:  Counsel, if you wish to be               10:45

3    seated, you may.                                            10:45

4         Are you bringing in also Number 8?                    10:45

5         THE CLERK:  Yes.                                       10:45

6         THE COURT:  Thank you.                                 10:45

7         (Jury entered the proceedings, 10:46 a.m.)            10:46

8         THE COURT:  Good morning, ladies and                  10:46

9    gentlemen.  Nice to see you again.  Please be seated.      10:46

10        I want to briefly tell you that personal              10:46

11   matters have arisen for Juror Number 4 and she has         10:47

12   asked to be excused.  Her reasons are fine and I have      10:47

13   excused her.                                                10:47

14        And thus Juror Number 8 comes back and joins          10:47

15   you.  That means, as you will recall, that you'll          10:47

16   need to start your deliberations over.  I don't know       10:47

17   how far you had already gotten.  But just start over.      10:47

18   Include him.  He is now one of your regular jurors.        10:47

19   And don't speculate about Juror Number 4's personal        10:47

20   reasons for requesting to be excused from the jury.        10:47

21   Okay?                                                       10:47

22        And so if you would kindly carry on with your         10:47

23   deliberations.                                              10:47

24        You have asked or some of you have asked if           10:47

25   you could attend a naturalization which I think is a       10:47

1   lovely sentiment.  I don't think you should do this          10:47

2   now.  I think you should commit your work to getting          10:48

3   finished on this.  I have the dates of other                 10:48

4   naturalizations that we will be having, and we would         10:48

5   welcome you and if you let me know you're coming,            10:48

6   I'll make sure you get special seating.  November 21,        10:48

7   December 12 and December 27 at 9:30, 11:30 or 1:30.          10:48

8   And we would love to have you, but I think it would          10:48

9   be better to have you re -- orient your new juror and        10:48

10  carry on with your work.                                     10:48

11          All right?  Thank you very much.  You are            10:48

12  excused.                                                     10:48

13          (Jury exited the proceedings, 10:48 a.m.)            10:48

14          THE COURT:  All right.  Counsel, is there            10:49

15  anything further?                                            10:49

16          MR. NOVICK:  No, Your Honor.                         10:49

17          MR. MORVILLO:  No, Your Honor.                       10:49

18          THE COURT:  Then we are in recess.                   10:49

19          (Recess taken, 10:49 a.m. to 12:07 p.m.)             10:49

20          THE COURT:  All right, Counsel.  You have a          12:07

21  copy of our latest jury note which will be marked as         12:07

22  Court B.  And you will see that we have a very               12:07

23  careful jury who advises that the electronic version         12:07

24  of Government's 4 is not a hard copy of Exhibit 4.           12:07

25  And their query is can they base their deliberations         12:08

1    using the paper copy, which of course the answer is                          12:08

2    yes since those exhibits are the exhibits.                                   12:08

3            But what happened here?                                              12:08

4            MR. NOVICK:  Your Honor --                                           12:08

5            THE COURT:  You all may be seated.                                   12:08

6            MR. NOVICK:  So -- I will stand.  So the -- I                        12:08

7    think what I would ask is if we can take back the                            12:08

8    paper and make sure that that is accurate.  What                             12:08

9    happened here, Your Honor, is that per -- well, two                          12:08

10   things happened here.  One is I think from the time                          12:08

11   we initially submitted exhibits until present, there                         12:08

12   had been a renumbering of 1 through 7, the charts.                           12:08

13   So that may be what's in play.                                               12:09

14           And then also per discussion with the Court,                         12:09

15   the summary charts were edited slightly to reflect                           12:09

16   the change in the indictment paragraph numbers.                              12:09

17           But what appears to me to be happening here                          12:09

18   is that what is in JERS as Exhibit 4 is actually                             12:09

19   Exhibit 5 as it was admitted during the course of the                        12:09

20   trial, because Exhibit 1 should have been the summary                        12:09

21   chart of Indonesian officials.                                               12:09

22           Exhibit 4 that I was handed just now as a                            12:09

23   printout from JERS I believe to be -- which is a                             12:09

24   summary of Alstom Power, Inc. payments for PT                                12:09

25   Gajendra, I believe should have been admitted or was                         12:09

1    admitted as Exhibit 5.  They are the same documents                12:09

2    with the same information.                                         12:09

3         THE COURT:  So does that suggest that there's                 12:09

4    no Exhibit 5 in JERS?                                              12:10

5         MR. NOVICK:  What it appears is they're the                   12:10

6    same, at least based on the note that I'm reading                  12:10

7    here.                                                              12:10

8         THE COURT:  I'm sorry.  What's the same?                      12:10

9         MR. NOVICK:  That what -- right now -- yes,                   12:10

10   Your Honor.  What I would surmise from this -- well,               12:10

11   I haven't seen -- did we get a copy of what is 5?                  12:10

12        MS. LARYEA:  No.  That's 4.  They're both 4.                  12:10

13        THE COURT:  Do you want mine?                                 12:10

14        MR. NOVICK:  Yes, Your Honor.                                 12:10

15        So what Your Honor has is correct, the paper                  12:10

16   copy.  What I'm looking at right now is the printout               12:10

17   from JERS.                                                         12:10

18        THE COURT:  That is Exhibit No. 5.                            12:10

19        MR. NOVICK:  This Exhibit 5 is accurate, has                  12:10

20   the correct -- the edited --                                       12:10

21        THE COURT:  My question is:  Is there a JERS                  12:10

22   Number 4 that's correct?                                          12:11

23        MR. NOVICK:  So what I saw from JERS Number 4                 12:11

24   which I think is what the clerk just sent to me --                 12:11

25        THE COURT:  Yes.                                             12:11

| | |
|---|---|
| 1 | MR. NOVICK:  -- is not accurate.  Four is the | 12:11 |
| 2 | summary of Pacific Resources. | 12:11 |
| 3 | THE COURT:  Right.  It's 5.  It's what paper | 12:11 |
| 4 | 5 is. | 12:11 |
| 5 | MR. NOVICK:  Correct, Your Honor. | 12:11 |
| 6 | THE COURT:  So my question is:  What are they | 12:11 |
| 7 | missing? | 12:11 |
| 8 | MR. NOVICK:  I think they are missing 4, the | 12:11 |
| 9 | actual 4. | 12:11 |
| 10 | THE CLERK:  Attorney Novick, may the Judge | 12:12 |
| 11 | have those.  Thank you. | 12:12 |
| 12 | (Pause, 12:12 p.m. to 12:17 p.m.) | 12:17 |
| 13 | THE COURT:  So if I were to write them a note | 12:17 |
| 14 | telling them that they should disregard electronic 4, | 12:17 |
| 15 | that paper 4 is Exhibit 4 and attach to that note | 12:17 |
| 16 | Government Exhibit 4 and -- | 12:17 |
| 17 | MR. NOVICK:  Can we edit -- I mean, not edit. | 12:18 |
| 18 | Can we fix the issue in JERS so that -- | 12:18 |
| 19 | THE COURT:  I'm not sure.  We're going to | 12:18 |
| 20 | find out.  If we were to fix it, we would be taking | 12:18 |
| 21 | JERS current 4 out of it and we would be putting | 12:18 |
| 22 | Government 4 in, correct? | 12:18 |
| 23 | MR. NOVICK:  Yes, Your Honor.  Is it | 12:18 |
| 24 | possible, only because I think I speak for both | 12:18 |
| 25 | sides, given this, if we can just look at what's in | 12:18 |

| | |
|---|---|
| 1 | JERS for 1 through 7 to make sure? | 12:18 |
| 2 | THE COURT:  How would you do that? | 12:18 |
| 3 | MR. NOVICK:  Is the only way to look at JERS | 12:18 |
| 4 | in there or -- | 12:18 |
| 5 | THE COURT:  Oh, you can look at it in the | 12:18 |
| 6 | computer here. | 12:18 |
| 7 | MR. NOVICK:  I have here the e-mail that we | 12:19 |
| 8 | sent with the updated version so I can see, I | 12:19 |
| 9 | believe, what they should be and just make sure that | 12:19 |
| 10 | 1 through 7, aside from Number 4, everything else is | 12:19 |
| 11 | accurate.  And then -- | 12:19 |
| 12 | THE COURT:  And then the larger question is | 12:19 |
| 13 | how do we substitute an electronic 4 that's accurate | 12:19 |
| 14 | and corresponds to the paper 4? | 12:19 |
| 15 | MR. NOVICK:  Right.  And then I think the | 12:19 |
| 16 | answer is -- I guess my question is can we do that at | 12:19 |
| 17 | this point?  I mean, I think we should if we can | 12:19 |
| 18 | technologically so that they can put it on the board. | 12:19 |
| 19 | THE COURT:  So what did you want to check? | 12:19 |
| 20 | MR. NOVICK:  So if we can come up and take a | 12:19 |
| 21 | look at the screen to make sure 1 through 7, other | 12:19 |
| 22 | than Number 4, are all accurate, I think that would | 12:19 |
| 23 | clarify that this is the only issue. | 12:20 |
| 24 | THE COURT:  We're going to print you 1 | 12:20 |
| 25 | through 7. | 12:20 |

| | | |
|---|---|---|
| 1 | MR. NOVICK:  Okay. | 12:20 |
| 2 | (Pause, 12:20 p.m. to 12:27 p.m.) | 12:27 |
| 3 | MR. NOVICK:  All right.  Three of them are | 12:27 |
| 4 | wrong, Your Honor. | 12:27 |
| 5 | THE COURT:  Right. | 12:27 |
| 6 | MR. NOVICK:  Number one is wrong.  When I say | 12:27 |
| 7 | "wrong," does not match the paper version.  Number 4 | 12:27 |
| 8 | obviously is wrong and number 7 is wrong. | 12:28 |
| 9 | The versions in the government's e-mail -- | 12:28 |
| 10 | THE COURT:  Well, let's get them responded | 12:28 |
| 11 | to.  Let's tell them to use paper 1 through 7 for | 12:28 |
| 12 | now.  And if we can reload JERS for 1 through 7, they | 12:28 |
| 13 | can use that. | 12:28 |
| 14 | MR. NOVICK:  Understood, Your Honor. | 12:28 |
| 15 | MR. MORVILLO:  That's fine. | 12:28 |
| 16 | THE COURT:  I will write that on a note.  We | 12:28 |
| 17 | don't need to have them back here. | 12:28 |
| 18 | MR. NOVICK:  Your Honor, one other thought. | 12:30 |
| 19 | Although we are reasonably certain that the paper is | 12:30 |
| 20 | right, is there any wisdom in looking at it, making | 12:30 |
| 21 | sure that it's right before we tell them to rely on | 12:31 |
| 22 | it? | 12:31 |
| 23 | THE COURT:  Well, it's what you produced | 12:31 |
| 24 | as 5. | 12:31 |
| 25 | MR. NOVICK:  Your binder, Your Honor, is | 12:31 |

| | | |
|---|---|---|
| 1 | correct.  So if it matches that, it's correct.  I | 12:31 |
| 2 | just -- I am assuming it's correct.  I just -- | 12:31 |
| 3 | THE COURT:  When you say "it," what do you | 12:31 |
| 4 | mean? | 12:31 |
| 5 | MR. NOVICK:  The paper, the jury's paper. | 12:31 |
| 6 | THE COURT:  The "it" paper of 4 or all of | 12:31 |
| 7 | them? | 12:31 |
| 8 | MR. NOVICK:  One through 7. | 12:31 |
| 9 | THE COURT:  I will give them attached to this | 12:31 |
| 10 | note 1 through 7.  Then we know that what they have | 12:31 |
| 11 | is correct. | 12:31 |
| 12 | MR. NOVICK:  May I approach, Your Honor, just | 12:32 |
| 13 | to talk to Donna? | 12:32 |
| 14 | THE COURT:  Yes. | 12:32 |
| 15 | Okay.  This is what I propose, I have written | 12:32 |
| 16 | on their note.  "Thank you for noting this | 12:32 |
| 17 | discrepancy.  Please use paper Exhibits 1 through 7 | 12:32 |
| 18 | for now, attached, and we will try to reload the | 12:32 |
| 19 | correct electronic Exhibits 1 through 7.  We will | 12:32 |
| 20 | advise you when that adjustment is made.  Thank you." | 12:32 |
| 21 | MR. NOVICK:  That's fine with the government, | 12:32 |
| 22 | Your Honor. | 12:32 |
| 23 | MR. MORVILLO:  And the defense, Your Honor. | 12:32 |
| 24 | MR. NOVICK:  Yes, Your Honor.  These are | 12:39 |
| 25 | correct. | 12:39 |

1    THE COURT:  All right.  Then we will have    12:39

2  Ms. Barry take the corrected slides, exhibits, paper    12:39

3  exhibits into the jury room with the Court's note    12:39

4  which we're marking as Court B.    12:39

5    And I'd like to share with the alternates the    12:39

6  copy of the correspondence.  All right.  Could you do    12:39

7  that?  Okay.  So that goes to the jury, and that will    12:39

8  go to the alternates.    12:40

9    Is there anything further?    12:40

10    MR. NOVICK:  No, Your Honor.    12:40

11    MR. MORVILLO:  No, Your Honor.    12:40

12    THE COURT:  You need to work with Ms. Barry    12:40

13  on the genius of JERS.    12:40

14    Ms. Barry suggests that she take back their    12:40

15  paper 1 through 7.    12:40

16    MR. MORVILLO:  Yes.    12:40

17    MR. NOVICK:  Yes.    12:40

18    THE COURT:  Unless there's some other    12:40

19  concern, let's do that.  That's a good idea.    12:40

20    MR. NOVICK:  We are reasonably certain, Your    12:41

21  Honor, that the 1 through 7 they have is accurate,    12:41

22  but I have no problem with making sure.    12:41

23    THE COURT:  We're going to go for certainty,    12:41

24  not reasonable certainty.    12:41

25    MR. NOVICK:  I like certainty, Your Honor.    12:41

1    THE COURT:  All right.  Is there anything       12:41

2  further?                                           12:42

3    MR. NOVICK:  No, Your Honor.                     12:42

4    MR. MORVILLO:  No.                               12:42

5    THE COURT:  Stand in recess.                     12:42

6    (Recess taken, 12:42 p.m. to 4:24 p.m.)          12:42

7    THE COURT:  All right, Counsel.  You have a      16:25

8  copy of the jurors' next note asking whether venue is  16:25

9  a requirement for the Pinkerton theory of liability    16:25

10 on the money laundering counts.                    16:25

11   May I hear you?  You may be seated too.          16:25

12   MR. NOVICK:  Your Honor, we would ask for a      16:25

13 few minutes to look into it.  We presume the answer    16:25

14 is probably yes.                                   16:25

15   THE COURT:  That's fine.                         16:25

16   MR. NOVICK:  But I have no direct knowledge      16:25

17 of that.  So we'd request a few minutes to look into   16:25

18 it, or we could get back to them in the morning since  16:25

19 they're sitting for another half hour.             16:25

20   THE COURT:  Does defense have a position?        16:25

21   MR. MORVILLO:  We think the answer is yes for    16:25

22 sure but are happy to take a few minutes to look at    16:25

23 it.                                                16:25

24   THE COURT:  Well, to let the government be       16:25

25 anticipating what your reason is, what is your     16:26

| | | |
|---|---|---|
| 1 | reason?  I mean, it's an element. | 16:26 |
| 2 | MR. MORVILLO:  It's an element, exactly. | 16:26 |
| 3 | THE COURT:  And so I don't see why if -- | 16:26 |
| 4 | MR. MORVILLO:  I don't see how you can get -- | 16:26 |
| 5 | THE COURT:  -- the instruction says the crime | 16:26 |
| 6 | charges in Count Nine, Ten, Eleven, Twelve was | 16:26 |
| 7 | committed as Element Number 1, that doesn't include | 16:26 |
| 8 | venue. | 16:26 |
| 9 | MR. NOVICK:  And, again, as I said, that is | 16:26 |
| 10 | likely the answer.  But, I mean, venue is obviously | 16:26 |
| 11 | not an element but it is a requirement to be proven | 16:26 |
| 12 | as to the substantive offenses, but it's not an | 16:26 |
| 13 | element of the crime which is the only reason why the | 16:26 |
| 14 | government thought we would just look it up.  If | 16:26 |
| 15 | there's an answer, great.  If not, we'll report back. | 16:26 |
| 16 | THE COURT:  Can you do it right now? | 16:27 |
| 17 | MR. NOVICK:  Yes.  I have a computer in the | 16:27 |
| 18 | room next door, the conference room. | 16:27 |
| 19 | THE COURT:  All right.  How long do you think | 16:27 |
| 20 | you will need? | 16:27 |
| 21 | MR. NOVICK:  Give us 15, 20 minutes, 15 | 16:27 |
| 22 | minutes, ten minutes.  I mean, I'll -- | 16:27 |
| 23 | THE COURT:  Would you tell the jurors that | 16:27 |
| 24 | we'll get back to them with an answer in ten to 15 | 16:27 |
| 25 | minutes and that if they can go on otherwise, they | 16:27 |

1    should.                                                    16:27

2         THE CLERK:  And should they leave at 5 or            16:27

3    wait for us to let them know?                             16:27

4         THE COURT:  We'll let them know before they          16:27

5    leave at 5.                                               16:27

6         THE CLERK:  Okay.                                     16:27

7         THE COURT:  Okay.  Anything further?                 16:27

8         MR. NOVICK:  No, Your Honor.                          16:27

9         THE COURT:  We stand in recess.                      16:27

10         (Recess taken, 4:27 p.m. to 4:49 p.m.)             16:27

11         THE COURT:  Please be seated, Counsel.             16:49

12         Would the government like to state its             16:49

13    position?                                                16:49

14         MR. NOVICK:  Your Honor, we're doing our best      16:49

15    to get an answer.  There seems to be some cases on      16:49

16    this.  In 15 minutes I pulled some, but it's far from   16:49

17    what I would represent to be comprehensive.  It         16:49

18    appears in one instance a Fifth Circuit case says       16:49

19    that crimes based on a Pinkerton theory may be tried    16:50

20    where the coconspirator committed the crime.  That's    16:50

21    Parrish, P-a-r-r-i-s-h, 736 F.2d 152, pincite 258 and   16:50

22    also in the Fifth Circuit M-a-c-e-o 947 F.2d 1191.      16:50

23         We've found a number of cases discussing           16:51

24    venue, Pinkerton venue in the context of 924(c) which   16:51

25    on a first reading, I have not figured out whether it   16:51

1    would apply here and -- I'm sorry, Your Honor.                    16:51

2         MR. MORVILLO:  Your Honor, while the                         16:52

3    government is looking, can I give the Court a cite to             16:52

4    consider as well?                                                 16:52

5         THE COURT:  Yes.  I wanted to understand the                 16:52

6    distinction that -- or lack of distinction that the               16:52

7    government thinks exists between where the crime                  16:52

8    occurred and where coconspirators acted because                   16:53

9    what's relevant here for venue for Pinkerton                      16:53

10   liability for money laundering would be where it                  16:53

11   occurred.                                                         16:53

12        MR. NOVICK:  So, Your Honor, understanding                   16:53

13   that -- there are two different possible views here.              16:53

14   One would be that it is where the individual offense             16:53

15   occurred, the individual substantive offense, or it's           16:53

16   where venue lies for the conspiracy that is the basis           16:53

17   for the Pinkerton application which would obviously              16:53

18   be different than venue for the substantive offense.            16:53

19   A venue for a conspiracy is obviously just where one            16:53

20   overt act was committed in furtherance thereof.  So I           16:53

21   think that's --                                                  16:54

22        THE COURT:  Do you think there is an analogy               16:54

23   to be drawn with aiding and abetting theories of                16:54

24   liability?                                                        16:54

25        MR. NOVICK:  There may very well be, Your                   16:54

1  Honor.  That's -- we're trying to ...    16:54

2       THE COURT:  So you might want to look at *U.S.*    16:54

3  *v. Whittingham*, 346 Fed. Appx. 683 finding that where    16:54

4  liability of the substantive offense is premised on    16:54

5  an aiding and abetting theory as in this case, venue    16:54

6  is proper where the defendant's accessorial acts were    16:54

7  committed or where the underlying crime occurred and    16:54

8  then citing to *U.S. v. Smith*, 198 F.3d 377.    16:54

9       Let me get the defendant's offerings here.    16:55

10       MR. MORVILLO:  Thank you, Your Honor.    16:55

11       Just some quick research.  There is a Ninth    16:55

12  Circuit case called *U.S. v. Corona*, 34 F.3d 876,    16:55

13  pincite is 879.  And I can just read a brief quote    16:55

14  from the case.    16:55

15       "The question we must answer, however, is    16:55

16  whether Nevada was the proper venue for the    16:55

17  substantive crimes arising from the conspiracy,    16:55

18  distribution of cocaine, Counts 2 and 3, and use of a    16:55

19  firearm during a drug trafficking count, Count 4,    16:55

20  which occurred entirely in California.  The    16:55

21  government claims that the Pinkerton principle, the    16:55

22  principle that conspirators can be responsible for    16:55

23  the substantive offenses of their coconspirators, is    16:55

24  a sufficient basis for venue in Nevada citing    16:55

25  Pinkerton.  This principle, however, does not appear    16:55

1    to control the question before us.  What the                16:55

2    government is essentially arguing for is a rule              16:56

3    allowing venue over a substantive crime committed in        16:56

4    furtherance of a conspiracy in any district where           16:56

5    venue is proper for the conspiracy charged.  While          16:56

6    such a rule might make sense from a policy                   16:56

7    standpoint, it runs counter to the venue principles         16:56

8    established by the Constitution, the Federal Rules of        16:56

9    Criminal Procedure and the federal courts."                 16:56

10              THE COURT:  Thank you.                            16:56

11              All right.  I think we need to tell the           16:56

12    jurors that we will have an answer for them at 9:30         16:56

13    tomorrow morning and that if they wish to leave now,        16:56

14    that they can do so.                                        16:56

15              Shall I have them in to tell them that?           16:56

16              MR. MORVILLO:  I think that would be a good       16:56

17    idea.                                                       16:56

18              (Jury entered the proceedings, 4:59 p.m.)         16:59

19              THE COURT:  Please be seated, ladies and          16:59

20    gentlemen.  Your former colleagues, the alternates         16:59

21    will be in in just a moment.  Oh, they're here.            16:59

22    You're here.                                                16:59

23              I wanted to compliment you on your close          16:59

24    reading of the instructions.  I want to compliment         16:59

25    you on your precision.  I cannot give you an answer        16:59

1    tonight.  At 9:30 tomorrow morning we'll have it          16:59

2    figured all out and we will bring you back -- either       16:59

3    back into the courtroom if a longer explanation is         17:00

4    needed.  If the answer is a simple yes or no, I'll         17:00

5    send you another note.                                      17:00

6           So I thank you very much, and we will be sure       17:00

7    to bring your question up with the next law school          17:00

8    class we teach.                                             17:00

9           All right.  Enjoy your evening.  I hope you         17:00

10   enjoyed your lunch and we'll see you tomorrow at           17:00

11   9:30.                                                       17:00

12           (Jury exited the proceedings, 5:00 p.m.)           17:00

13   THE COURT:  All right.  How would you like to              17:01

14   formulate your position, Mr. Novick, in a way that I        17:01

15   will be able to consider what direction should be          17:01

16   given to the jury at 9:30 tomorrow morning?                17:01

17           MR. NOVICK:  We'll try to put something            17:01

18   together within the next few hours, Your Honor.            17:01

19           THE COURT:  And does the defendant want to do      17:01

20   anything further than your referring to your Ninth         17:01

21   Circuit case?                                               17:01

22           MR. MORVILLO:  We certainly would like to          17:01

23   take a closer look as well but -- and so we're happy       17:01

24   to submit simultaneously if that would be help to          17:01

25   feel the Court.                                             17:01

| | | |
|---|---|---|
| 1 | THE COURT:  Fine.  All right. | 17:01 |
| 2 | Then if there's nothing further, thank you | 17:01 |
| 3 | very much.  We stand in recess. | 17:02 |
| 4 | (Proceedings adjourned, 5:02 p.m.) | 17:02 |
| 5 | | |
| 6 | C E R T I F I C A T E | |
| 7 | | |
| 8 | RE: UNITED STATES OF AMERICA v. LAWRENCE HOSKINS | |
| | No. 3:12-CR-238 (JBA) | |
| 9 | | |
| 10 | I, Melissa J. Cianciullo, RMR, CRR, CRC, | |
| 11 | Official Court Reporter for the United States | |
| 12 | District Court for the District of Connecticut, do | |
| 13 | hereby certify that the foregoing pages 1468 through | |
| 14 | 1509 are a true and accurate transcription of my | |
| 15 | shorthand notes taken in the aforementioned matter to | |
| 16 | the best of my skill and ability. | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | /s/ Melissa J. Cianciullo_____ | |
| 22 | MELISSA J. CIANCIULLO, RMR, CRR | |
| | Official Court Reporter | |
| 23 | United States District Court | |
| | 141 Church Street, Room 147 | |
| 24 | New Haven, Connecticut  06510 | |
| | (203) 606-1794 | |
| 25 | | |

1

**/**

/s/_Melissa [1] - 1509:21

**0**

06510 [2] - 1469:4, 1509:24
06890 [1] - 1469:19

**1**

1 [14] - 1495:12, 1495:20, 1498:1, 1498:10, 1498:21, 1498:24, 1499:11, 1499:12, 1500:10, 1500:17, 1500:19, 1501:15, 1501:21, 1503:7
10019-6131 [1] - 1469:14
10:01 [1] - 1468:6
10:17 [1] - 1478:8
10:25 [1] - 1483:21
10:28 [1] - 1485:6
10:37 [1] - 1489:18
10:39 [1] - 1491:14
10:41 [1] - 1492:16
10:44 [1] - 1492:16
10:46 [1] - 1493:7
10:48 [1] - 1494:19
10:49 [1] - 1494:19
11 [2] - 1475:8, 1476:11
11308 [1] - 1469:9
1191 [1] - 1504:22
11:30 [1] - 1494:7
12 [1] - 1494:7
1227 [1] - 1509:13
12:07 [1] - 1494:19
12:12 [1] - 1497:12
12:17 [1] - 1497:12
12:20 [1] - 1499:2
12:27 [1] - 1499:2
12:42 [1] - 1502:6
1400 [1] - 1469:8
141 [2] - 1468:7, 1509:23
1467 [1] - 1509:14
147 [1] - 1509:23
15 [4] - 1503:21, 1503:24, 1504:16
152 [1] - 1504:21
157 [1] - 1469:4
198 [1] - 1506:8
1:30 [1] - 1494:7

**2**

2 [2] - 1478:7, 1506:18
20 [1] - 1503:21
20005 [1] - 1469:9
2019 [1] - 1468:5
203 [5] - 1468:25, 1469:5, 1469:18, 1469:19, 1509:24
21 [1] - 1494:6
212 [1] - 1469:15
23rd [1] - 1469:4
2425 [1] - 1469:18
258 [1] - 1504:21
27 [1] - 1494:7
292-9766 [1] - 1469:19

**3**

3 [1] - 1506:18
34 [1] - 1506:12
346 [1] - 1506:3
377 [1] - 1506:8
3:12-CR-238 [1] - 1468:4, 1509:8

**4**

4 [60] - 1470:3, 1477:7, 1477:11, 1478:8, 1478:9, 1478:11, 1478:15, 1478:21, 1479:20, 1480:3, 1480:17, 1480:25, 1481:3, 1481:14, 1482:1, 1482:18, 1482:24, 1483:6, 1483:9, 1483:16, 1485:7, 1485:8, 1485:16, 1486:7, 1486:19, 1486:24, 1487:4, 1488:4, 1488:16, 1488:18, 1489:5, 1489:14, 1491:21, 1491:25, 1492:7, 1492:15, 1493:11, 1494:24, 1495:18, 1495:22, 1496:12, 1496:22, 1496:23, 1497:8, 1497:9, 1497:14, 1497:15, 1497:16, 1497:21, 1497:22, 1498:10, 1498:13, 1498:14, 1498:22, 1499:7, 1500:6, 1506:19
4's [2] - 1470:5, 1493:19
40 [2] - 1475:15,

1475:21
4:24 [1] - 1502:6
4:27 [1] - 1504:10
4:49 [1] - 1504:10
4:59 [1] - 1507:18

**5**

5 [11] - 1495:19, 1496:1, 1496:4, 1496:11, 1496:18, 1496:19, 1497:3, 1497:4, 1499:24, 1504:2, 1504:5
5:00 [1] - 1508:12
5:02 [1] - 1509:4

**6**

606-1794 [2] - 1468:25, 1509:24
683 [1] - 1506:3

**7**

7 [15] - 1468:5, 1495:12, 1498:1, 1498:10, 1498:21, 1498:25, 1499:8, 1499:11, 1499:12, 1500:8, 1500:10, 1500:17, 1500:19, 1501:15, 1501:21
736 [1] - 1504:21

**8**

8 [4] - 1491:8, 1492:13, 1493:4, 1493:14
821-3700 [1] - 1469:5
876 [1] - 1506:12
878-8000 [1] - 1469:15
879 [1] - 1506:13

**9**

924(c [1] - 1504:24
947 [1] - 1504:22
9:30 [5] - 1494:7, 1507:12, 1508:1, 1508:11, 1508:16
9:40 [1] - 1470:1

**A**

a.m [12] - 1468:6, 1470:1, 1478:8, 1483:21, 1485:6, 1489:18, 1491:14, 1492:16, 1493:7,

1494:13, 1494:19
abetting [2] - 1505:23, 1506:5
ability [3] - 1470:23, 1472:1, 1509:16
able [7] - 1473:10, 1477:12, 1483:10, 1486:5, 1487:11, 1487:13, 1508:15
absolutely [1] - 1472:18
accept [1] - 1488:22
accessorial [1] - 1506:6
accurate [8] - 1495:8, 1496:19, 1497:1, 1498:11, 1498:13, 1498:22, 1501:21, 1509:14
accused [1] - 1474:14
act [1] - 1505:20
acted [1] - 1505:8
acts [1] - 1506:6
actual [1] - 1497:9
address [1] - 1492:8
adieu [1] - 1471:21
adjourned [1] - 1509:4
adjustment [1] - 1500:20
admitted [3] - 1495:19, 1495:25, 1496:1
advise [1] - 1500:20
advises [1] - 1494:23
affect [3] - 1470:22, 1474:1, 1480:10
affected [1] - 1474:23
aforementioned [1] - 1509:15
afternoon [1] - 1476:23
Agent [1] - 1474:18
ago [2] - 1471:12, 1479:14
agree [1] - 1492:25
ahead [1] - 1486:18
aiding [2] - 1505:23, 1506:5
albeit [1] - 1479:23
allowing [1] - 1507:3
almost [1] - 1471:12
Alstom [34] - 1470:6, 1470:11, 1470:19, 1470:20, 1470:22, 1471:4, 1471:6, 1471:7, 1472:7, 1472:11, 1472:16, 1472:21, 1474:18, 1474:24, 1478:14, 1478:19, 1479:3,

1479:18, 1479:23, 1480:2, 1480:16, 1480:24, 1481:13, 1481:16, 1481:19, 1483:13, 1490:8, 1490:13, 1491:20, 1491:23, 1492:4, 1492:6, 1492:23, 1495:24
Alternate [1] - 1492:13
alternate [8] - 1471:21, 1473:12, 1473:20, 1477:20, 1477:22, 1484:7, 1487:18, 1488:8
alternates [5] - 1487:15, 1487:16, 1501:5, 1501:8, 1507:20
AMERICA [2] - 1468:4, 1509:8
amount [1] - 1484:5
analogy [1] - 1505:22
AND [1] - 1468:18
anew [2] - 1487:17, 1491:9
answer [14] - 1480:10, 1488:14, 1495:1, 1498:16, 1502:13, 1502:21, 1503:10, 1503:15, 1503:24, 1504:15, 1506:15, 1507:12, 1507:25, 1508:4
anticipate [1] - 1486:16
anticipating [1] - 1502:25
anticipation [1] - 1485:13
anyways [2] - 1479:11, 1480:7
API [1] - 1479:23
apparent [1] - 1483:23
appear [1] - 1506:25
application [1] - 1505:17
apply [1] - 1505:1
appreciate [1] - 1489:6
approach [2] - 1489:11, 1500:12
Appx [1] - 1506:3
arguing [1] - 1507:2
arisen [1] - 1493:11
arising [1] - 1506:17
ARTERTON [1] - 1468:18
aside [1] - 1498:10
assess [1] - 1480:12

**associated** [2] - 1490:7, 1490:12
**association** [1] - 1491:23
**assuming** [1] - 1500:2
**atmospheres** [1] - 1480:18
**attach** [1] - 1497:15
**attached** [2] - 1500:9, 1500:18
**attend** [3] - 1475:7, 1476:17, 1493:25
**attention** [4] - 1471:17, 1478:17, 1478:20, 1479:19
**Attorney** [1] - 1497:10
**Attorney's** [1] - 1469:3
**AUSA** [1] - 1469:3
**Avenue** [1] - 1469:8
**aware** [2] - 1486:19, 1492:4

# B

**backroom** [1] - 1490:3
**bad** [2] - 1471:22, 1472:21
**Barry** [3] - 1501:2, 1501:12, 1501:14
**base** [1] - 1494:25
**based** [2] - 1496:6, 1504:19
**basis** [3] - 1492:5, 1505:16, 1506:24
**bearing** [1] - 1472:6
**begin** [2] - 1487:17, 1491:9
**beginning** [2] - 1477:20, 1489:21
**begins** [1] - 1470:1
**behalf** [1] - 1488:12
**BENJAMIN** [1] - 1469:13
**benjamin.peacock@ cliffordchance.com** [1] - 1469:16
**best** [3] - 1488:21, 1504:14, 1509:16
**better** [1] - 1494:9
**between** [3] - 1485:21, 1491:23, 1505:7
**beyond** [1] - 1474:7
**binder** [1] - 1499:25
**bit** [1] - 1475:19
**board** [1] - 1498:18
**BOND** [1] - 1468:18
**box** [1] - 1475:10
**BRIAN** [1] - 1469:7
**brief** [1] - 1506:13
**briefly** [2] - 1489:12,

1493:10
**bring** [7] - 1471:20, 1473:12, 1487:15, 1487:16, 1491:8, 1508:2, 1508:7
**bringing** [2] - 1484:7, 1493:4
**brought** [3] - 1478:17, 1492:12, 1492:14
**bspears@ spearsmanning. com** [1] - 1469:20
**business** [1] - 1472:8
**busy** [2] - 1480:6

# C

**California** [1] - 1506:20
**campaign** [4] - 1482:25, 1483:3, 1485:17, 1485:20
**cannot** [5] - 1473:9, 1483:24, 1484:2, 1487:14, 1507:25
**care** [1] - 1482:9
**careful** [1] - 1494:23
**carry** [2] - 1493:22, 1494:10
**case** [24] - 1471:6, 1471:14, 1472:7, 1472:10, 1473:1, 1474:2, 1474:15, 1474:24, 1475:1, 1477:25, 1480:2, 1480:9, 1485:8, 1485:15, 1486:5, 1486:10, 1486:14, 1487:2, 1487:19, 1504:18, 1506:5, 1506:12, 1506:14, 1508:21
**cases** [2] - 1504:15, 1504:23
**caught** [2] - 1479:19, 1481:6
**certain** [2] - 1499:19, 1501:20
**certainly** [9] - 1471:6, 1471:16, 1472:22, 1472:24, 1472:25, 1474:2, 1475:17, 1475:24, 1508:22
**certainty** [3] - 1501:23, 1501:24, 1501:25
**certify** [1] - 1509:13
**cetera** [1] - 1487:11
**Chance** [1] - 1469:14
**chance** [1] - 1479:24

**change** [2] - 1484:23, 1495:16
**changed** [1] - 1492:18
**charged** [1] - 1507:5
**charges** [1] - 1503:6
**chart** [1] - 1495:21
**charts** [2] - 1495:12, 1495:15
**chat** [1] - 1489:16
**check** [1] - 1498:19
**childcare** [2] - 1482:5, 1490:18
**chosen** [1] - 1491:11
**CHRISTOPHER** [1] - 1469:12
**christopher.morvillo @cliffordchance. com** [1] - 1469:15
**chunk** [1] - 1476:7
**Church** [3] - 1468:7, 1469:4, 1509:23
**CIANCIULLO** [1] - 1509:22
**Cianciullo** [3] - 1468:24, 1509:10, 1509:21
**Circuit** [4] - 1504:18, 1504:22, 1506:12, 1508:21
**circumstance** [1] - 1489:20
**cite** [1] - 1505:3
**citing** [2] - 1506:8, 1506:24
**City** [1] - 1470:6
**claims** [1] - 1506:21
**clarify** [3] - 1491:3, 1491:15, 1498:23
**class** [1] - 1508:8
**clear** [3] - 1472:14, 1474:10, 1487:8
**clerk** [1] - 1496:24
**CLERK** [4] - 1493:5, 1497:10, 1504:2, 1504:6
**Clifford** [1] - 1469:14
**close** [1] - 1507:23
**closer** [1] - 1508:23
**cocaine** [1] - 1506:18
**coconspirator** [1] - 1504:20
**coconspirators** [2] - 1505:8, 1506:23
**Coleman** [1] - 1474:18
**colleague** [1] - 1472:11
**colleagues** [2] - 1484:9, 1507:20
**coming** [2] - 1472:3, 1494:5

**commenced** [2] - 1483:21, 1489:18
**commit** [1] - 1494:2
**committed** [5] - 1503:7, 1504:20, 1505:20, 1506:7, 1507:3
**communication** [1] - 1477:4
**company** [7] - 1474:11, 1474:21, 1478:24, 1479:2, 1481:15, 1481:18, 1481:21
**complete** [4] - 1473:10, 1483:25, 1487:12, 1487:13
**completed** [3] - 1482:22, 1486:15, 1486:23
**compliment** [2] - 1507:23, 1507:24
**comprehensive** [1] - 1504:17
**computer** [2] - 1498:6, 1503:17
**concept** [1] - 1475:24
**concern** [4] - 1483:24, 1487:23, 1489:1, 1501:19
**concluded** [2] - 1485:6, 1491:14
**conduct** [1] - 1474:13
**conference** [1] - 1503:18
**conflict** [1] - 1472:5
**conflicts** [2] - 1486:8, 1486:9
**conjunction** [1] - 1480:24
**CONNECTICUT** [1] - 1468:1
**Connecticut** [3] - 1468:8, 1509:12, 1509:24
**conscientious** [1] - 1486:17
**consequence** [3] - 1484:11, 1484:22, 1487:18
**consider** [3] - 1483:7, 1505:4, 1508:15
**considered** [1] - 1487:11
**conspiracy** [5] - 1505:16, 1505:19, 1506:17, 1507:4, 1507:5
**conspirators** [1] - 1506:22

**Constitution** [1] - 1507:8
**context** [1] - 1504:24
**continue** [3] - 1482:16, 1485:9, 1491:4
**continues** [1] - 1474:8
**contrary** [1] - 1472:15
**control** [1] - 1507:1
**conversation** [2] - 1478:4, 1490:17
**cool** [1] - 1483:9
**coordinator** [1] - 1483:3
**copy** [7] - 1494:21, 1494:24, 1495:1, 1496:11, 1496:16, 1501:6, 1502:8
**Corona** [1] - 1506:12
**correct** [15] - 1478:15, 1482:18, 1491:25, 1492:23, 1496:15, 1496:20, 1496:22, 1497:5, 1497:22, 1500:1, 1500:2, 1500:11, 1500:19, 1500:25
**corrected** [1] - 1501:2
**correspondence** [1] - 1501:6
**corresponds** [1] - 1498:14
**counsel** [9] - 1470:2, 1483:16, 1483:20, 1483:22, 1493:2, 1494:14, 1494:20, 1502:7, 1504:11
**Count** [1] - 1506:19
**count** [2] - 1503:6, 1506:19
**counter** [1] - 1507:7
**counts** [3] - 1487:10, 1502:10, 1506:18
**couple** [1] - 1472:6
**course** [4] - 1491:10, 1492:17, 1495:1, 1495:19
**court** [4] - 1476:3, 1476:16, 1483:8, 1494:22
**COURT** [116] - 1468:1, 1470:2, 1470:15, 1471:16, 1472:14, 1472:19, 1473:7, 1473:17, 1473:19, 1475:2, 1475:15, 1476:4, 1476:12, 1476:16, 1476:22, 1477:1, 1477:6, 1477:18, 1478:6,

1478:9, 1478:12,
1478:16, 1479:17,
1479:21, 1480:11,
1480:21, 1481:2,
1481:12, 1481:22,
1482:12, 1482:19,
1483:5, 1483:8,
1483:14, 1483:19,
1483:22, 1485:3,
1485:7, 1486:1,
1486:14, 1486:20,
1486:25, 1487:6,
1488:15, 1488:17,
1488:21, 1489:7,
1489:13, 1489:17,
1490:10, 1490:12,
1490:20, 1491:3,
1491:7, 1491:15,
1491:22, 1492:3,
1492:8, 1492:24,
1493:2, 1493:6,
1493:8, 1494:14,
1494:18, 1494:20,
1495:5, 1496:3,
1496:8, 1496:13,
1496:18, 1496:21,
1496:25, 1497:3,
1497:6, 1497:13,
1497:19, 1498:2,
1498:5, 1498:12,
1498:19, 1498:24,
1499:5, 1499:10,
1499:16, 1499:23,
1500:3, 1500:6,
1500:9, 1500:14,
1501:1, 1501:12,
1501:18, 1501:23,
1502:1, 1502:5,
1502:7, 1502:15,
1502:20, 1502:24,
1503:3, 1503:5,
1503:16, 1503:19,
1503:23, 1504:4,
1504:7, 1504:9,
1504:11, 1505:5,
1505:22, 1506:2,
1507:10, 1507:19,
1508:13, 1508:19,
1509:1
**Court** [13] - 1468:24,
1472:3, 1476:8,
1478:13, 1491:18,
1495:14, 1501:4,
1505:3, 1508:25,
1509:11, 1509:12,
1509:22, 1509:23
**Court's** [2] - 1478:17,
1501:3
**courtroom** [3] -
1470:3, 1480:7,
1508:3

**Courtroom** [1] -
1478:7
**courts** [1] - 1507:9
**CRC** [2] - 1468:24,
1509:10
**create** [1] - 1482:17
**credibility** [2] -
1474:22, 1480:12
**crime** [6] - 1503:5,
1503:13, 1504:20,
1505:7, 1506:7,
1507:3
**crimes** [2] - 1504:19,
1506:17
**Criminal** [2] - 1469:8,
1507:9
**critically** [1] - 1487:2
**CRR** [3] - 1468:24,
1509:10, 1509:22
**CT** [2] - 1469:4,
1469:19
**current** [1] - 1497:21
**cutting** [1] - 1485:19

## D

**D.C** [1] - 1469:9
**DANIEL** [2] - 1469:6,
1469:13
**daniel.kahn@usdoj.**
**gov** [1] - 1469:10
**daniel.silver@**
**cliffordchance.com**
[1] - 1469:16
**dates** [1] - 1494:3
**DAVID** [1] - 1469:3
**david.novick@usdoj**
**.gov** [1] - 1469:5
**days** [2] - 1473:21,
1487:9
**dealing** [1] - 1471:8
**December** [2] - 1494:7
**decides** [2] - 1484:18,
1484:19
**defendant** [1] -
1508:19
**Defendant** [2] -
1468:9, 1469:11
**defendant's** [2] -
1506:6, 1506:9
**defense** [3] - 1491:13,
1500:23, 1502:20
**defer** [1] - 1476:7
**deliberating** [2] -
1470:1, 1471:20
**deliberation** [3] -
1473:21, 1477:12,
1487:17
**deliberations** [15] -
1473:20, 1474:7,

1475:4, 1477:17,
1477:21, 1478:1,
1482:16, 1482:22,
1485:8, 1488:7,
1489:21, 1492:21,
1493:16, 1493:23,
1494:25
**deliberative** [2] -
1486:18, 1487:1
**Department** [1] -
1469:7
**deprive** [1] - 1475:18
**deputy** [1] - 1470:3
**described** [2] -
1482:15, 1490:23
**different** [6] - 1471:7,
1478:23, 1480:18,
1482:13, 1505:13,
1505:18
**difficult** [2] - 1477:16,
1477:19
**difficulties** [1] -
1482:17
**diligently** [1] -
1487:21
**dire** [5] - 1471:25,
1473:23, 1475:2,
1475:4, 1492:22
**direct** [2] - 1490:2,
1502:16
**direction** [1] - 1508:15
**dired** [2] - 1470:17,
1470:20
**disagree** [1] - 1485:2
**disagreeing** [1] -
1471:24
**discrepancy** [1] -
1500:17
**discuss** [1] - 1490:2
**discussed** [1] -
1491:16
**discussing** [2] -
1471:14, 1504:23
**discussion** [1] -
1495:14
**displayed** [2] -
1472:23, 1474:12
**disregard** [1] -
1497:14
**disrespect** [2] -
1488:10, 1489:2
**distinction** [1] -
1505:6
**distraction** [1] -
1475:20
**distribution** [1] -
1506:18
**DISTRICT** [2] - 1468:1,
1468:1
**District** [3] - 1509:12,

1509:23
**district** [1] - 1507:4
**division** [1] - 1471:7
**Division** [1] - 1469:8
**documents** [3] -
1480:1, 1480:14,
1496:1
**donations** [1] -
1485:18
**done** [4] - 1480:9,
1486:11, 1487:23,
1488:11
**Donna** [1] - 1500:13
**door** [1] - 1503:18
**draw** [1] - 1480:14
**drawn** [1] - 1505:23
**drug** [1] - 1506:19
**due** [1] - 1485:18
**during** [8] - 1470:9,
1495:19, 1506:19
**duty** [1] - 1485:21

## E

**E-mail** [3] - 1469:5,
1469:15, 1469:20
**e-mail** [2] - 1498:7,
1499:9
**e-mails** [1] - 1480:14
**easily** [1] - 1471:25
**edit** [2] - 1497:17
**edited** [3] - 1495:15,
1496:20
**either** [2] - 1471:2,
1508:2
**electronic** [4] -
1494:23, 1497:14,
1498:13, 1500:19
**element** [4] - 1503:1,
1503:2, 1503:11,
1503:13
**Element** [1] - 1503:7
**Eleven** [1] - 1503:6
**Email** [1] - 1469:10
**emphasize** [1] -
1477:24
**employed** [2] -
1471:4, 1474:17
**encourage** [1] -
1488:2
**end** [3] - 1484:1,
1485:9, 1487:13
**engineered** [1] -
1481:15
**enjoy** [1] - 1508:9
**enjoyed** [1] - 1508:10
**entered** [3] - 1478:8,
1493:7, 1507:18
**entirely** [2] - 1476:7,
1506:20

**equal** [1] - 1484:5
**especially** [1] -
1479:12
**ESQ** [6] - 1469:6,
1469:7, 1469:12,
1469:13, 1469:13,
1469:17
**essentially** [1] -
1507:2
**established** [1] -
1507:8
**et** [1] - 1487:11
**evaluation** [1] -
1474:2
**evening** [1] - 1508:9
**event** [1] - 1490:4
**everywhere** [1] -
1479:4
**evidence** [4] -
1480:15, 1486:4,
1486:15, 1486:23
**exactly** [1] - 1503:2
**except** [1] - 1474:18
**excuse** [8] - 1472:21,
1477:19, 1483:23,
1484:23, 1488:6,
1488:25, 1489:13,
1492:10
**excused** [12] -
1470:11, 1485:1,
1486:3, 1488:23,
1489:10, 1489:21,
1490:2, 1492:19,
1493:12, 1493:13,
1493:20, 1494:12
**excusing** [2] - 1484:6,
1484:21
**Exhibit** [12] - 1478:13,
1494:24, 1495:18,
1495:19, 1495:20,
1495:22, 1496:1,
1496:4, 1496:18,
1496:19, 1497:15,
1497:16
**Exhibits** [2] - 1500:17,
1500:19
**exhibits** [5] - 1495:2,
1495:11, 1501:2,
1501:3
**exist** [1] - 1472:16
**exists** [1] - 1505:7
**exited** [2] - 1494:13,
1508:12
**explanation** [1] -
1508:3
**expressed** [1] -
1472:15
**extend** [1] - 1484:4

**F**

F.2d [2] - 1504:21, 1504:22
F.3d [2] - 1506:8, 1506:12
FaceTime [2] - 1479:5
fact [10] - 1472:21, 1474:20, 1474:23, 1478:18, 1480:15, 1483:24, 1485:9, 1487:8, 1487:10, 1490:1
facts [1] - 1472:7
fair [4] - 1470:23, 1472:1, 1472:13, 1473:25
far [2] - 1493:17, 1504:16
fathom [3] - 1472:9, 1472:11, 1474:25
Fed [1] - 1506:3
Federal [1] - 1507:8
federal [1] - 1507:9
fellow [4] - 1480:22, 1487:22, 1488:10, 1489:2
few [5] - 1479:7, 1502:13, 1502:17, 1502:22, 1508:18
field [1] - 1480:20
Fifth [2] - 1504:18, 1504:22
figure [1] - 1473:5
figured [2] - 1504:25, 1508:2
fill [1] - 1484:17
fine [6] - 1484:19, 1493:12, 1499:15, 1500:21, 1502:15, 1509:1
Finger [1] - 1478:22
finish [1] - 1489:1
finished [2] - 1488:3, 1494:3
firearm [1] - 1506:19
fireman [3] - 1470:5, 1470:21, 1471:1
first [3] - 1473:1, 1475:11, 1504:25
fix [2] - 1497:18, 1497:20
fixed [1] - 1481:15
Floor [1] - 1469:4
forego [1] - 1477:3
foregoing [1] - 1509:13
foreman [7] - 1470:25, 1471:1, 1471:2, 1471:3, 1471:11,

1478:22, 1479:23
former [1] - 1507:20
forms [1] - 1483:1
formulate [1] - 1508:14
forth [2] - 1480:14, 1489:9
four [1] - 1497:1
Fraud [1] - 1469:8
Friday [14] - 1473:9, 1473:11, 1476:23, 1482:16, 1482:22, 1484:1, 1486:11, 1486:23, 1487:12, 1487:14, 1487:23, 1488:3, 1488:7, 1489:2
function [1] - 1485:24
furtherance [2] - 1505:20, 1507:4

**G**

Gajendra [1] - 1495:25
gather [1] - 1492:11
genius [1] - 1501:13
gentlemen [2] - 1493:9, 1507:20
given [8] - 1470:3, 1470:17, 1486:1, 1487:9, 1489:22, 1490:6, 1497:25, 1508:16
Government [3] - 1469:2, 1497:16, 1497:22
government [10] - 1476:19, 1480:24, 1500:21, 1502:24, 1503:14, 1504:12, 1505:3, 1505:7, 1506:21, 1507:2
government's [2] - 1494:24, 1499:9
great [4] - 1496:15, 1484:15, 1484:16, 1503:15
guess [3] - 1480:6, 1480:10, 1498:16

**H**

half [1] - 1502:19
hand [2] - 1476:13, 1482:25
handed [1] - 1495:22
happy [2] - 1502:22, 1508:23
hard [2] - 1473:4, 1494:24

Haven [3] - 1468:8, 1469:4, 1509:24
heading [1] - 1482:24
hear [2] - 1478:6, 1502:11
heard [3] - 1476:24, 1477:1, 1492:22
help [1] - 1508:24
hereby [1] - 1509:13
holiday [2] - 1483:5, 1483:8
Honor [54] - 1470:17, 1471:23, 1473:13, 1473:22, 1474:9, 1474:25, 1475:12, 1475:18, 1475:24, 1476:19, 1477:15, 1477:23, 1483:17, 1483:18, 1484:9, 1484:10, 1485:1, 1488:19, 1488:20, 1489:5, 1489:11, 1492:15, 1493:1, 1494:16, 1494:17, 1495:4, 1495:9, 1496:10, 1496:14, 1496:15, 1497:5, 1497:23, 1499:4, 1499:14, 1499:18, 1499:25, 1500:12, 1500:22, 1500:23, 1500:24, 1501:10, 1501:11, 1501:21, 1501:25, 1502:3, 1502:12, 1504:8, 1504:14, 1505:1, 1505:2, 1505:12, 1506:1, 1506:10, 1508:18
Honor's [1] - 1492:17
HONORABLE [1] - 1468:18
hope [1] - 1508:9
hopefully [1] - 1476:20
Hoskins [1] - 1474:13
HOSKINS [2] - 1468:8, 1509:8
hosting [1] - 1483:2
hour [1] - 1502:19
hours [1] - 1508:18
hurry [1] - 1487:1
husband [21] - 1470:5, 1470:10, 1471:15, 1471:18, 1474:10, 1474:20, 1474:23, 1478:5, 1478:14, 1478:19, 1479:22, 1480:23, 1481:9, 1481:13, 1482:7,

1483:12, 1490:7, 1490:12, 1490:24, 1491:20, 1491:23
husband's [3] - 1470:21, 1480:16, 1482:4

**I**

idea [5] - 1471:22, 1472:21, 1476:15, 1501:19, 1507:17
identified [1] - 1470:10
identifying [1] - 1470:4
impact [3] - 1472:1, 1472:10, 1472:12
impartial [4] - 1470:23, 1472:2, 1472:13, 1474:1
important [4] - 1475:21, 1477:3, 1477:24, 1487:2
impossible [1] - 1485:23
Inc [1] - 1495:24
include [2] - 1493:18, 1503:7
indicate [1] - 1474:3
indicated [2] - 1472:11, 1490:15
indication [1] - 1478:3
indictment [1] - 1495:16
individual [2] - 1505:14, 1505:15
Indonesian [1] - 1495:21
inferences [1] - 1480:13
influence [3] - 1479:25, 1488:5, 1492:21
influenced [1] - 1480:15
inform [1] - 1492:18
information [1] - 1496:2
inquired [1] - 1473:6
instance [2] - 1474:1, 1504:18
instruction [1] - 1503:5
instructions [1] - 1507:24
interest [1] - 1471:17
involves [1] - 1480:2
issue [3] - 1473:15, 1497:18, 1498:23

issues [1] - 1490:18
itself [1] - 1485:20

**J**

JANET [1] - 1468:18
JBA [2] - 1468:4, 1509:8
JERS [12] - 1495:18, 1495:23, 1496:4, 1496:17, 1496:21, 1496:23, 1497:18, 1497:21, 1498:1, 1498:3, 1499:12, 1501:13
job [14] - 1470:6, 1470:10, 1470:19, 1470:22, 1471:3, 1471:11, 1472:25, 1478:14, 1479:24, 1483:2, 1483:6, 1485:24, 1486:18, 1490:19
joins [1] - 1493:14
Judge [1] - 1497:10
judge [1] - 1470:14
judgment [1] - 1474:22
Juror [15] - 1470:3, 1470:4, 1477:6, 1477:11, 1478:8, 1478:9, 1483:16, 1485:7, 1485:8, 1488:17, 1489:13, 1492:13, 1493:11, 1493:14, 1493:19
juror [17] - 1472:2, 1473:8, 1473:15, 1476:24, 1477:24, 1484:3, 1484:1, 1485:15, 1488:25, 1489:20, 1490:1, 1490:2, 1490:8, 1490:23, 1491:19, 1492:19, 1494:9
JUROR [26] - 1478:11, 1478:15, 1478:21, 1479:20, 1480:3, 1480:17, 1480:25, 1481:3, 1481:14, 1482:1, 1482:18, 1482:24, 1483:6, 1483:9, 1485:16, 1486:7, 1486:19, 1486:24, 1487:4, 1488:4, 1488:16, 1489:5, 1491:21, 1491:25, 1492:7, 1492:15
jurors [27] - 1472:19,

1473:10, 1475:6,
1477:7, 1480:22,
1481:9, 1481:24,
1485:10, 1486:17,
1487:11, 1487:17,
1487:22, 1488:10,
1489:3, 1489:23,
1490:3, 1490:5,
1490:7, 1491:4,
1491:17, 1492:4,
1492:12, 1492:18,
1492:19, 1493:18,
1503:23, 1507:12
jurors' [1] - 1502:8
JURY [2] - 1468:12,
1468:18
Jury [5] - 1470:1,
1493:7, 1494:13,
1507:18, 1508:12
jury [15] - 1470:9,
1471:11, 1472:13,
1475:10, 1482:14,
1483:25, 1485:21,
1489:9, 1489:25,
1493:20, 1494:21,
1494:23, 1501:3,
1501:7, 1508:16
jury's [1] - 1500:5
Justice [1] - 1469:7

## K

KAHN [2] - 1469:6,
1471:5
keep [2] - 1477:8,
1479:13
keyed [1] - 1486:22
kind [11] - 1480:5,
1480:17, 1481:4,
1482:1, 1482:5,
1482:6, 1482:10,
1485:24, 1488:8,
1488:9
kindly [1] - 1486:13,
1493:22
knowing [4] -
1479:22, 1484:1,
1486:2, 1488:10
knowledge [1] -
1502:16
known [1] - 1473:3

## L

lack [1] - 1505:6
ladies [2] - 1493:8,
1507:19
Lakes [1] - 1478:22
larger [1] - 1498:12
LARYEA [4] - 1469:7,

1471:9, 1490:25,
1496:12
last [10] - 1479:1,
1480:4, 1481:9,
1481:16, 1481:21,
1481:23, 1482:2,
1484:13, 1490:16,
1490:24
late [1] - 1472:3
latest [1] - 1494:21
laundering [2] -
1502:10, 1505:10
law [2] - 1486:5,
1508:7
LAWRENCE [2] -
1468:8, 1509:8
learned [2] - 1478:16,
1490:24
least [3] - 1484:4,
1491:16, 1496:6
leave [5] - 1484:14,
1489:8, 1504:2,
1504:5, 1507:13
leaving [1] - 1481:23
lest [1] - 1472:21
letting [1] - 1474:5
liability [4] - 1502:9,
1505:10, 1505:24,
1506:4
lies [1] - 1505:16
life [1] - 1472:17
light [1] - 1473:24
likely [3] - 1470:11,
1470:13, 1503:10
listening [1] - 1486:4
LLC [1] - 1469:18
LLP [1] - 1469:14
logo [1] - 1479:8
look [10] - 1497:25,
1498:3, 1498:5,
1498:21, 1502:13,
1502:17, 1502:22,
1503:14, 1506:2,
1508:23
looked [1] - 1479:8
looking [3] - 1496:16,
1499:20, 1505:3
LORINDA [1] - 1469:7
lorinda.laryea@
usdoj.gov [1] -
1469:10
lose [1] - 1488:9
love [1] - 1494:8
lovely [1] - 1494:1
lunch [1] - 1508:10
luncheon [1] - 1483:2

## M

MACEO [1] - 1504:22

mail [5] - 1469:5,
1469:15, 1469:20,
1498:7, 1499:9
mails [1] - 1480:14
Manning [1] - 1469:18
mark [1] - 1487:13
marked [1] - 1494:21
marking [1] - 1501:4
Martini [1] - 1469:18
match [1] - 1499:7
matches [1] - 1500:1
matter [3] - 1471:8,
1491:24, 1509:15
matters [2] - 1474:24,
1493:11
mean [13] - 1471:5,
1471:19, 1472:15,
1480:3, 1480:4,
1486:15, 1486:25,
1497:17, 1498:17,
1500:4, 1503:1,
1503:10, 1503:22
means [1] - 1493:15
Melissa [2] - 1468:24,
1509:10
MELISSA [1] -
1509:22
mention [2] - 1480:22,
1491:22
mentioned [5] -
1479:2, 1480:25,
1481:17, 1490:18,
1492:1
mentioning [1] -
1483:12
message [1] - 1489:25
might [4] - 1480:13,
1485:13, 1506:2,
1507:6
mind [1] - 1484:23
mine [1] - 1496:13
minutes [10] -
1475:15, 1475:21,
1502:13, 1502:17,
1502:22, 1503:21,
1503:22, 1503:25,
1504:16
misheard [1] -
1490:23
missing [2] - 1497:7,
1497:8
misunderstood [2] -
1481:22, 1487:5
MO [1] - 1483:11
mom [1] - 1482:7
moment [3] - 1483:19,
1484:8, 1507:21
Monday [2] - 1483:4,
1483:5
money [2] - 1502:10,

1505:10
month [1] - 1471:12
morning [11] -
1478:10, 1478:11,
1480:21, 1482:2,
1490:15, 1491:17,
1493:8, 1502:18,
1507:13, 1508:1,
1508:16
MORVILLO [35] -
1469:12, 1470:13,
1471:13, 1474:9,
1475:13, 1475:17,
1476:9, 1476:15,
1476:20, 1476:25,
1477:23, 1483:18,
1484:25, 1488:20,
1489:11, 1489:15,
1489:19, 1490:14,
1490:22, 1491:6,
1491:13, 1492:25,
1494:17, 1499:15,
1500:23, 1501:11,
1501:16, 1502:4,
1502:21, 1503:2,
1503:4, 1505:2,
1506:10, 1507:16,
1508:22
move [1] - 1482:12
moved [1] - 1478:7
MR [104] - 1470:13,
1470:16, 1470:25,
1471:2, 1471:5,
1471:13, 1471:23,
1472:18, 1472:24,
1473:13, 1473:18,
1473:22, 1474:9,
1474:25, 1475:11,
1475:13, 1475:16,
1475:17, 1475:23,
1476:6, 1476:9,
1476:15, 1476:18,
1476:20, 1476:25,
1477:5, 1477:14,
1477:23, 1478:2,
1483:17, 1483:18,
1484:8, 1484:25,
1485:5, 1488:19,
1488:20, 1489:11,
1489:15, 1489:19,
1490:11, 1490:14,
1490:16, 1490:22,
1491:6, 1491:12,
1491:13, 1492:17,
1492:25, 1494:16,
1494:17, 1495:4,
1495:6, 1496:5,
1496:9, 1496:14,
1496:19, 1496:23,
1497:1, 1497:5,

1505:10
month [1] - 1471:12

1497:8, 1497:17,
1497:23, 1498:3,
1498:7, 1498:15,
1498:20, 1499:1,
1499:3, 1499:6,
1499:14, 1499:15,
1499:18, 1499:25,
1500:5, 1500:8,
1500:12, 1500:21,
1500:23, 1500:24,
1501:10, 1501:11,
1501:16, 1501:17,
1501:20, 1501:25,
1502:3, 1502:4,
1502:12, 1502:16,
1502:21, 1503:2,
1503:4, 1503:9,
1503:17, 1503:21,
1504:8, 1504:14,
1505:2, 1505:12,
1505:25, 1506:10,
1507:16, 1508:17,
1508:22
MS [3] - 1471:9,
1490:25, 1496:12
must [1] - 1506:15

## N

N.W [1] - 1469:8
name [2] - 1481:17,
1492:6
naturalization [6] -
1475:7, 1475:9,
1475:14, 1476:11,
1477:9, 1493:25
naturalizations [2] -
1476:14, 1494:4
naturalized [1] -
1476:21
nearly [1] - 1485:23
necessarily [1] -
1472:5
need [8] - 1487:14,
1487:17, 1492:8,
1493:16, 1499:17,
1501:12, 1503:20,
1507:11
needed [2] - 1485:13,
1508:4
nervous [1] - 1482:10
Nevada [2] - 1506:16,
1506:24
never [2] - 1478:23,
1479:15
new [3] - 1484:3,
1487:18, 1494:9
New [11] - 1468:8,
1469:4, 1469:8,
1469:14, 1470:6,

1478:22, 1479:15,
1481:14, 1482:4,
1490:19, 1509:24
**next** [9] - 1476:14,
1477:13, 1477:17,
1480:25, 1484:5,
1502:8, 1503:18,
1508:7, 1508:18
**NH** [1] - 1469:3
**nice** [1] - 1493:9
**night** [9] - 1479:1,
1480:4, 1481:9,
1481:16, 1481:21,
1481:23, 1482:2,
1490:16, 1490:24
**Nine** [1] - 1503:6
**Ninth** [2] - 1506:11,
1508:20
**note** [28] - 1470:2,
1470:18, 1471:13,
1472:4, 1474:3,
1474:10, 1478:3,
1478:12, 1481:1,
1481:3, 1481:5,
1481:11, 1489:23,
1490:20, 1491:17,
1491:24, 1492:2,
1492:5, 1494:21,
1496:6, 1497:13,
1497:15, 1499:16,
1500:10, 1500:16,
1501:3, 1502:8,
1508:5
**notebooks** [1] -
1489:9
**notes** [1] - 1509:15
**nothing** [2] - 1491:1,
1509:2
**notified** [1] - 1470:8
**noting** [1] - 1500:16
**November** [2] -
1468:5, 1494:6
**Novick** [3] - 1485:2,
1497:10, 1508:14
**NOVICK** [69] - 1469:3,
1470:16, 1471:2,
1471:23, 1472:18,
1472:24, 1473:13,
1473:18, 1473:22,
1474:25, 1475:11,
1475:16, 1475:23,
1476:6, 1476:18,
1477:5, 1477:14,
1478:2, 1483:17,
1484:8, 1485:5,
1488:19, 1490:11,
1490:16, 1491:12,
1492:17, 1494:16,
1495:4, 1495:6,
1496:5, 1496:9,

1496:14, 1496:19,
1496:23, 1497:1,
1497:5, 1497:8,
1497:17, 1497:23,
1498:3, 1498:7,
1498:15, 1498:20,
1499:1, 1499:3,
1499:6, 1499:14,
1499:18, 1499:25,
1500:5, 1500:8,
1500:12, 1500:21,
1500:24, 1501:10,
1501:17, 1501:20,
1501:25, 1502:3,
1502:12, 1502:16,
1503:9, 1503:17,
1503:21, 1504:8,
1504:14, 1505:12,
1505:25, 1508:17
**Number** [22] - 1470:3,
1470:5, 1477:7,
1477:11, 1478:9,
1483:16, 1485:7,
1485:8, 1488:18,
1489:14, 1491:8,
1492:13, 1493:4,
1493:11, 1493:14,
1493:19, 1496:22,
1496:23, 1498:10,
1498:22, 1503:7
**number** [6] - 1473:24,
1474:16, 1499:6,
1499:7, 1499:8,
1504:23
**numbers** [1] - 1495:16
**NY** [2] - 1469:14,
1469:14

## O

**object** [1] - 1484:21
**objection** [4] -
1475:22, 1475:24,
1484:25, 1491:10
**obligation** [1] -
1485:11
**obligations** [1] -
1484:4
**obviously** [8] -
1473:2, 1474:15,
1479:18, 1480:2,
1499:8, 1503:10,
1505:17, 1505:19
**occurred** [5] - 1505:8,
1505:11, 1505:15,
1506:7, 1506:20
**OF** [3] - 1468:1,
1468:4, 1509:8
**offense** [4] - 1505:14,
1505:15, 1505:18,

1506:4
**offenses** [2] -
1503:12, 1506:23
**offerings** [1] - 1506:9
**Office** [1] - 1469:3
**Official** [3] - 1468:24,
1509:11, 1509:22
**officials** [1] - 1495:21
**one** [25] - 1473:14,
1473:18, 1473:24,
1475:7, 1476:22,
1481:8, 1481:24,
1483:19, 1484:8,
1487:15, 1487:16,
1488:13, 1488:14,
1489:22, 1490:6,
1491:15, 1491:16,
1493:18, 1495:10,
1499:6, 1499:18,
1500:8, 1504:18,
1505:14, 1505:19
**opened** [1] - 1470:4
**opportunity** [1] -
1475:18
**opposition** [1] -
1484:6
**organization** [1] -
1484:15
**orient** [1] - 1494:9
**otherwise** [2] -
1472:12, 1503:25
**outset** [1] - 1475:20
**outside** [2] - 1477:25,
1480:7
**overt** [1] - 1505:20
**own** [1] - 1488:1

## P

**p.m** [12] - 1494:19,
1497:12, 1499:2,
1502:6, 1504:10,
1507:18, 1508:12,
1509:4
**Pacific** [1] - 1497:2
**pages** [1] - 1509:13
**paper** [15] - 1495:1,
1495:8, 1496:15,
1497:3, 1497:15,
1498:14, 1499:7,
1499:11, 1499:19,
1500:5, 1500:6,
1500:17, 1501:2,
1501:15
**paragraph** [1] -
1495:16
**Paris** [1] - 1479:4
**Parrish** [1] - 1504:21
**PARRISH** [1] -
1504:21

**part** [1] - 1471:18
**particular** [1] -
1471:17
**particularly** [2] -
1475:5, 1487:8
**party** [1] - 1472:22
**past** [3] - 1473:9,
1482:16, 1485:9
**Pause** [3] - 1492:16,
1497:12, 1499:2
**payments** [1] -
1495:24
**PEACOCK** [1] -
1469:13
**per** [2] - 1495:9,
1495:14
**perhaps** [3] - 1481:22,
1482:21, 1487:6
**permit** [1] - 1481:21
**person** [1] - 1480:25
**personal** [4] - 1477:9,
1492:20, 1493:10,
1493:19
**phase** [1] - 1487:1
**phone** [2] - 1479:6,
1481:17
**pincite** [2] - 1504:21,
1506:13
**Pinkerton** [7] -
1502:9, 1504:19,
1504:24, 1505:9,
1505:17, 1506:21,
1506:25
**place** [1] - 1481:19
**places** [2] - 1478:23,
1479:4
**plaintiff** [1] - 1468:5
**plan** [1] - 1476:3
**plant** [3] - 1478:24,
1482:8, 1491:20
**plants** [1] - 1478:23
**play** [1] - 1495:13
**playing** [1] - 1499:7
**pledge** [2] - 1483:1
**plenty** [1] - 1472:19
**point** [4] - 1471:12,
1472:20, 1488:22,
1498:17
**policy** [1] - 1507:6
**portrayed** [1] -
1474:13
**position** [3] - 1502:20,
1504:13, 1508:14
**possibility** [1] -
1482:19
**possible** [2] -
1497:24, 1505:13
**possibly** [1] - 1488:4
**Post** [1] - 1469:18
**potential** [2] - 1486:2

**potentially** [1] -
1476:23
**power** [1] - 1472:8
**Power** [1] - 1495:24
**prayers** [2] - 1476:25,
1477:4
**precision** [1] -
1507:25
**predict** [1] - 1486:16
**prefer** [2] - 1477:8,
1484:19
**preferably** [1] - 1483:4
**premised** [1] - 1506:4
**present** [2] - 1489:20,
1495:11
**pressure** [2] -
1487:22, 1488:24
**pressured** [1] -
1487:25
**presumably** [1] -
1470:20
**presume** [1] - 1502:13
**pretty** [2] - 1479:10,
1485:19
**previously** [1] -
1474:17
**principle** [3] -
1506:21, 1506:22,
1506:25
**principles** [1] - 1507:7
**print** [1] - 1498:24
**printout** [2] - 1495:23,
1496:16
**problem** [4] - 1474:8,
1475:3, 1476:23,
1501:22
**problematic** [3] -
1485:12, 1485:17,
1485:25
**Procedure** [1] -
1507:9
**Proceedings** [2] -
1478:7, 1509:4
**proceedings** [5] -
1478:8, 1493:7,
1494:13, 1507:18,
1508:12
**process** [3] - 1487:5,
1488:1, 1488:24
**produced** [1] -
1499:23
**program** [1] - 1476:13
**prominently** [2] -
1472:22, 1474:12
**proper** [3] - 1506:6,
1506:16, 1507:5
**properly** [1] - 1478:17
**propose** [1] - 1500:15
**proposed** [1] -
1492:17

**proven** [1] - 1503:11
**PT** [1] - 1495:24
**pulled** [1] - 1504:16
**pulling** [1] - 1475:3
**put** [6] - 1475:10, 1480:13, 1486:5, 1488:23, 1498:18, 1508:17
**putting** [1] - 1497:21

## Q

**query** [1] - 1494:25
**questioned** [1] - 1479:6
**questions** [3] - 1473:23, 1483:16, 1488:17
**quick** [2] - 1489:15, 1506:11
**quite** [1] - 1478:24
**quote** [1] - 1506:13

## R

**rather** [2] - 1489:19, 1490:4
**re** [2] - 1477:24, 1494:9
**RE** [1] - 1509:8
**re-emphasize** [1] - 1477:24
**read** [3] - 1470:7, 1490:1, 1506:13
**reading** [4] - 1470:18, 1496:6, 1504:25, 1507:24
**really** [1] - 1477:7
**reason** [5] - 1483:23, 1486:22, 1502:25, 1503:1, 1503:13
**reasonable** [2] - 1477:14, 1501:24
**reasonably** [2] - 1499:19, 1501:20
**reasons** [4] - 1491:7, 1492:20, 1493:12, 1493:20
**recalling** [1] - 1483:15
**receive** [1] - 1483:1
**received** [1] - 1478:12
**recess** [7] - 1494:18, 1494:19, 1502:5, 1502:6, 1504:9, 1504:10, 1509:3
**recognition** [1] - 1489:1
**recognize** [1] - 1472:2
**recognizing** [1] - 1486:3

**recollection** [2] - 1482:15, 1491:19
**redo** [2] - 1477:21, 1489:3
**referring** [1] - 1508:20
**reflect** [1] - 1495:15
**reflecting** [1] - 1478:13
**refresh** [1] - 1491:18
**regard** [1] - 1475:5
**regular** [2] - 1479:6, 1493:18
**reiterate** [1] - 1473:25
**relate** [1] - 1471:7
**related** [1] - 1472:25
**relating** [1] - 1474:24
**relationship** [2] - 1480:16, 1489:23
**relatively** [1] - 1476:6
**relevant** [1] - 1505:9
**reload** [2] - 1499:12, 1500:18
**rely** [1] - 1499:21
**remind** [1] - 1473:7
**removed** [1] - 1472:6
**renumbering** [1] - 1495:12
**replace** [2] - 1487:15, 1487:16
**report** [1] - 1503:15
**Reporter** [3] - 1468:24, 1509:11, 1509:22
**represent** [1] - 1504:17
**request** [6] - 1473:22, 1484:10, 1486:13, 1488:22, 1492:10, 1502:17
**requested** [1] - 1470:14
**requesting** [1] - 1493:20
**required** [1] - 1482:21
**requirement** [2] - 1502:9, 1503:11
**rescheduled** [1] - 1486:9
**reschedules** [1] - 1485:20
**research** [1] - 1506:11
**resolved** [1] - 1474:15
**Resources** [1] - 1497:2
**respect** [2] - 1470:7, 1477:2
**respectfully** [1] - 1471:24
**responded** [1] - 1499:10

**response** [1] - 1479:11
**responsible** [1] - 1506:22
**rest** [1] - 1470:7
**return** [2] - 1479:1, 1487:14
**risk** [3] - 1471:23, 1474:19, 1479:21
**RMR** [3] - 1468:24, 1509:10, 1509:22
**road** [2] - 1479:12, 1480:5
**Road** [1] - 1469:18
**role** [1] - 1485:24
**room** [4] - 1489:9, 1501:3, 1503:18
**Room** [2] - 1469:9, 1509:23
**rule** [2] - 1507:2, 1507:6
**Rules** [1] - 1507:8
**run** [1] - 1477:17
**runs** [2] - 1477:12, 1507:7
**rush** [2] - 1487:24, 1488:5

## S

**satisfactory** [1] - 1489:4
**saw** [1] - 1496:23
**schedule** [2] - 1477:10, 1486:9
**scheduling** [3] - 1475:5, 1485:22, 1486:8
**scheduling-wise** [1] - 1485:22
**school** [2] - 1481:5, 1508:7
**screen** [1] - 1498:21
**seated** [6] - 1493:3, 1493:9, 1495:5, 1502:11, 1504:11, 1507:19
**seating** [1] - 1494:6
**second** [1] - 1479:5
**Section** [1] - 1469:8
**see** [11] - 1472:4, 1475:4, 1477:11, 1477:16, 1483:20, 1493:9, 1494:22, 1498:8, 1503:3, 1503:4, 1508:10
**selection** [4] - 1470:9, 1471:11, 1472:13, 1482:14
**send** [1] - 1489:25,

1508:5
**sense** [2] - 1489:24, 1507:6
**sent** [3] - 1489:24, 1496:24, 1498:8
**sentiment** [1] - 1494:1
**service** [2] - 1489:8, 1491:5
**set** [1] - 1483:4
**setting** [1] - 1475:19
**shall** [1] - 1507:15
**share** [1] - 1501:5
**shared** [1] - 1492:6
**short** [1] - 1485:19
**shortcut** [1] - 1488:1
**shortcutting** [1] - 1488:24
**shorthand** [1] - 1509:15
**side** [2] - 1475:3, 1487:19
**Sidebar** [1] - 1483:21, 1485:6, 1489:18, 1491:14
**sides** [1] - 1497:25
**sign** [1] - 1481:18
**SILVER** [2] - 1469:13, 1470:25
**simple** [1] - 1508:4
**simultaneously** [1] - 1508:24
**single** [1] - 1482:7
**sitting** [1] - 1502:19
**skill** [1] - 1509:16
**slides** [1] - 1501:2
**slightly** [1] - 1495:15
**small** [3] - 1481:10, 1481:25, 1491:1
**Smith** [1] - 1506:8
**someone** [1] - 1485:23
**son** [1] - 1480:5
**sorry** [6] - 1486:20, 1487:4, 1488:12, 1488:16, 1496:8, 1505:1
**sort** [1] - 1479:22
**sound** [1] - 1489:4
**Southport** [1] - 1469:19
**speaking** [2] - 1476:7, 1481:8
**SPEARS** [1] - 1469:17
**Spears** [1] - 1469:18
**special** [1] - 1494:6
**specifically** [1] - 1492:22
**speculate** [4] - 1490:5, 1490:8, 1492:20, 1493:19

**speed** [1] - 1488:2
**spell** [1] - 1479:7
**spending** [1] - 1476:3
**spent** [1] - 1486:4
**stand** [4] - 1495:6, 1502:5, 1504:9, 1509:3
**standpoint** [1] - 1507:7
**start** [7] - 1473:19, 1484:3, 1488:7, 1490:5, 1490:8, 1493:16, 1493:17
**started** [2] - 1471:10, 1471:20
**state** [1] - 1504:12
**STATES** [3] - 1468:1, 1468:4, 1509:8
**States** [2] - 1509:11, 1509:23
**stay** [4] - 1473:9, 1477:12, 1485:15, 1487:20
**steps** [1] - 1472:6
**stick** [1] - 1476:12
**stop** [1] - 1479:9
**Street** [3] - 1468:7, 1469:4, 1509:23
**stressed** [2] - 1482:3, 1490:17
**stressful** [1] - 1488:13
**stuff** [3] - 1479:11, 1482:6, 1485:21
**subconscious** [1] - 1488:24
**subcontracting** [2] - 1470:22, 1479:24
**subcontractor** [6] - 1470:19, 1471:3, 1471:19, 1474:11, 1478:14, 1478:19
**subject** [3] - 1471:8, 1482:13, 1491:24
**submit** [1] - 1508:24
**submitted** [1] - 1495:11
**substantive** [7] - 1503:12, 1505:15, 1505:18, 1506:4, 1506:17, 1506:23, 1507:3
**substitute** [1] - 1498:13
**sufficient** [1] - 1506:24
**sufficiently** [1] - 1477:3
**suggest** [2] - 1472:5, 1496:3
**suggests** [1] -

1501:14
**Suite** [1] - 1469:18
**summary** [4] -
    1495:15, 1495:20,
    1495:24, 1497:2
**suppose** [1] - 1475:23
**surmise** [1] - 1496:10
**swayed** [1] - 1474:20

## T

**teach** [1] - 1508:8
**teacher** [1] - 1481:6
**technologically** [1] -
    1498:18
**Ten** [1] - 1503:6
**ten** [2] - 1503:22,
    1503:24
**tentative** [1] - 1479:1
**terms** [1] - 1476:2
**testified** [1] - 1474:17
**testimony** [1] - 1480:1
**THE** [120] - 1468:18,
    1470:2, 1470:15,
    1471:16, 1472:14,
    1472:19, 1473:7,
    1473:17, 1473:19,
    1475:2, 1475:15,
    1476:4, 1476:12,
    1476:16, 1476:22,
    1477:1, 1477:6,
    1477:18, 1478:6,
    1478:9, 1478:12,
    1478:16, 1479:17,
    1479:21, 1480:11,
    1480:21, 1481:2,
    1481:12, 1481:22,
    1482:12, 1482:19,
    1483:5, 1483:8,
    1483:14, 1483:19,
    1483:22, 1485:3,
    1485:7, 1486:1,
    1486:14, 1486:20,
    1486:25, 1487:6,
    1488:15, 1488:17,
    1488:21, 1489:7,
    1489:13, 1489:17,
    1490:10, 1490:12,
    1490:20, 1491:3,
    1491:7, 1491:15,
    1491:22, 1492:3,
    1492:8, 1492:24,
    1493:2, 1493:5,
    1493:6, 1493:8,
    1494:14, 1494:18,
    1494:20, 1495:5,
    1496:3, 1496:8,
    1496:13, 1496:18,
    1496:21, 1496:25,
    1497:3, 1497:6,

1497:10, 1497:13,
    1497:19, 1498:2,
    1498:5, 1498:12,
    1498:19, 1498:24,
    1499:5, 1499:10,
    1499:16, 1499:23,
    1500:3, 1500:6,
    1500:9, 1500:14,
    1501:1, 1501:12,
    1501:18, 1501:23,
    1502:1, 1502:5,
    1502:7, 1502:15,
    1502:20, 1502:24,
    1503:3, 1503:5,
    1503:16, 1503:19,
    1503:23, 1504:2,
    1504:4, 1504:6,
    1504:7, 1504:9,
    1504:11, 1505:5,
    1505:22, 1506:2,
    1507:10, 1507:19,
    1508:13, 1508:19,
    1509:1
**theirs** [1] - 1488:2
**theories** [1] - 1505:23
**theory** [3] - 1502:9,
    1504:19, 1506:5
**thereafter** [1] -
    1485:14
**thereby** [1] - 1484:4
**thereof** [1] - 1505:20
**they've** [1] - 1474:14
**thinking** [1] - 1479:25
**thinks** [2] - 1477:2,
    1505:7
**three** [2] - 1471:9,
    1499:3
**throughout** [2] -
    1472:23, 1474:12
**Thursday** [1] -
    1475:25
**timely** [1] - 1486:16
**today** [2] - 1479:2,
    1490:20
**together** [1] - 1508:18
**tomorrow** [4] -
    1507:13, 1508:1,
    1508:10, 1508:16
**tonight** [1] - 1508:1
**took** [1] - 1479:4
**track** [2] - 1486:12,
    1486:15
**trafficking** [1] -
    1506:19
**train** [1] - 1482:8
**trains** [2] - 1481:15,
    1482:9
**transcription** [1] -
    1509:14
**transferred** [1] -

1475:8
**transportation** [1] -
    1472:9
**TRIAL** [1] - 1468:12
**trial** [3] - 1472:23,
    1480:18, 1495:20
**tried** [2] - 1479:9,
    1504:19
**true** [1] - 1509:14
**try** [2] - 1500:18,
    1508:17
**trying** [2] - 1482:10,
    1506:1
**Tuesday** [11] -
    1482:21, 1482:25,
    1483:10, 1483:24,
    1484:2, 1484:3,
    1484:12, 1485:10,
    1485:14, 1485:22,
    1487:14
**twelve** [1] - 1487:10
**Twelve** [1] - 1503:6
**twice** [2] - 1486:10,
    1486:11
**two** [7] - 1473:21,
    1480:18, 1483:15,
    1484:14, 1487:9,
    1495:9, 1505:13

## U

**U.S** [5] - 1469:3,
    1469:7, 1506:2,
    1506:8, 1506:12
**U.S.D.J** [1] - 1468:18
**ultimately** [2] -
    1475:21, 1488:6
**unable** [1] - 1491:4
**unaware** [1] - 1486:21
**underlying** [1] -
    1506:7
**understandable** [1] -
    1487:7
**understood** [2] -
    1477:5, 1499:14
**undue** [1] - 1488:23
**unfortunately** [3] -
    1486:7, 1486:12,
    1486:13
**UNITED** [3] - 1468:1,
    1468:4, 1509:8
**United** [4] - 1482:24,
    1484:15, 1509:11,
    1509:23
**unless** [1] - 1501:18
**unusual** [2] - 1489:19,
    1490:4
**up** [7] - 1473:11,
    1483:4, 1488:2,
    1492:11, 1498:20,

1503:14, 1508:7
**updated** [1] - 1498:8
**upper** [1] - 1470:6
**US** [1] - 1469:14
**utilize** [1] - 1472:20

## V

**vague** [1] - 1479:10
**venue** [15] - 1502:8,
    1503:8, 1503:10,
    1504:24, 1505:9,
    1505:16, 1505:18,
    1505:19, 1506:5,
    1506:16, 1506:24,
    1507:3, 1507:5,
    1507:7
**version** [3] - 1494:23,
    1498:8, 1499:7
**versions** [1] - 1499:9
**Veteran's** [1] - 1483:7
**victim** [1] - 1474:13
**view** [5] - 1472:12,
    1472:14, 1472:15,
    1476:12, 1480:12
**views** [2] - 1475:9,
    1505:13
**VIII** [1] - 1468:13
**voir** [7] - 1470:17,
    1470:20, 1471:25,
    1473:23, 1475:2,
    1475:4, 1492:22
**VOLUME** [1] - 1468:13
**voted** [2] - 1476:2,
    1476:5

## W

**wait** [3] - 1477:16,
    1483:19, 1504:3
**waiting** [1] - 1477:4
**Washington** [1] -
    1469:9
**watch** [1] - 1475:18
**Wednesday** [1] -
    1482:21
**week** [6] - 1474:7,
    1477:13, 1477:17,
    1482:7, 1484:5,
    1485:9
**weekend** [1] - 1476:1
**weeks** [3] - 1471:9,
    1479:14, 1484:14
**welcome** [4] -
    1476:17, 1487:20,
    1494:5
**Whittingham** [1] -
    1506:3
**whole** [1] - 1487:5
**wisdom** [1] - 1499:20

**wise** [1] - 1485:22
**wish** [3] - 1485:14,
    1493:2, 1507:13
**withdraw** [1] -
    1486:13
**witnesses** [3] -
    1474:16, 1480:1,
    1480:13
**wondering** [2] -
    1489:24, 1490:4
**word** [2] - 1492:1
**works** [2] - 1478:22,
    1483:12
**world** [3] - 1481:10,
    1481:25, 1491:1
**worry** [2] - 1473:13,
    1475:25
**write** [2] - 1497:13,
    1499:16
**written** [1] - 1500:15

## Y

**yesterday** [1] -
    1481:12
**York** [8] - 1469:8,
    1469:14, 1470:6,
    1478:22, 1479:16,
    1481:14, 1482:4,
    1490:19